**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Tel: (415) 730-0387
Fax: (650) 618-0478

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>S.C. JOHNSON & SON, INC., a Wisconsin Corporation,<br><br>Defendant. | Case No.: 3:21-cv-00413-TSH<br>Case Filed: 1/15/2021<br><br>*Assigned to Hon. Thomas Hixson, United States Magistrate Judge*<br><br>**FIRST AMENDED COMPLAINT**<br>1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br>2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)<br>3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)<br>4. Breach of Warranty<br>5. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## TABLE OF CONTENTS

**FIRST AMENDED COMPLAINT** ...................................................................4

I.     NATURE OF THE ACTION ......................................................................4

       Products...................................................................................................6

II.    JURISDICTION .........................................................................................7

III.   VENUE ......................................................................................................7

IV.    PARTIES ....................................................................................................7

       A.  Plaintiff .............................................................................................7

       B.  Defendant ..........................................................................................9

V.     FACTUAL ALLEGATIONS ......................................................................9

       A.  Background ........................................................................................9

       B.  The Products' Misleading and Deceptive Labeling.........................10

           A)  Product Images
               ecover All Purpose Cleaner  ...........................................11
               ecover Cream Scrub .......................................................12
               ecover Delicate Wash  ....................................................13
               ecover Dishwasher Powder ............................................14
               ecover Dishwasher Tablets  ............................................15
               ecover Dishwasher Tablets Zero ....................................16
               ecover Fabric Softener (Morning Fresh)  .......................17
               ecover Fabric Softener (Sunny Day)  ..............................18
               ecover Floor Soap  ..........................................................19
               ecover Laundry Detergent (Alpine Mint) .......................20
               ecover Laundry Detergent (Lavender Field) ...................21
               ecover Rinse Aid  ............................................................22
               ecover Stain Remover .....................................................23
               ecover Toilet Cleaner......................................................24

           B)  Product Ingredients
               ecover All Purpose Cleaner  ...........................................25
               ecover Cream Scrub .......................................................26
               ecover Delicate Wash  ....................................................27
               ecover Dishwasher Powder ............................................27
               ecover Dishwasher Tablets  ............................................28
               ecover Dishwasher Tablets Zero ....................................29
               ecover Fabric Softener (Morning Fresh)  .......................30
               ecover Fabric Softener (Sunny Day)  ..............................31
               ecover Floor Soap  ..........................................................32
               ecover Laundry Detergent (Alpine Mint) .......................32
               ecover Laundry Detergent (Lavender Field) ...................33
               ecover Rinse Aid  ............................................................35
               ecover Stain Remover.....................................................35
               ecover Toilet Cleaner......................................................36

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

C.  Defendant Misled Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to Their Detriment ............................................................. 37

D.  The Products Are Substantially Similar ................................................................. 38

VI.   CLASS ACTION ALLEGATIONS ................................................................................. 39

VII.  COUNT ONE ................................................................................................................. 42

Violation of the Unfair Competition Law ("UCL")

(California Business and Professions Code §§ 17200, et seq.)

A.  "Unfair" Prong ....................................................................................................... 46

B.  "Fraudulent" Prong ............................................................................................... 48

C.  "Unlawful" Prong .................................................................................................. 49

VIII. COUNT TWO ................................................................................................................. 51

Violation of the False Advertising Law ("FAL")

(California Business & Professions Code §§ 17500, et seq.)

IX.   COUNT THREE ............................................................................................................. 53

Violation of Consumers Legal Remedies Act ("CLRA")

(Cal. Civ. Code §§ 1750, et seq.)

X.    COUNT FOUR ............................................................................................................... 57

Breach of Express Warranty

XI.   COUNT FIVE ................................................................................................................. 59

Unjust Enrichment

XII.  PRAYER FOR RELIEF ................................................................................................. 62

DEMAND FOR JURY TRIAL ................................................................................................. 64

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## FIRST AMENDED COMPLAINT

Plaintiff Elizabeth Maisel ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action against Defendant S.C. Johnson & Son, Inc. ("**S.C. Johnson**" or "**Defendant**"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge:

## NATURE OF THE ACTION

1.      **Synopsis.**  In an effort to increase profits and to gain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels certain of its "ecover" brand cleaning products with the following claims: "Plant-based ingredients"; "With plant-based ingredients"; "Plant-based & mineral ingredients"; or "With plant-based and mineral ingredients" (hereinafter, "**Plant-Based Representations,**" "**Challenged Representations,**" or "**False Advertising Claims**"). Defendant reinforces the Plant-Based Representations on each Product by displaying images of plants, including flowers and leaves, and by using green coloring. Defendant also reinforces the Plant-Based Representations on each Product through the following additional labeling statements:

- "Get nature on your side"
- "Made using renewable plant-based ingredients" or "Made using renewable plant-based & mineral ingredients"[1]
- "At Ecover, we have been pioneering green science for over 30 years to make effective, plant-based cleaners by planet-loving people"[2]
- Image of a flower above the "e" and "c" in the ecover brand name
- Image of a leaf above the Plant-Based Representations with a dotted line connecting the representation and leaf

///

///

---

[1] Depicted on the Product's back label.
[2] Depicted on the Product's back label.  This statement is not contained on the Stain Remover Product.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069



2.     **Plant-Based Representations.** In light of the Plant-Based Representations, reasonable consumers, including Plaintiff, believe the Products only contain ingredients that come from plants and/or from plants and minerals, and that are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition. As such, reasonable consumers, including Plaintiff, believe the Products only contain natural ingredients.

3.     **Synthetic Ingredients.** However, contrary to the labeling, the Products contain numerous ingredients that **do not come from plants or minerals whatsoever**.  In fact, Defendant **admits** many of the ingredients in the Products are synthetic.[3]  In addition to those ingredients that have nothing to do with plants or minerals, the Products contain numerous ingredients that have been subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition.[4] Put differently, to create certain ingredients used in the Products, plant-sourced ingredients, like coconut or palm oil, are used. But these ingredients are then subjected to substantial chemical modification and processing such that the resulting ingredient used in the Products is an entirely new, synthetically created ingredient—one that is vastly and fundamentally different than the original plant-sourced ingredient. Accordingly, the Plant-Based Representations are misleading and deceptive, and therefore unlawful.

4.     **Products.**  The falsely labeled ecover products at issue are as follows:

(1)     ecover All Purpose Cleaner

(2)     ecover Cream Scrub

(3)     ecover Delicate Wash

(4)     ecover Dishwasher Powder

(5)     ecover Dishwasher Tablets

(6)     ecover Dishwasher Tablets Zero

(7)     ecover Fabric Softener (Morning Fresh)

(8)     ecover Fabric Softener (Sunny Day)

---

[3] Described in detail, *infra*.

[4] *See, e.g.*, 7 U.S.C. § 6502 (21): "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    (9)     ecover Floor Soap

2    (10)    ecover Laundry Detergent (Alpine Mint)

3    (11)    ecover Laundry Detergent (Lavender Field)

4    (12)    ecover Rinse Aid

5    (13)    ecover Stain Remover

6    (14)    ecover Toilet Cleaner

7   (collectively, the "**Products**").

8        5.    **Primary Objectives.**   As a result, Plaintiff brings this action individually and on

9   behalf of those similarly situated to represent a National Class and a California Class (defined *infra*).

10  Plaintiff seeks injunctive relief to stop Defendant's unlawful labeling and advertising of the

11  Products and reimbursement of the money consumers paid for the falsely advertised Product

12  attribute, as Plaintiff's primary litigation objectives are to enjoin Defendant's unlawful labeling

13  practices and make the National Class and California Class whole.

14                                  <u>**JURISDICTION**</u>

15       6.    This Court has original jurisdiction over this action pursuant to the Class Action

16  Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more

17  members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and

18  minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims

19  pursuant to 28 U.S.C. § 1367.

20                                     <u>**VENUE**</u>

21       7.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

22  the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff

23  purchased the Products in this District, and Defendant has deliberately marketed, advertised, and

24  sold the Products within this District.

25                                    <u>**PARTIES**</u>

26  A.   <u>**Plaintiff**</u>

27       8.    **Plaintiff Elizabeth Maisel** ("**Plaintiff**"). The following is alleged based upon

28  personal knowledge: (1) Plaintiff Maisel is a resident of Berkeley, California. (2) Plaintiff purchased

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

the ecover Dishwasher Tablets for approximately $5.00 at Andronicos Community Market in Berkeley, California in early 2020. (3) In making the purchase, Plaintiff relied on the Plant-Based Representations[5] stated on the Product's label and packaging. (4) At the time of purchase, Plaintiff did not know that the Plant-Based Representations were false. (5) Plaintiff would not have purchased the Products had she known that the Products contained ingredients that do not come from plants or minerals, or that the ingredients' original plant-based or mineral composition was materially altered through chemical modification and processing. (6) Plaintiff continues to see the Products available for purchase and desires to purchase them again if the Plant-Based Representations were in fact true. (7) Plaintiff is, and continues to be, unable to rely on the truth of the Products' Plant-Based Representations. (8) Plaintiff does not know the meaning or the import of the Products' ingredients, including whether the ingredients come from plants or minerals, or whether the ingredients' original plant-based or mineral composition has been materially altered by chemical modification and processing. (9) The Product purchased by Plaintiff is typical of the labeling of the Products purchased by members of the Class.

9.     **Plaintiff's Likely Future Harm.**  If the Products' ingredients were as represented, Plaintiff would like to purchase the Products again in the future, despite the fact that the Products were once marred by false advertising or labeling. Therefore, Plaintiff would reasonably, but incorrectly, assume the Products were improved (i.e., did not contain synthetic, non-natural ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of cleaning products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are natural and those that are synthetic. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products such that Plaintiff may buy them again, believing they were no longer falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Plant-Based Representations.

/ / /

---

[5] Specifically, "With plant-based & mineral ingredients."

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**B.    Defendant**

10.    **Defendant S.C. Johnson & Son, Inc**. is a Wisconsin corporation with its principal place of business in Racine, Wisconsin, and was doing business in the state of California during all relevant times. Directly and through its agents, S.C. Johnson & Son, Inc. has substantial contacts with and receives substantial benefits and income from and through the state of California. S.C. Johnson & Son, Inc. is the owner, manufacturer, and distributors of the Products, and is the company that created and authorized the false, misleading, and deceptive labeling for the Products. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading False Advertising Claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the State of California and the nation by Defendant and its agents in order to deceive and mislead consumers into purchasing the Products.

## FACTUAL ALLEGATIONS

**A.    Background**

11.    **Background.** In recent years, consumers have poured billions of dollars into the "natural" cleaning-products market. Consumers value natural products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.

12.    **The ecover Brand.** In response to consumers' desire for natural products, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly "natural" products in an effort to gain market share. Unfortunately, rather than creating the natural, plant-based products consumers desire, Defendant has chosen instead to market the Products through deceptive labeling and advertising in order to convince consumers the Products are natural and plant-based when, in reality, they contain synthetic and highly processed ingredients.

13.    **FTC Green Guides.** In response to this consumer fraud, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making

misleading and deceptive claims.[6]  As relevant here, the FTC stated:

> Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"<u>plant-based</u>,"** in the context of their advertisements.[7]

14.    **Plant-Based and Natural Ingredients.** As stated *supra*, in light of the Plant-Based Representations, reasonable consumers, including Plaintiff, believe the Products only contain ingredients that come from plants and/or minerals, and that are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition. Given the Products' numerous synthetic, non-natural, and highly processed ingredients, the Products are misleading and deceptive and therefore unlawful.

**B.    <u>The Products' Misleading and Deceptive Labeling</u>**

15.    **The Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells a variety of cleaning Products under the "ecover" brand name.

16.    **Challenged Representations on Products' Front Labels.** As described *supra*, Defendant falsely and misleadingly labels the Products with the Plant-Based Representations. Defendant reinforces the Plant-Based Representations on each Product with the phrase "Get nature on your side" (and other representations), as well as by displaying images of plants, including flowers and leaves, and by using green coloring.

17.    **Product Images.** The following images depict the Products:

///

///

///

///

///

///

///

///

---

[6] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.
[7] *Id.* at p. 246 (emphasis added).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

18.     **ecover All Purpose Cleaner** Product Image:



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

19.  **ecover Cream Scrub** Product Image:



20.   **ecover Delicate Wash** Product Image:



FIRST AMENDED COMPLAINT

21.     **ecover Dishwasher Powder** Product Image:



22.   **ecover Dishwasher Tablets** Product Image:



///

///

///

///

///

///

///

///

///

///

///

///

FIRST AMENDED COMPLAINT

23.    **ecover Dishwasher Tablets Zero** Product Image:



///

///

///

///

///

///

24.     **ecover Fabric Softener (Morning Mist)** Product Image:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

25.    **ecover Fabric Softener (Sunny Day)** Product Image:



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

26.    **ecover Floor Soap** Product Image:



27.     **ecover Laundry Detergent (Alpine Mint)** Product Image:



FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

28.     **ecover Laundry Detergent (Lavender Field)** Product Image:



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1

29.   **ecover Rinse Aid** Product Image:

2

3

4

5

6

7

8

9

10

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



30.   **ecover Stain Remover** Product Image:



31.   **ecover Toilet Cleaner** Product Image:



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

32.    **The Plant-Based Representations Are False, Misleading, and Deceptive.** Despite the Plant-Based Representations, the Products are chock full of synthetic, non-natural, and highly processed ingredients. That is, the Products contain numerous ingredients that do not come from plants and/or minerals, as well as ingredients that were subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition.

33.    **The Synthetic, Non-Natural, and Highly Processed Ingredients.** The following details each Product and its synthetic, non-natural, and highly processed ingredients:

34.    **ecover All Purpose Cleaner**

(1)    Benzyl benzoate: Is a benzoate ester obtained by the formal condensation of benzoic acid with benzyl alcohol. Defendant admits this ingredient is synthetic.[8]

(2)    Caprylyl/capryl glucoside:  Is a surfactant that is synthetically created by reacting glucose with certain alcohols.

(3)    Citral: Chemically, citral is a mixture of two aldehydes. Defendant admits this ingredient is synthetic.

(4)    Citronellal: Is a monoterpenoid aldehyde, which is the main component of citronella oil. Defendant admits this ingredient is synthetic.

(5)    Citronellol: Is formed by hydrogenation of geraniol or nerol. Defendant admits this ingredient is synthetic.

(6)    Eucalyptol: Chemically, eucalyptol is a cyclic ether and monoterpenoid. Defendant admits this ingredient is synthetic.

(7)    Eugenol: Is an allyl chain-substituted guaiacol, a member of the allylbenzene class of chemical compounds. It is toxic upon inhalation, and high doses may cause damage to the liver. Defendant admits this ingredient is synthetic.

(8)    Farnesol: Defendant admits this ingredient is synthetic.

(9)    Geraniol: Is a monoterpenoid and alcohol. It is a moderate skin irritant that may cause allergies, and when exposed to air, its oxidation products are even more irritating and allergenic. Defendant admits this ingredient is synthetic.

(10)   Geranyl acetate: Is a monoterpenoid and ester, which is prepared semi-synthetically by the condensation of geraniol with acetic acid. Defendant admits this ingredient is synthetic.

(11)   Isoeugenol: Is synthetically created from eugenol and is moderately and acutely toxic. Defendant admits this ingredient is synthetic.

---

[8] To the extent Defendant admits an ingredient in the ecover All Purpose Cleaner is synthetic, *see* https://us.ecover.com/products/purpose-cleaner/.  These admissions are not made on the Product's labeling or packaging.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(12) Isopropyl alcohol: Is a commercial synthetic alcohol and is synthesized from the reaction of propylene with sulfuric acid followed by hydrolysis. Defendant admits this ingredient is synthetic.

(13) Lactic acid: Is produced commercially through the chemical synthesis of acetaldehyde or through the fermentation of certain carbohydrates that have first been hydrolyzed.

(14) Lauryl glucoside: Is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.

(15) Limonene: Is synthetically created from geranyl pyrophosphate, via cyclization of a neryl carbocation. Defendant admits this ingredient is synthetic.

(16) Linalool: Is produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits this ingredient is synthetic.

(17) Myrcene: Is semi-synthetically produced from myrcia. Defendant admits this ingredient is synthetic.

(18) Oleic acid: Is synthetically created whereby stearic acid is dehydrogenated to produce the monosaturated derivative, oleic acid.

(19) Phenoxyethanol: Is highly purified and is synthetically created by treating phenol with ethylene oxide in an alkaline medium. Defendant admits this ingredient is synthetic.

(20) Pinene: Is synthetically produced with a bacterium. Defendant admits this ingredient is synthetic.

(21) Sophorolipids: Are surface-active glycolipid compounds synthesized through a multi-step fermentation process involving the yeast *Starmerella bombicola*.

(22) 2,6-dimethyl-7-octen-2-ol: Is also known has dihydromyrcenaol, it is synthetically manufactured and is toxic and a hazardous substance. Defendant admits this ingredient is synthetic.

35. **ecover Cream Scrub**

(1) Coco-glucoside: Is a surfactant that is synthetically created by reacting glucose with certain alcohols.

(2) Glycerin: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(3) Phenoxyethanol: Is synthetically created by treating phenol with ethylene oxide in an alkaline medium. Defendant admits this ingredient is synthetic.

(4) Xanthan gum: Is produced commercially through the fermentation of sugars with the bacterium *Xanthomonas campestris*, and then harvested via precipitation with isopropyl alcohol. Xanthan gum is also listed as being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

36.   **ecover Delicate Wash**

(1)   <u>Benzyl alcohol</u>: Is produced industrially from toluene via benzyl chloride through hydrogenation and can be toxic. Defendant admits this ingredient is synthetic ("Blend of plant-based & synthetic materials").[9]

(2)   <u>Citric acid</u>: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

(3)   <u>Fragrance</u>: Synthetic compounds composed of petroleum by-products such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals. Defendant admits this ingredient is synthetic ("Blend of plant-based & synthetic materials").

(4)   <u>Lauryl glucoside</u>: Is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.

(5)   <u>Potassium oleate</u>: Is a potassium salt of oleic acid, which is synthetically created.

(6)   <u>Potassium cocoate</u>: Is the resulting surfactant created by reacting coconut oil and potassium hydroxide (saponification). Potassium hydroxide is listed as being "synthetic" under 7 C.F.R. § 205.605.  According to 7 U.S.C. § 6502 (21), "The term 'synthetic means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

**(7)**   <u>Sodium laureth sulfate ("SLES")</u>:  SLES is synthetic, manufactured by the ethoxylation of dodecyl alcohol. The resulting ethoxylate is converted to a half ester of sulfuric acid, which is converted to sodium salt. SLES can also be contaminated with ethylene oxide and 1,4-dioxane, which are known human carcinogens.

37.   **ecover Dishwasher Powder**

(1)   <u>Alcohol alkoxylate</u>: Is created by alkoxylation, which is a process where compounds such as alcohols, phenols, amines, etc. are chemically reacted with alkoxides to form alkoxylates. The byproducts of this reaction include alcohols, glycols, glycol ethers, etc.

(2)   <u>Alpha-Terpineol acetate</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.[10]

(3)   <u>Amylase</u>:  Is commercially manufactured though a multi-step fermentation process.

---

[9] To the extent Defendant admits an ingredient in the ecover Delicate Wash is synthetic, *see* https://us.ecover.com/products/delicate-wash/. These admissions are not made on the Product's labeling or packaging.

[10] To the extent Defendant admits an ingredient in the ecover Dishwasher Powder is synthetic, *see* https://us.ecover.com/products/dishwasher-powder/. These admissions are not made on the Product's labeling or packaging.

(4)   Beta-Pinene: Is a bicyclic monoterpene chemical compound that is synthetically produced by pinene and a bacterium. Defendant admits this ingredient is synthetic.

(5)   Camphene: Is synthetically created from Alpha-Pinene of Turpentine. Defendant admits this ingredient is synthetic.

(6)   Citral: Chemically, citral is a mixture of two aldehydes. Defendant admits this ingredient is synthetic.

(7)   Citronellal: Is a monoterpenoid aldehyde, which is the main component of citronella oil. Defendant admits this ingredient is synthetic.

(8)   Citronellol: Is formed by hydrogenation of geraniol or nerol. Defendant admits this ingredient is synthetic.

(9)   Gammaterpinene: Synthetically made from sabinene. Defendant admits this ingredient is synthetic.

(10)   Limonene: Is synthetically created from geranyl pyrophosphate, via cyclization of a neryl carbocation. Defendant admits this ingredient is synthetic.

(11)   Linalool: Is produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits this ingredient is synthetic.

(12)   Sodium citrate: Is the trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605.  According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(13)   Sodium polyitaconate: Is a synthetic anti-filming agent, which is manufactured by creating itaconic acid through the fermentation of certain carbohydrates.

(14)   Subtilisin: Is created through protein engineering processes.

(15)   Terpineol: Synthetically manufactured from alpha-pinene. Defendant admits this ingredient is synthetic.

(16)   2,6-Dimethyloct-7-en-2-ol: Is also known has dihydromyrcenaol, it is synthetically manufactured and is toxic and a hazardous substance. Defendant admits this ingredient is synthetic.

38.   **ecover Dishwasher Tablets**

(1)   Amylase: Is commercially manufactured though a multi-step fermentation process.

(2)   Fatty alcohol alkoxylate: Is created by alkoxylation, which is a process where compounds such as alcohols, phenols, amines, etc. are chemically reacted with alkoxides to form alkoxylates. The byproducts of this reaction include alcohols, glycols, glycol ethers, etc.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(3) <u>Glycerin</u>: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(4) <u>Orange extract</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.[11]

(5) <u>Pine extract</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.

(6) <u>Polyoxyethylene trimethyldecyl alcohol</u>: Is synthetically manufactured. Defendant admits this ingredient is synthetic.

(7) <u>Protease</u>: Is an enzyme that catalyzes proteolysis, the breakdown of proteins into smaller polypeptide or into single amino acids.  Protease is commercially manufactured though a multi-step fermentation process.

(8) <u>Sodium citrate</u>: Is the trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605.  According to 7 U.S.C. § 6502 (21), the term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(9) <u>Sodium gluconate</u>: Is the sodium salt of gluconic acid. Manufacturing sodium gluconate involves neutralizing gluconic acid with a sodium base or by acidifying calcium gluconate with sulfuric acid, filtering the product and neutralizing the result with a sodium base.

(10) <u>Sodium polyaspartate</u>: Is the sodium salt of polyaspartic acid, which is synthesized by the polymerization of maleic anhydride in the presence of ammonium hydroxide.

(11) <u>Taed</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.

39. **ecover Dishwasher Tablets Zero**

(1) <u>Amylase</u>: Is commercially manufactured though a multi-step fermentation process.

(2) <u>Fatty alcohol alkoxylate</u>: Is created by alkoxylation, which is a process where compounds such as alcohols, phenols, amines, etc. are chemically reacted with alkoxides to form alkoxylates. The byproducts of this reaction include alcohols, glycols, glycol ethers, etc.

(3) <u>Glycerin</u>: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

---

[11] To the extent Defendant admits an ingredient in the ecover Dishwasher Tablets is synthetic, *see* https://us.ecover.com/products/automatic-dishwasher-tablets-2. These admissions are not made on the Product's labeling or packaging.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(4)   Polyoxyethylene trimethyldecyl alcohol: Is synthetically manufactured. Defendant admits this ingredient is synthetic.[12]

(5)   Protease: Is an enzyme that catalyzes proteolysis, the breakdown of proteins into smaller polypeptide or into single amino acids. Protease is commercially manufactured though a multi-step fermentation process.

(6)   Sodium citrate: Is the trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), the term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(7)   Sodium gluconate: Is the sodium salt of gluconic acid. Manufacturing sodium gluconate involves neutralizing gluconic acid with a sodium base or by acidifying calcium gluconate with sulfuric acid, filtering the product and neutralizing the result with a sodium base.

(8)   Sodium polyaspartate: Is the sodium salt of polyaspartic acid, which is synthesized by the polymerization of maleic anhydride in the presence of ammonium hydroxide.

(9)   Taed: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.

40.   **ecover Fabric Softener (Morning Fresh)**

(1)   Benzyl acetate: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.[13]

(2)   Dihydromyrcenol: It is a synthetically prepared fragrance. Defendant admits this ingredient is synthetic.

(3)   Geraniol: Is a monoterpenoid and alcohol, it is a moderate skin irritant that may cause allergies and when exposed to air, its oxidation products are even more irritating and allergenic. Defendant admits this ingredient is synthetic.

(4)   Geranyl acetate: Is a monoterpenoid and ester, which is prepared semi-synthetically by the condensation of geraniol with acetic acid. Defendant admits this ingredient is synthetic.

(5)   Lactic acid: Is produced commercially through the chemical synthesis of acetaldehyde or through the fermentation of certain carbohydrates that have first been hydrolyzed.

(6)   Limonene: Is synthetically created from geranyl pyrophosphate, via cyclization of a neryl carbocation. Defendant admits this ingredient is synthetic.

---

[12] To the extent Defendant admits an ingredient in the ecover Zero Dishwasher Tablets is synthetic, *see* https://us.ecover.com/products/zero-automatic-dishwasher-tablets/. These admissions are not made on the Product's labeling or packaging.

[13] To the extent Defendant admits an ingredient in the ecover Fabric Softener (Morning Fresh) is synthetic, *see* https://us.ecover.com/products/fabric-softener/. These admissions are not made on the Product's labeling or packaging.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(7)   <u>Linalool</u>: Is produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits this ingredient is synthetic.

(8)   <u>P-anisic acid</u>: Is also known as 4-methoxybenzoic acid or draconic acid. It is one of the isomers of anisic acid, and it is generally obtained by the oxidation of anethole or p-methoxyacetophenone.

(9)   <u>Tricyclodecenyl propionate</u>: It is a synthetic fragrance. Defendant admits this ingredient is synthetic.

(10)  <u>Undecan-4-olide</u>: Is synthetically created in a lab and is mildly toxic. Defendant admits this ingredient is synthetic.

41.   **ecover Fabric Softener (Sunny Day)**

(1)   <u>Alpha-hexylcinnamaldehyde</u>: Is a synthetic fragrance. Defendant admits this ingredient is synthetic.[14]

(2)   <u>Citronellol</u>: Is formed by hydrogenation of geraniol or nerol. Defendant admits this ingredient is synthetic.

(3)   <u>Dihydromyrcenol</u>: It is a synthetically prepared fragrance. Defendant admits this ingredient is synthetic.

(4)   <u>Hexyl salicylate</u>: Is a synthetic aroma chemical. Defendant admits this ingredient is synthetic.

(5)   <u>Lactic acid</u>: Is produced commercially through the chemical synthesis of acetaldehyde or through the fermentation of certain carbohydrates that have first been hydrolyzed.

(6)   <u>Nopyl acetate</u>: It is synthetically manufactured and has low toxicity. Defendant admits this ingredient is synthetic.

(7)   <u>Oxacyclohexadecen-2-one</u>: Is a synthetic flavoring substance. Defendant admits this ingredient is synthetic.

(8)   <u>P-anisic acid</u>: Is also known as 4-methoxybenzoic acid or draconic acid. It is one of the isomers of anisic acid, and it is generally obtained by the oxidation of anethole or p-methoxyacetophenone.

(9)   <u>Terpineol</u>: Synthetically manufactured from alpha-pinene. Defendant admits this ingredient is synthetic.

(10)  <u>Verdyl acetate</u>: It is not present in nature, and all products are synthetic with low toxicity. Defendant admits this ingredient is synthetic.

(11)  <u>2-phenylethanol</u>: It is synthetically prepared through Grignard synthesis. Defendant admits this ingredient is synthetic.

---

[14] To the extent Defendant admits an ingredient in the ecover Fabric Softener (Sunny Day) is synthetic, *see* https://us.ecover.com/products/stain-remover/. These admissions are not made on the Product's labeling or packaging.

42. **<u>ecover Floor Soap</u>**

(1) <u>Fragrance</u>: Synthetic compounds composed of petroleum by-products, such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals. Defendant admits this ingredient is synthetic ("Blend of plant-based & synthetic materials").[15]

43. **<u>ecover Laundry Detergent (Alpine Mint)</u>**

(1) <u>Amylase</u>: Is commercially manufactured though a multi-step fermentation process.

(2) <u>Benzisothiazolinone</u>: It is an antimicrobial and preservative chemical and is moderately toxic. Defendant admits this ingredient is synthetic.[16]

(3) <u>Caprylyl/decyl glucoside</u>:  Is a surfactant that is synthetically created by reacting glucose with certain alcohols.

(4) <u>Citric acid solution</u>: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

(5) <u>Fragrance</u>: While Defendant does not disclose the specific fragrance compounds used in this Product, on information and belief, the Product contains numerous synthetic fragrances, similar to the ecover Lavender Field Laundry Detergent.

(6) <u>Glycerin</u>: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(7) <u>Lauryl ethoxylate</u>: Is a synthetic created by mixing ethylene oxide with fatty alcohols, which have alkayl carbon atoms.

(8) <u>Lauryl/myristyl glucoside</u>: Lauryl glucoside is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.  Myristyl glucoside is synthetically created by condensing myristyl alcohol with glucose.

(9) <u>Lipase</u>: Is commercially manufactured though a multi-step fermentation process.

(10) <u>Methylisothiazolinone</u>: It is a synthetic preservative and is linked to lung toxicity, allergic reactions, and possible neurotoxicity. Defendant admits this ingredient is synthetic.

(11) <u>Potassium cocoate</u>: Is the resulting surfactant created by reacting coconut oil and potassium hydroxide (saponification).  Potassium hydroxide is listed as

---

[15] To the extent Defendant admits an ingredient in the ecover Floor Soap is synthetic, *see* https://us.ecover.com/products/floor-soap/. These admissions are not made on the Product's labeling or packaging.

[16] To the extent Defendant admits an ingredient in the ecover Laundry Detergent (Alpine Mint) is synthetic, *see* https://us.ecover.com/products/2x-laundry-detergent-3/. These admissions are not made on the Product's labeling or packaging.

**FIRST AMENDED COMPLAINT**

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(12)   Protease: Is an enzyme that catalyzes proteolysis, the breakdown of proteins into smaller polypeptide or into single amino acids. Protease is commercially manufactured though a multi-step fermentation process.

(13)   Sodium citrate: Is the trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(14)   Sodium gluconate: Is the sodium salt of gluconic acid. Manufacturing sodium gluconate involves neutralizing gluconic acid with a sodium base or by acidifying calcium gluconate with sulfuric acid, filtering the product and neutralizing the result with a sodium base.

(15)   Sodium laureth sulfate ("SLES"): SLES is synthetic, manufactured by the ethoxylation of dodecyl alcohol. The resulting ethoxylate is converted to a half ester of sulfuric acid, which is converted to sodium salt. SLES can also be contaminated with ethylene oxide and 1,4-dioxane, which are known human carcinogens.

(16)   Sodium lauryl sulfate ("SLS"): Is synthetic and is created by splitting certain oils into glycerin and the component fatty acids, one of which is lauric acid. The lauric acid is isolated and then hydrogenated to form the lauryl alcohol. Alternately, the whole oil can be esterified and then hydrogenated to form the fatty alcohols of which lauryl alcohol would be isolated by fractionation. The lauryl alcohol is then combined with sulfur which then forms the salt, sodium lauryl sulfate.

44.   **ecover Laundry Detergent (Lavender Field)**

(1)   Alpha-amylase: Is commercially manufactured though a multi-step fermentation process.

(2)   Benzylisothiazolinone: Is an antimicrobial and preservative chemical, it is moderately toxic and a moderate skin sensitizer. Defendant admits this ingredient is synthetic.[17]

(3)   Carboxymethyl Inulin: Is created by synthesizing a carboxymethyl group onto an inulin backbone.

(4)   Citric acid: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

---

[17] To the extent Defendant admits an ingredient in the ecover Laundry Detergent (Lavender Field) is synthetic, *see* https://us.ecover.com/products/laundry-detergent-lavender-field/. These admissions are not made on the Product's labeling or packaging.

**FIRST AMENDED COMPLAINT**

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(5)  <u>C12-16 pareth-7</u>: Is synthetic and is a polyethylene glycol ether of a mixture of synthetic C12-16 fatty alcohols containing an average of 7 moles of ethylene oxide. Polyethylene glycol is synthetic, derived from petroleum, and has low toxicity.

(6)  <u>Decyl glucoside</u>: Is synthetically created through the chemical reaction of glucose with fatty alcohol decanol.

(7)  <u>Glycerin</u>: Is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(8)  <u>Lauryl glucoside</u>: Is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.

(9)  <u>Lavandin extract</u>: Synthetically created with true lavender and spike lavender. Defendant admits this ingredient is synthetic.

(10) <u>Linalool</u>: Is produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits this ingredient is synthetic.

(11) <u>Methylchloroisothiazolinone</u>: Is a synthetic preservative and a standardized chemical allergen, in high concentrations it can cause chemical burns. Defendant admits this ingredient is synthetic.

(12) <u>Methylisothiazolinone</u>: It is a synthetic preservative and is linked to lung toxicity, allergic reactions, and possible neurotoxicity. Defendant admits this ingredient is synthetic.

(13) <u>Phenoxyethanol</u>: Is highly purified and is synthetically created by treating phenol with ethylene oxide in an alkaline medium. Defendant admits this ingredient is synthetic.

(14) <u>Polyethylene glycol</u>: It is a synthetic material derived from petroleum with a wide range of clinical applications and has low toxicity. Defendant admits this ingredient is synthetic.

(15) <u>Potassium cocoate</u>: Is the resulting surfactant that is created by reacting coconut oil and potassium hydroxide (saponification).  Potassium hydroxide is listed as being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(16) <u>Propylene glycol</u>: It is a synthetic liquid substance that absorbs water. Defendant admits this ingredient is synthetic (petrochemical).

(17) <u>Protease</u>: Is an enzyme that catalyzes proteolysis, the breakdown of proteins into smaller polypeptide or into single amino acids.  Protease is commercially manufactured though a multi-step fermentation process.

(18) <u>Rosemary extract</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.

(19) <u>Sodium diglycolate</u>: Defendant admits this ingredient is synthetic.

(20) <u>Sodium glycolate</u>: Is a synthetic sodium salt comprising of equal parts sodium and glycolate ions. Defendant admits this ingredient is synthetic.

(21) <u>Sodium lauryl sulfate ("SLS")</u>: Is synthetic and is created by splitting certain oils into glycerin and the component fatty acids, one of which is lauric acid. The lauric acid is isolated and then hydrogenated to form the lauryl alcohol. Alternately, the whole oil can be esterified and then hydrogenated to form the fatty alcohols of which lauryl alcohol would be isolated by fractionation. The lauryl alcohol is then combined with sulfur which then forms the salt, sodium lauryl sulfate.

(22) <u>Tetrasodium edta</u>: Defendant admits this ingredient is synthetic.

45. **ecover Rinse Aid**

(1) <u>Benzylisothiazolinone</u>: Is an antimicrobial and preservative chemical, it is moderately toxic and a moderate skin sensitizer. Defendant admits this ingredient is synthetic (petrochemical).[18]

(2) <u>Citric acid</u>: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

(3) <u>Decyl glucoside</u>: Is synthetically created through the chemical reaction of glucose with the fatty alcohol decanol.

(4) <u>Isopropanol</u>: It is a laboratory and household chemical. Defendant admits this ingredient is synthetic (petrochemical).

(5) <u>Methylisothiazolinone</u>: It is a synthetic preservative and is linked to lung toxicity, allergic reactions, and possible neurotoxicity. Defendant admits this ingredient is synthetic (petrochemical).

(6) <u>Sophorolipids</u>: Are surface-active glycolipid compounds synthesized through a multi-step fermentation process involving the yeast *Starmerella bombicola*.

46. **ecover Stain Remover**

(1) <u>Beta-caryophyllene</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.[19]

(2) <u>Citric acid</u>: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

(3) <u>Disubstituted alaninamide</u>: Is synthetically made in a laboratory. Defendant admits this ingredient is synthetic.

---

[18] To the extent Defendant admits an ingredient in the ecover Rinse Aid is synthetic, *see* https://us.ecover.com/products/rinse-aid/. These admissions are not made on the Product's labeling or packaging.

[19] To the extent Defendant admits an ingredient in the ecover Stain Remover is synthetic, *see* https://us.ecover.com/products/fabric-softener-2/. These admissions are not depicted on the Product's labeling or packaging.

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

(4) <u>Glycerin</u>: Is a synthetic chemical, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

(5) <u>Isopropanol</u>: Defendant admits this ingredient is synthetic.

(6) <u>Lauryl glucoside</u>: Is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.

(7) <u>Linalool</u>: Is produced industrially by hemi-synthesis from pinene or through total chemical synthesis. Defendant admits this ingredient is synthetic.

(8) <u>Limonene</u>: Is synthetically created from geranyl pyrophosphate, via cyclization of a neryl carbocation. Defendant admits this ingredient is synthetic.

(9) <u>Methylisothiazolinone</u>: It is a synthetic preservative and is linked to lung toxicity, allergic reactions, and possible neurotoxicity. Defendant admits this ingredient is synthetic.

(10) <u>Phenoxyethanol</u>: Is highly purified and is synthetically created by treating phenol with ethylene oxide in an alkaline medium. Defendant admits this ingredient is synthetic.

(11) <u>Propylene Glycol</u>: It is a synthetic liquid substance that absorbs water. Defendant admits this ingredient is synthetic.

(12) <u>Sodium formate</u>: It is synthetically created in a laboratory and is the sodium salt of formic acid. Defendant admits this ingredient is synthetic.

(13) <u>Sodium laureth sulfate ("SLES")</u>:  SLES is synthetic, manufactured by the ethoxylation of dodecyl alcohol.  The resulting ethoxylate is converted to a half ester of sulfuric acid, which is converted to sodium salt. SLES can also be contaminated with ethylene oxide and 1,4-dioxane, which are known human carcinogens.

(14) <u>Subtilisin</u>: Is created through protein engineering processes.

47. **ecover Toilet Cleaner**

(1) <u>Citric acid</u>: Is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria *Aspergillus niger* and glucose. Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).

(2) <u>Fragrance</u>: Synthetic compounds composed of petroleum by-products such as benzene derivatives, aldehydes, toluene, and other known toxic chemicals. Defendant admits this ingredient is synthetic (vegetable- and petrochemical-based).[20]

---

[20] To the extent Defendant admits an ingredient in the ecover Toilet Cleaner is synthetic, *see* https://us.ecover.com/products/toilet-cleaner/. These admissions are not made on the Product's labeling or packaging.

(3)   <u>Glyoxal</u>: Is synthesized in a laboratory by oxidation of acetaldehyde with selenious acid and had a low to moderate toxicity rate. Defendant admits this ingredient is synthetic (petrochemical).

(4)   <u>Lauryl glucoside</u>: Is a surfactant that is synthetically created from glucose and lauryl alcohol. Lauryl alcohol is produced through hydrogenation.

(5)   <u>Sodium citrate</u>: Is the trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605. According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

(6)   <u>Xanthan gum</u>: Is produced commercially through the fermentation of sugars with the bacterium *Xanthomonas campestris*, and then harvested via precipitation with isopropyl alcohol.  Xanthan gum is also listed as being "synthetic" under 7 C.F.R. § 205.605.  According to 7 U.S.C. § 6502 (21), "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

## C.   <u>Defendant Misled Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to Their Detriment</u>

48.   **Material.** The False Advertising Claims were and are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products.

49.   **Reliance.** Plaintiff and reasonable consumers relied and rely on Defendant's False Advertising Claims in making the decision to purchase the Products.

50.   **Consumers Lack Knowledge of Falsity.** At the time Plaintiff and reasonable consumers purchased the Products, they did not know, and had no reason to know, that the Products' False Advertising Claims on the label were false, misleading, deceptive, and unlawful as set forth herein.

51.   **Misrepresentation/Omission.** The Plant-Based Representations materially misrepresented that the Products only contain ingredients that come from plants and/or from plants and minerals, and that are not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition.

52.   **Defendant's Knowledge.** Defendant knew, or should have known, that the Plant-Based Representations were false, misleading, deceptive, and unlawful, at the time that it advertised the Products and intentionally and deliberately placed the Plant-Based Representations on the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Products' labeling and packaging.

53.   **Detriment.**   Plaintiff and reasonable consumers would not have purchased the Products, or would have purchased the Products on different terms, if they had known the truth—that the Plant-Based Representations are false and the Products contain non-natural, synthetic, and highly processed ingredients. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.**   **The Products Are Substantially Similar**

54.   As described herein, Plaintiff purchased the ecover Dishwasher Tablets ("**Purchased Product**"). The additional products, ecover All Purpose Cleaner, ecover Cream Scrup, ecover Delicate Wash, ecover Dishwasher Powder, ecover Dishwasher Tablets, ecover Dishwasher Tablets Zero, ecover Fabric Softener (Morning Fresh), ecover Fabric Soap, ecover Laundry Detergent (Alpine Mint), ecover Laundry Detergent (Lavender Field), ecover Rinse Aid, ecover Stain Remover, and ecover Toilet Cleaner ("**Unpurchased Products**"), are substantially similar to the Purchased Product.

a.   **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.   **Brand.** All Products are sold under the ecover brand name.

c.   **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d.   **Purpose.** All Products are common household cleaning products.

e.   **False Advertising Claims.** All Products contain one of the Plant-Based Representations on the Products' labeling and packaging. In addition, all Products prominently display the Plant-Based Representations on the front label in order to focus the consumer's attention on the Plant-Based Representations.

f.   **Nature-Themed Imagery, Coloring, and Additional Representations.** Defendant reinforces the Plant-Based Representations on each Product by displaying images of plants, including flowers and leaves, and by using green coloring. Defendant also reinforces the Plant-Based Representations on each

Product through the following additional labeling statements and imagery:

> (1) "Get nature on your side"
>
> (2) "Made using renewable plant-based ingredients" or "Made using renewable plant-based & mineral ingredients"
>
> (3) "At Ecover, we have been pioneering green science for over 30 years to make effective, plant-based cleaners by planet-loving people"
>
> (4) Image of a flower above the "e" and "c" in the ecover brand name
>
> (5) Image of a leaf above the Plant-Based Representations with a dotted line connecting the representation and leaf

g. **Key Ingredients.** All Products contain non-plant-based, chemically modified, and highly processed ingredients, in overlapping combinations. The Purchased Product contains non-natural ingredients that are found in the Unpurchased Products. In addition, Defendant admits certain ingredients in each Product are synthetic.

h. **Misleading Effect.** The misleading effect of the Products' labels is the same for all Products.

## CLASS ACTION ALLEGATIONS

55. **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and
>
> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, the "Class").

56. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

57.   **Reservation of Rights to Amend the Class Definition.**  Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

58.   **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States. Accordingly, it would be impracticable to join all members of the Class before the Court.

59.   **Common Question Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.   Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

b.   Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

c.   Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

d.   Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

e.   Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

f.   Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.   Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

h.   Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.   Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

j.    Whether Defendant's conduct constitutes breach of express warranty;

k.    Whether Plaintiff and the Class are entitled to injunctive relief;

l.    Whether Defendant was unjustly enriched by its unlawful conduct.

60.    **Typicality:** Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Product. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

61.    **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

62.    **Superiority and Substantial Benefit**: A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

63. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

64. **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

65. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>**COUNT ONE**</u>

**Violation of the Unfair Competition Law ("UCL")**

**(California Business and Professions Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

66. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

67. **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

68. **The UCL.** The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.

69. **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products, specifically, labeling the Products with the Plant-Based

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT

Representations despite the Products containing numerous ingredients that do not come from plants and/or from plants and minerals, as well as ingredients that, through chemical processing and modification, have been materially altered from their original plant-based or mineral composition. Such claims and omissions appear on the labeling and packaging of the Products, which are sold at retail stores, point-of-purchase displays, and online.

70. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led—and continues to lead—reasonable consumers, including Plaintiff, to believe that the Products only contain ingredients that come from plants and/or from plants and minerals, and that were not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition. As such, reasonable consumers, including Plaintiff, believe the Products only contain natural ingredients.

71. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false representations.

72. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to California Business & Professions Code sections 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]" In addition, Defendant's use of various forms of media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

73. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

74. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or is otherwise ordered to do so.

75.     **Injunction.** Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

76.     **Causation/Damages.** Plaintiff and the California Subclass would not have purchased the Products but for the Plant-Based Representations. As a direct and proximate result of Defendant's misconduct, in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

77.     **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the applicable class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

78.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations exceed three years for certain states' laws of breach of warranty and unjust enrichment/restitution.  Thus, class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under those causes of action with a four-year (or longer) statute of limitations.

b.  **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme to promote and brand the Products as plant-based in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for true plant-based products. Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

c.  **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Plant-Based Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products are not plant-based and/or prominent qualifications and/or disclaimers on the Products' front label concerning the Products' ingredients' manufacturing process. Such relief is also not available through a legal remedy. In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **Discovery.** In addition, discovery—which has not yet been provided—may reveal that the claims providing legal remedies are inadequate.

### A. "Unfair" Prong

79.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal.App.4th 1394, 1403 (2006).

80. **Injury.** Defendant's action of mislabeling the Products with the Plant-Based Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and/or advertising do not outweigh any benefits.

81. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

82. **No Utility.** Here, Defendant's conduct of labeling the Products with the Plant-Based Representations has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

83. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

84. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

85. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Plant-Based Representations.

86. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

87.   **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Plant-Based Representations.

88.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that contained ingredients that are non-natural, synthetic, and/or highly processed. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.  Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B.   "Fraudulent" Prong

89.   **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

90.   **Fraudulent and Material Challenged Representations.** Defendant used the Plant-Based Representation with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Plant-Based Representations are false and Defendant knew or should have known of their falsity. The Plant-Based Representations are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

91.   **Fraudulent Business Practice.** As alleged herein, Defendant's misrepresentations constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

92.   **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

93.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1   to further its legitimate business interests, other than the conduct described herein. Defendant could

2   have refrained from labeling the Products with the Plant-Based Representations.

3       94.   **Business Practice.** All of the conduct alleged herein occurs and continues to occur in

4   Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of

5   conduct.

6       95.   **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and

7   the California Subclass seek an order of this Court enjoining Defendant from continuing to engage,

8   use, or employ its practice of labeling the Products with the Plant-Based Representations.

9       96.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact

10  and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted

11  premium for the Products.  Specifically, Plaintiff and the California Subclass paid for products that

12  they believed only contain ingredients that come from plants and/or from plants and minerals, and

13  that were not subjected to chemical modification or processing, which materially altered the

14  ingredients' original plant-based or mineral composition. Plaintiff and the California Subclass

15  would not have purchased the Products if they had known that the Plant-Based Representations

16  were false. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains

17  pursuant to the UCL.

18                          **C.    "Unlawful" Prong**

19      97.   **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful

20  practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC*

21  *Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

22      98.   **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged

23  herein, violates California Civil Code sections 1750, *et seq.* (the **CLRA**) and California Business

24  and Professions Code sections 17500, *et seq.* (the **FAL**) as set forth below in the sections regarding

25  those causes of action.

26      99.   **Additional Violations.** Defendant's conduct in making the representations described

27  herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to

28  applicable laws, as set forth herein, all of which are binding upon and burdensome to their

competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

100.   **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.  Defendant knew or should have known of its unlawful conduct.

101.   **Reasonably Available Alternatives.** There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have refrained from making the Plant-Based Representations and/or omitting that the Products contained ingredients that are not plant based, chemically modified, and/or highly processed.

102.   **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

103.   **Injunction.** Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive labeling and advertising of the Products.

104.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that the Plant-Based Representations were untrue. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

///

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## COUNT TWO

### Violation of the False Advertising Law ("FAL")

### (California Business & Professions Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

105. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

106. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

107. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, et seq., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

108. **False and Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Plant-Based Representations disseminated to the public through the Product's labeling/packaging and advertising. These representations were false because the Products did not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

109. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

110. **Intent to Sell.** Defendant's deceptive practices were specifically designed to induce reasonable consumers, like Plaintiff, to purchase the Products.

111. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the

California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

112. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

113. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

  a. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Plant-Based Representations, when they are not. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited

FIRST AMENDED COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

to, publicly disseminated statements that the Products are not plant-based and/or prominent qualifications and/or disclaimers on the Products' front label concerning the Products' ingredients' manufacturing process. Such relief is also not available through a legal remedy. In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

b. **Public Injunction.** Further, because a "public injunction" is available under the FAL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

c. **Discovery.** In addition, discovery may reveal that the claims providing legal remedies are inadequate.

### COUNT THREE

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**(California Civil Code §§ 1750, *et seq.*)**

**(*On Behalf of the California Subclass*)**

114. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

115. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

116. **CLRA Standard.** Plaintiff brings this action pursuant to California's Consumers Legal Remedies Act ("**CLRA**"), codified at Cal. Civ. Code §§ 1750, *et seq*. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

117. **Goods.** The Products are "goods," as defined by the CLRA in California Civil Code

§1761(a).

118. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

119. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

120. **Transactions.** Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

121. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations:

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have".

    b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another".

    c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised".

122. **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

123. **Malicious.** Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

124. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

125. **Causation/Reliance/Materiality.** Plaintiff and members of the California Subclass

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

were injured and suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. Such injury includes, but is not limited to, the purchase price of the Products and/or the portion of the price paid for the misrepresented attributes of the Products.

126. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

127. **Section 1782 – Prelitigation Demand/Notice.** More than thirty days prior to the filing of the First Amended Complaint, on January 14, 2021, Plaintiff's counsel, acting on behalf of Plaintiff and members of the Class, served a notice on Defendant at the addresses set forth therein, regarding Defendants' violations of the California Consumers Legal Remedies Act, pursuant to California Civil Code section 1782. *See* **Exhibit 1** (CLRA Demand). On or about January 20, 2021, notice was delivered to Defendant, enclosing the complaint filed in this action on January 15, 2021. *Id*; *see also* Complaint, ECF 1. The form, content, and delivery of the notice satisfied subsections (1) and (2) of section 1782(a). *Id.* The notice of violations and demand for remedial action, as of the filing of the First Amended Complaint, did not result in any appropriate correction, repair, replacement, or other remedial action by Defendant, including the remedial action requested therein

and set forth under section 1782(c).

128. **Causation/Damages.** As a direct and proximate result of Defendant's conduct in violation of the California Consumers Legal Remedies Act, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

129. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1770(a), Plaintiff and members of the California Subclass are entitled to seek and do hereby seek injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's False Advertising Claims.

130. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Plant-Based Representations, when they are not. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products are not plant-based and/or prominent qualifications and/or disclaimers on the Products' front label concerning the Products' ingredients' manufacturing process. Such relief is also not available through a legal remedy. In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

b. **Public Injunction.** Further, because a "public injunction" is available under the CLRA, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

c. **Discovery.** In addition, discovery may reveal that the claims providing legal remedies are inadequate.

## <u>COUNT FOUR</u>

### Breach of Express Warranty

#### (*On Behalf of the Nationwide Class and California Subclass*)

131.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

132.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

133.   **Express Warranty Basis of Bargain.** Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising, as described herein—specifically, the Challenged Representations. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

134.   **Challenged Representations.** Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products only contain ingredients that come from plants and/or from plants and minerals, and that are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition.

135.   **Breach of Warranty.** However, contrary to Defendant's express warranties about the nature of the Products, the Products contain numerous ingredients that do not come from plants or minerals whatsoever. In fact, Defendant **admits** many of the ingredients in the Products are synthetic. In addition, the Products contain numerous ingredients that have been subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition. Accordingly, the Products are not what Defendant represented them to be. As a result, Defendant breached its express warranties about the Products because the Products do not conform to Defendant's affirmations and promises.

136.   **Causation/Damages.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiff seeks a monetary award for breach of express warranty of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

137.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant

times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FIVE

### Unjust Enrichment

### (*On Behalf of the Nationwide Class and California Subclass*)

138. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

139. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

140. **Plaintiff/Consumers Conferred Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

141. **Defendant Knowingly Accepted Benefit.** Defendant had knowledge of such benefit. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

142. **Retention of Benefit Unjust.** Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

143. **Ongoing & Perpetuating Harm.** Defendant unjustly continues to profit from the original fraud by perpetuating its misrepresentations. Defendant continues to use the Challenged Representations on its labels and in its advertising to defraud and mislead consumers into paying for Products that do not conform to the Challenged Representations. Defendant continues to

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

capitalize on the perpetuation of this fraud because consumers and the public have a misperception of the Products—they believe the Products conform to the Challenged Representations when they do not.

144. **Restitution.** Equity cannot in good conscience permit Defendant to be economically enriched from such actions at the expense of Plaintiff and members of the Class. Accordingly, Plaintiff seeks an award pursuant to this cause of action for unjust enrichment of restitution and/or disgorgement of ill-gotten gains in the amount of the purchase price for the Products, as well as injunctive relief to prevent ongoing and future harm that will result from the ongoing False Advertising Claims.

145. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

146. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

   a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary.  For example, the limitations period is three years for claims brought under the FAL and CLRA.  However, the statutes of limitations

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

exceed three years for certain states' laws of unjust enrichment/restitution. Thus, class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under those causes of action with a four-year (or longer) statute of limitations.

b. **Broader Scope of Misconduct.** In addition, the scope of actionable misconduct under the law of unjust enrichment is broader than other causes of action asserted herein to include, for example, the conferral of a benefit on Defendant, the acceptance and retention of which is inequitable and unjust. Thus, Plaintiff and class members may be entitled to restitution under the laws of unjust enrichment, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

c. **Broader Class Definition.** The causes of action under the UCL, FAL, and CLRA only apply to a California Subclass, while the causes of action under breach of warranty and unjust enrichment apply to a nationwide Class. Accordingly, any relief in the form of an injunction, restitution, or damages may only apply to consumers who purchased the Products or reside in California, but not necessarily consumers who purchased the Products or reside outside of California, but in the United States.

d. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Plant-Based Representations, when they are not. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

achieved through available legal remedies. Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products are not plant-based and/or prominent qualifications and/or disclaimers on the Products' front label concerning the Products' ingredients' manufacturing process. Such relief is also not available through a legal remedy. In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

e. **Public Injunction.** Further, because a "public injunction" is available under the CLRA, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

f. **Discovery.** In addition, discovery may reveal that the claims providing legal remedies are inadequate.

## **PRAYER FOR RELIEF**

147.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. For an order certifying this action as a class action, appointing Plaintiff as representatives of the Class and California Subclass, and appointing Plaintiff's counsel as counsel for the Class and California Subclass;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action that would dispel the public misperception that Defendant's unlawful conduct has engendered, fostered, and facilitated that has resulted and continues to result in further harm to Plaintiff, the Class, and the California Subclass;

d.  For an order awarding restitution, compensatory and monetary damages, and/or disgorgement of wrongful profits to Plaintiff and the Class and California Subclass for all causes of action;

e.  For an order awarding pre-and post-judgment interest;

f.  For an order awarding attorneys' fees and costs;

g.  For an order awarding punitive damages; and

h.  For such other and further relief as the Court deems just and proper.

Dated: March 24, 2021

Respectfully submitted,

**CLARKSON LAW FIRM**
By:

*/s/ Katherine A. Bruce*
　　　RYAN J. CLARKSON
　　　SHIREEN M. CLARKSON
　　　KATHERINE A. BRUCE

**MOON LAW APC**
By:

*/s/ Christopher D. Moon*
　　　CHRISTOPHER D. MOON
　　　KEVIN O. MOON

*Attorneys for Plaintiff*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: March 24, 2021

Respectfully submitted,

**CLARKSON LAW FIRM**
By:

*/s/ Katherine A. Bruce*
RYAN J. CLARKSON
SHIREEN M. CLARKSON
KATHERINE A. BRUCE

**MOON LAW APC**
By:

*/s/ Christopher D. Moon*
CHRISTOPHER D. MOON
KEVIN O. MOON

*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069