1
2
3
4               UNITED STATES DISTRICT COURT
5              NORTHERN DISTRICT OF CALIFORNIA
6

7   ELIZABETH MAISEL,                    Case No. 21-cv-00413-TSH
8                    Plaintiff,
9            v.                          **ORDER DENYING MOTION TO DISMISS**
10   S.C. JOHNSON & SON, INC.,           Re: Dkt. No. 13
11                    Defendant.
12

13                              **I.   INTRODUCTION**
14          Plaintiff Elizabeth Maisel brings this putative class action against Defendant S.C. Johnson
15   & Son, Inc., alleging it mislabels certain of its Ecover brand cleaning products.  SC Johnson
16   moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and
17   9(b).  ECF No. 19.  Maisel filed an Opposition (ECF No. 25) and SC Johnson filed a Reply (ECF
18   No. 26).  The Court finds this matter suitable for disposition without oral argument and
19   **VACATES** the May 27, 2021 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties'
20   positions, relevant legal authority, and the record in this case, the Court **DENIES** SC Johnson's
21   motion for the following reasons.

22                              **II.   BACKGROUND**
23          SC Johnson is a Wisconsin corporation with its principal place of business in Racine,
24   Wisconsin.  First Am. Compl. ¶ 10, ECF No. 16.  It sells 14 cleaning products under the Ecover
25   brand name.  *Id.* ¶¶ 4, 15.  The products include: Ecover All Purpose Cleaner, Ecover Cream
26   Scrub, Ecover Delicate Wash, Ecover Dishwasher Powder, Ecover Dishwasher Tablets, Ecover
27   Dishwasher Tablets Zero, Ecover Fabric Softener (Morning Fresh), Ecover Fabric Softener
28   (Sunny Day), Ecover Floor Soap, Ecover Laundry Detergent (Alpine Mint), Ecover Laundry

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Detergent (Lavender Field), Ecover Rinse Aid, Ecover Stain Remover, and Ecover Toilet Cleaner

2  (collectively the "Products"). *Id.* ¶ 4.

3  Maisel is a resident of Berkeley, California, who purchased the Ecover Dishwasher Tablets

4  in early 2020. *Id.* ¶ 8. She alleges that SC Johnson falsely and misleadingly labels certain of its

5  Ecover products with the following claims: "Plant-based ingredients"; "With plant-based

6  ingredients"; "Plant-based & mineral ingredients"; or "With plant-based and mineral ingredients."

7  *Id.* ¶ 1. She further alleges SC Johnson "reinforces the plant-based representations on each

8  product with the following additional label statements: "Get nature on your side"; "Made using

9  renewable plant-based ingredients'" "Made using renewable plant-based ingredients" or "Made

10  using renewable plant-based & mineral ingredients'" "At Ecover, we have been pioneering green

11  science for over 30 years to make effective, plant-based cleaners by planet-loving people"; an

12  image of a flower above the "e" and "c" in the ecover brand name; and anmage of a leaf above the

13  plant-based representations with a dotted line connecting the representation and leaf. *Id.* ¶¶ 1, 17;

14  *see also id.* ¶¶ 18-31 (images depicting the products). Despite these representations, Maisel

15  alleges "the Products are chock full of synthetic, non-natural, and highly processed ingredients"

16  that do not come from plants and/or minerals, "as well as ingredients that were subjected to

17  chemical modification or processing, which materially altered the ingredients' original plant-based

18  or mineral composition." *Id.* ¶ 32; *see also id.* ¶¶ 33-47 (listing of ingredients in each Product).

19  Based on SC Johnson's representations, Maisel alleges that reasonable consumers such as

20  herself "believe the Products only contain ingredients that come from plants and/or from plants

21  and minerals, and that are not subject to chemical modification or processing, which materially

22  alters the ingredients' original plant-based or mineral composition." *Id.* ¶ 2. However, the

23  products "contain numerous ingredients that **do not come from plants or minerals whatsoever**,"

24  and "have been subjected to chemical modification or processing, which materially altered the

25  ingredients' original plant-based or mineral composition." *Id.* ¶ 3 (emphasis in original). Maisel

26  alleges these representations are misleading and deceptive, and therefore unlawful, and that she

27  would not have purchased the dishwasher tablets had she known the products contained

28  ingredients that do not come from plants or minerals. *Id.* ¶¶ 3, 8.

1      Maisel filed this case on January 15, 2021, seeking to bring a class action under Federal

2  Rule of Civil Procedure 23 on behalf of herself and other consumers who bought Ecover products.

3  After SC Johnson moved to dismiss her original complaint, Maisel filed the operative First

4  Amended Complaint.  She defines members of a Nationwide class as: "All residents of the United

5  States who, within the applicable statute of limitations periods, purchased the Products"; and a

6  California subclass as: "All residents of California who, within four years prior to the filing of this

7  Complaint, purchased the Products."  She brings five causes of action: (1) violations of

8  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., on behalf

9  of the California subclass; (2) violations of California's False Advertising Law ("FAL"), Cal. Bus.

10  & Prof. Code § 17500 et seq., on behalf of the California subclass, (3) violation of California's

11  Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., on behalf of the

12  California subclass; (4) breach of express warranty on behalf of the Nationwide and California

13  subclasses, and (5) unjust enrichment on behalf of the Nationwide and California subclasses.  *Id.*

14  ¶¶ 66-146.

15      SC Johnson filed the present motion on April 7, 2021.  It raises seven arguments: (1)

16  Maisel does not identify any false claims on the Ecover product labels because they contain plant-

17  based and/or mineral ingredients, as advertised; (2) her personal interpretation of "plant-based

18  ingredients" and "plant-based and mineral ingredients" does not reflect a reasonable consumer's

19  understanding of the terms because the product labels do not claim the products contain a specific

20  amount of plant-based or mineral ingredients; (3) Maisel cannot challenge the labels on 13 Ecover

21  products she did not purchase because she did not suffer any injury by them; (4) her express

22  warranty claim fails because the product labels are true, and her interpretation of "plant-based

23  ingredients" and "plant-based and mineral ingredients" cannot form the basis of an express

24  warranty; (5) her unjust enrichment claim fails because she received the benefit of the bargain – a

25  product that contains plant-based and mineral ingredients – and it duplicates her other claims; (6)

26  because Maisel asserts claims for damages, she does not lack an adequate remedy at law, and her

27  UCL, FAL, CLRA, and unjust enrichment claims fail; and (7) her national class claims should be

28  dismissed because this Court lacks personal jurisdiction over the non-California class members

United States District Court
Northern District of California

3

she purports to represent.  Mot. at 9-10.

### III.   JUDICIAL NOTICE

SC Johnson requests the Court take judicial notice of labels for Ecover Fabric Softener Morning Fresh, Ecover Fabric Softener Sunny Day, Ecover Stain Remover, Ecover Toilet Cleaner, and Ecover Laundry Detergent Lavender Field.  ECF No. 20.  The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "'Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging.'" *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1086-87 (N.D. Cal. 2017) (quoting *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098-99 (S.D. Cal. 2015)); *Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *2 (N.D. Cal. Sept. 3, 2013); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012).  The Court notes that the FAC also contains images of the packaging in question, and Maisel does not contest the authenticity of the pictures of the Ecover labels.  Accordingly, the Court takes judicial notice of these materials.

### IV.   STANDING

SC Johnson argues Maisel lacks standing to pursue her claims because she challenges products she never purchased and alleges too speculative an injury to seek injunctive relief.  Mot. at 17.  Because questions of Article III standing go to a federal court's subject-matter jurisdiction, an argument that a party lacks standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (where plaintiffs lack standing, a suit should be dismissed under Rule 12(b)(1)).

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).   Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*; *Chandler v. State Farm Mut. Auto.*

United States District Court
Northern District of California

1    *Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

2         A motion to dismiss under Rule 12(b)(1) may be facial or factual.  *Safe Air for Everyone v.*

3    *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where, as here, a defendant makes a facial attack on

4    jurisdiction, factual allegations of the complaint are taken as true.  *Fed'n of Afr. Am. Contractors*

5    *v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504

6    U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from

7    the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general

8    allegations embrace those specific facts that are necessary to support the claim.") (internal citation

9    and quotations omitted).  The plaintiff is then entitled to have those facts construed in the light

10   most favorable to her.  *Federation of Afr. Am. Contractors*, 96 F.3d at 1207.

11        **1.    Article III Standing**

12        Article III standing requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly

13   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

14   favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised*

15   (May 24, 2016).  In a class action, standing is satisfied if at least one named plaintiff meets the

16   requirements.  *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001).  "The party invoking

17   federal jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

18        A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent

19   defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th

20   Cir. 2011).  Additionally, if plaintiffs "state that they would not have purchased [a product] had

21   there been proper disclosure" of relevant facts, that is sufficient to plead causation.  *Id.* at 1070;

22   *see also Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 846 (N.D. Cal. 2018) (holding that plaintiffs

23   alleged a cognizable injury for purposes of standing because their claims were "premised on their

24   allegation that were it not for defendants' labeling, which omit the presence of lead, arsenic, and

25   BPA in their [contaminated dog food products], plaintiffs would not have purchased and spent

26   money on their Products.").  Thus, because Maisel alleges she purchased the Ecover dishwasher

27   tablets and would not have if she knew they were mislabeled, the Court finds she has Article III

28   standing to bring this case.

### 2.    Statutory Standing

Because Maisel alleges causes of action under the FAL, the CLRA, and the UCL, she must also demonstrate standing under those statutes.  *Punian v. Gillette Co.*, 2015 WL 4967535, at *7 (N.D. Cal. Aug. 20, 2015) (citing *Bruton v. Gerber Prod. Co.*, 961 F. Supp. 2d 1062, 1086 (N.D. Cal. 2013)).  To have standing under the FAL and the CLRA, a plaintiff must claim to have relied on an alleged misrepresentation.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 22 (2011) (plaintiff alleging a claim under the FAL must allege, inter alia, "that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim") (emphasis in original); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (finding plaintiff's CLRA claim failed because plaintiff failed to allege facts showing that he relied on any representation by defendant).  Under the FAL, a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*." *Kwikset Corp.*, 51 Cal. 4th at 322 (emphasis in original).  Likewise, for the purpose of bringing a CLRA cause of action, "[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered some kind of damage."  *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011); *Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, at *10 (N.D. Cal. Mar. 26, 2014) ("Actual reliance and economic injury are also required to have standing to sue under the CLRA.") (citing *Bruton*, 961 F. Supp. 2d at 1083).

Under the UCL, a private person has standing only if she "has suffered injury in fact *and* has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  The "as a result" language means that actual reliance is necessary for standing. *See Kwikset Corp.*, 51 Cal. 4th at 326–27; *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (stating that a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements").

"A plaintiff has suffered economic injury when she has either: (1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."  *Samet v. Procter & Gamble Co.,* 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (simplified).

1    Judges in this district have routinely held that allegations that mislabeling caused the

2    plaintiff to purchase products they might not have otherwise purchased suffices for statutory

3    standing.  *Bohac*, 2014 WL 1266848, at *11; *Bruton v. Gerber Prod. Co.*, 2014 WL 172111, at *9

4    (N.D. Cal. Jan. 15, 2014); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 961 (N.D. Cal. 2013)

5    ("Essentially, Brazil alleges that he and class members 'spent money that, absent defendants'

6    actions, they would not have spent,' which constitutes 'a quintessential injury-in-fact.'") (quoting

7    *Maya*, 658 F.3d at 1069).  Maisel alleges she spent money purchasing a product she would not

8    have purchased were it not for SC Johnson's purported mislabeling.  She claims she read SC

9    Johnson's misstatements on its product labels and relied on them in making her purchase.  That is

10   sufficient for statutory standing under the CLRA, UCL, and FAL.  *Bohac*, 2014 WL 1266848, at

11   *11; *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10,

12   2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).  Accordingly, Maisel has statutory standing.

13        **3.      Substantially Similar Products**

14   SC Johnson argues Maisel cannot challenge the product labels on the products she did not

15   purchase.  Mot. at 17-18.  In the Ninth Circuit, "[t]here is no controlling authority on whether

16   Plaintiffs have standing for products they did not purchase."  *Miller v. Ghirardelli Chocolate Co.*,

17   912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  However, "[t]he majority of the courts that have

18   carefully analyzed the question hold that a plaintiff may have standing to assert claims for

19   unnamed class members based on products he or she did not purchase so long as the products and

20   alleged misrepresentations are substantially similar."  *Id.* at 869; *see also Figy v. Frito-Lay N. Am.,*

21   *Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014) ("Courts in this district have adopted three

22   diverging approaches for analyzing standing to pursue claims for nonpurchased products.").  In

23   determining whether products are substantially similar, "[c]ourts look to a series of factors

24   including whether the challenged products are of the same kind, comprised of largely the same

25   ingredients, and whether each of the challenged products bears the same alleged mislabeling."

26   *Figy*, 67 F. Supp. 3d at 1083.  If the products are sufficiently similar, "any concerns regarding

27   material differences in the products can be addressed at the class certification stage."  *Anderson*,

28   888 F. Supp. 2d at 1006.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    Courts have previously found that diverse products bearing similar labels may be

2  considered "substantially similar."  *See, e.g., Bush v. Rust-Oleum Corp.*, 2021 WL 24842, at *1, 6

3  (N.D. Cal. Jan. 4, 2021) (where plaintiff purchased two Rust-Oleum products – a cleaner and a

4  degreaser – court held he had standing to contest an additional 13 Rust-Oleum products that he did

5  not purchase because the front-label representations about their "non-toxic" and "earth friendly"

6  properties were substantially similarly); *Baum v. J-B Weld Co., LLC*, 2019 WL 6841231, at *5

7  (N.D. Cal. Dec. 16, 2019) (finding plaintiff could establish substantial similarity among 24

8  products—epoxies, syringe epoxies, silicone sealants, gasket makers, and threadlockers—based on

9  similarity in packaging and/or mislabeling); *Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, at

10  *4 (E.D. Cal. Apr. 9, 2014) (the court—dealing with allegations pertaining to six shampoos and

11  conditioners—found that the one unpurchased product was substantially similar to the purchased

12  products because "the packaging of the [unpurchased product] is strikingly similar to the five

13  products that plaintiffs purchased . . . ."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL

14  2990766, at *13 (N.D. Cal. July 20, 2012) (the fact that "the different ice creams may ultimately

15  have different ingredients is not dispositive as Plaintiffs are challenging the same basic

16  mislabeling practice across different product flavors."); *Koh v. S.C. Johnson & Son, Inc.*, 2010

17  WL 94265, at *1, 3 (N.D. Cal. Jan. 6, 2010) (where the plaintiff brought claims related to

18  misleading labeling practices on "Windex, a multi-purpose cleaner designed for cleaning glass . . .

19  and Shout, a stain remover," the court deferred a finding about substantial similarity until the class

20  certification stage, noting "there is no brightline rule that different product lines cannot be covered

21  by a single class.").  Thus, "diverse products that bear similar or uniform labels may be considered

22  'substantially similar.'  The critical issue is whether the products are substantially similar with

23  respect to the alleged mislabeling." *Baum*, 2019 WL 6841231, at *5.

24    As in these cases, the Court finds that the similarity in packaging or labeling in the

25  products here can establish substantial similarity even among diverse products.  Maisel alleges

26  that all 14 products are substantially similar in the following ways:

27        a.  **Defendant.** All Products are manufactured, sold, marketed,
            advertised, labeled, and packaged by ]SC Johnson].

28

b. **Brand.** All Products are sold under the ecover brand name.

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d. **Purpose.** All Products are cleaning products.

e. **False Advertising Claims.** All Products contain one of the Plant-Based Representations on the Products' labeling and packaging. In addition, all Products prominently display the Plant-Based Representations on the front label in order tofocus the consumer's attention on the Plant-Based Representations.

f. **Nature-Themed Imagery, Coloring, and Additional Representations.** In addition, Defendant reinforces the Plant-Based Representations on each Product by displaying images of plants, including flowers and leaves, and by using green coloring. Defendant also reinforces the Plant-Based Representations on each Product through the following additional labeling statements:

•"Get nature on your side"

•"Made using renewable plant-based ingredients" or "Made using renewable plant-based & mineral ingredients"

•"At Ecover, we have been pioneering green science for over 30 years to make effective, plant-based cleaners by planet-loving people"

g. **Key Ingredients.** All Products contain non-plant-based, chemically modified, and highly processed ingredients, in overlapping combinations. The Purchased Products contains non-natural ingredients that are found in the Unpurchased Products. In addition, Defendant admits certain ingredients in each Product aresynthetic.

h. **Misleading Effect.** The misleading effect of the Products' labels is the same for all Products.

First Am. Compl. ¶ 54.  Based on these allegations, the Court finds Maisel has sufficiently alleged the unpurchased Ecover products are substantially similar to the Ecover product she purchased. Moreover, courts in the Ninth Circuit caution against too rigid an application of the standing requirements, warning "[courts] must examine the questions realistically: [they] must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong*, 275 F.3d at 867.  While arguments about the differences between the products, including their uses and ingredients, may be significant on class certification or summary judgment, SC Johnson's assertion that there are differences is not enough to show a lack of standing. *See Mattero v.*

*Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115 (N.D. Cal. 2018) ("Facts that plaintiff did not purchase the Laundry Detergent and the Laundry Detergent has different ingredients and that the Laundry Detergent only shares one harmful ingredient with the Dish Soap are not in and of themselves hurdles to plaintiff's standing."); *Bohac*, 2014 WL 1266848, at *12 (finding plaintiff had standing to bring claims challenging 29 products for having the label "100% NATURAL" and "all natural" because he claimed that all of the products "contain essentially the same representations" and "[t]he harm that he alleges, i.e., that he was misled by that purportedly fraudulent and incorrect representation, is the same for all 29 products."). SC Johnson's motion is therefore denied on this ground.

### 4.   Injunctive Relief

SC Johnson also argues Maisel lacks standing to seek injunctive relief because she does not plan to purchase the product, as formulated, in the future. Mot. at 19-20.

In order to establish standing to seek injunctive relief, a plaintiff "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan*, 504 U.S. at 560; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury." *Id.* The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

In the Ninth Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). This harm may be demonstrated in two ways: (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or (2) "the consumer's plausible allegations that she might purchase

1   the product in the future, despite the fact it was once marred by false advertising or labeling, as she

2   may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70.

3       In *Davidson*, the plaintiff alleged false advertising of flushable wipes that were not, in fact,

4   "suitable for disposal down a toilet." *Id.* at 961.  The Ninth Circuit held that she had adequately

5   pleaded imminent or actual harm by alleging "that she 'continues to desire to purchase wipes that

6   are suitable for disposal in a household toilet'; 'would purchase truly flushable wipes

7   manufactured by [Kimberly–Clark] if it were possible'; 'regularly visits stores . . . where

8   [Kimberly–Clark's] "flushable" wipes are sold'; and is continually presented with Kimberly–

9   Clark's flushable wipes packaging but has 'no way of determining whether the representation

10  "flushable" is in fact true.'" *Id.* at 970-71.

11      Here, Maisel alleges that if the products' ingredients were as represented, she "would like

12  to purchase the Products again in the future, despite the fact that the Products were once marred by

13  false advertising or labeling." First Am. Compl. ¶ 9.  She maintains she "is at risk of reasonably,

14  but incorrectly, assuming that [SC Johnson] fixed the formulation of the Products such that [she]

15  may buy them again, believing they were no longer falsely advertised." *Id.*  Maisel further alleges

16  she "continues to see the Products available for purchase and desires to purchase them again if the

17  Plant-Based Representations were in fact true," but she "is, and continues to be, unable to rely on

18  the truth of the Products' Plant-Based Representations." *Id.* ¶ 8.  These allegations closely mirror

19  the *Davidson* plaintiff's.  *See also In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at

20  *11 (N.D. Cal. Feb. 6, 2020) (finding standing to plead injunctive relief in false advertising case

21  where plaintiffs alleged they regularly visited places where defendant's products are sold and

22  would purchase their products in the future if they contained sufficient quantities of the desired

23  ingredients, but they had no way to be certain that defendant's ingredient representations are true

24  when they see the products on the store shelves); *Snarr v. Cento Fine Foods Inc.*, 2019 WL

25  7050149, at *6 (N.D. Cal. Dec. 23, 2019) ("Plaintiffs establish threat of future harm by alleging

26  that they would purchase the Products in the future only if they could rely on Defendant's

27  labeling, whether the 'Certified' mark was substantiated as D.O.P. certification or if it was

28  removed.  This sufficiently alleges the first example of future harm noted in *Davidson*—Plaintiffs

United States District Court
Northern District of California

will not purchase the Products until they can rely on the Products' representations.  Thus, the Court holds that Plaintiffs have standing to seek injunctive relief and DENIES Defendant's motion to dismiss the claims for such relief."); *Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (rejecting argument that the plaintiff could read labels in the future to determine whether products were "all natural" and holding that the plaintiff plausibly pleaded future harm by alleging that he would buy food products in the future if they were in fact all natural and that he would be "'hesitant to rely' on Presidio's labeling due to the misrepresentations" that he was challenging in the case).  Thus, because Maisel has not disclaimed an interest in purchasing Ecover products in the future, the Court finds her allegations are sufficient.  *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("As plaintiffs further note, were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*, 2011 WL 1362188 at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.").  SC Johnson argues Maisel's "claim that she is 'at risk' of 'assuming that [it] fixed the formulation of the Products such that [she] may buy them again, believing they were no longer falsely advertised' rings hollow."  Mot. at 20.  At this point in the proceedings, however, the Court is obligated to accept Maisel's allegations as true.  *See In re Bang Energy Drink Mktg. Litig.*, 2020 WL 4458916, at *11.  Accordingly, the Court holds that Maisel has standing to seek injunctive relief.

## V.    RULE 12(B)(6)

SC Johnson also moves for dismissal under Federal Rule of Civil Procedure 12(b)(6), which "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (simplified).  Rule 8 provides that a

1   complaint must contain a "short and plain statement of the claim showing that the pleader is

2   entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a

3   claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4   Plausibility does not mean probability, but it requires "more than a sheer possibility that a

5   defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must

6   therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.

7   *Twombly*, 550 U.S. at 555 (quotations and citation omitted).  In considering a motion to dismiss,

8   the court accepts factual allegations in the complaint as true and construes the pleadings in the

9   light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

10  F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

11  **A.      UCL, FAL, and CLRA Claims**

12          Maisel's first three causes of actions are brought under the UCL, FAL, and CLRA for

13  allegedly misleading statements on the product packaging.  The UCL prohibits any "unlawful,

14  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The FAL

15  prohibits any "unfair, deceptive, untrue, or misleading advertising."  *Id.* § 17500.  "Any violation

16  of the false advertising law" necessarily violates the UCL.  *Williams v. Gerber Prods. Co.*, 552

17  F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).  The CLRA prohibits "unfair

18  methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  For

19  example, "[a]dvertising goods or services with intent not to sell them as advertised" is an unlawful

20  practice.  *Id.* § 1770(a)(9).

21          SC Johnson argues Maisel fails to adequately allege the product labels are misleading

22  under these statutes because her interpretations of "plant-based ingredients" and "plant-based and

23  mineral ingredients" do not reflect a reasonable consumer's understanding of the terms.  Mot. at

24  13-14.  It further argues the claims fail because they are subject to the heightened pleading

25  standard under Rule 9, and because Maisel does not allege the products lack plant-based or

26  mineral ingredients.  *Id.* at 12.

27          **1.      Rule 9(b) Heightened Pleading Standard**

28          Where, as here, a plaintiff asserts a claim sounding in fraud, the plaintiff must "state with

United States District Court
Northern District of California

particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b).  A claim sounds in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Rule 9(b)'s heightened pleading standard applies to UCL, FAL, and CLRA causes of actions because they "are 'grounded in fraud' or 'sound in fraud.'" *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (quoting *Kearns*, 567 F.3d at 1125).  Maisel alleges SC Johnson used several false or misleading labels to market and sell the Ecover products.  Because these allegations sound in fraud, they must meet the heightened pleading standards by alleging the "the who, what, when, where, and how." *Kearns*, 567 F.3d at 1124–25 (quoting *Vess*, 317 F.3d at 1106).  As such, the Court must ensure Maisel meets the Rule 9(b) threshold before assessing whether she alleges sufficient facts to demonstrate a reasonable consumer would be deceived by the advertisements.

Maisel alleges that in early 2020 (the "when"), she (the "who") purchased Ecover Dishwasher Tablets at Andronicos Community Market in Berkeley, California (the "where"). First Am. Compl. ¶¶ 8.  She asserts that SC Johnson misled customers through "falsely and misleadingly labels certain of its 'ecover' brand cleaning products with the following claims: 'Plant-based ingredients'; 'With plant-based ingredients'; 'Plant-based & mineral ingredients'; or 'With plant-based and mineral ingredients'" (the "what"). *Id.* ¶ 1.  Maisel expands on the "what" by detailing how SC Johnson reinforces the plant-based representations on each product by displaying images of plants, including flowers and leaves, and by using green coloring, and by using additional labeling statements. *Id.*  She alleges she relied on SC Johnson's plant-based

United States District Court
Northern District of California

representations stated on the product's label and packaging, which leads consumers, including herself, "to believe that the Products only contain ingredients that come from plants and/or from plants and minerals, and that were not subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition.  As such, reasonable consumers, including Plaintiff, believe the Products only contain natural ingredients" (the "how").  *Id.* ¶¶ 8, 70.  Based on these allegations, the Court finds Maisel "set[s] forth more than the neutral facts necessary to identify the transaction"; indeed, she "set[s] forth what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106; *see also Zeiger*, 304 F. Supp. 3d at 849; *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1079 (S.D. Cal. 2019); *Shank*, 2018 WL 510169, at *8; *Przybylak v. Bissell Better Life LLC*, 2019 WL 8060076, at *4 (C.D. Cal. July 19, 2019); *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 695-96 (9th Cir. 2016).

Accordingly, Maisel pleads her UCL, FAL, and CLRA causes of action with sufficient particularity to place SC Johnson on notice of the circumstances constituting the alleged fraud.

### 2.    Reasonable Consumer Test

To state a claim under the UCL, FAL, and CLRA, Maisel must allege facts satisfying the "reasonable consumer" standard, i.e. that members of the public are likely to be deceived.[1] *Williams*, 552 F.3d at 938.  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  "Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*  "In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'"  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 110 (2003)).

---

[1] "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together."  *Hadley*, 243 F. Supp. 3d at 1089.

United States District Court
Northern District of California

United States District Court
Northern District of California

Whether a business practice is deceptive is an issue of fact not generally appropriate for decision on a motion to dismiss. *See, e.g., Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). The Ninth Circuit has emphasized that under the reasonable consumer test, it is a "rare situation in which granting a motion to dismiss is appropriate" because "it raises questions of fact." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Williams*, 552 F.3d at 939. Thus, for purposes of this order, the Court need only decide whether it is plausible that "'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). The Court finds that it is.

In *Williams*, the Ninth Circuit reversed dismissal of UCL, FAL, and CLRA claims. 552 F.3d at 940. The plaintiff alleged that the use of "Fruit Juice" on a snack accompanied with images of fruit was deceptive because the snack "contained no fruit juice from any of the fruits pictured on the packaging and because the only juice contained in the product was white grape juice from concentrate." *Id.* at 936. The plaintiff also challenged language on the side panel of the packaging that the snack "was made 'with real fruit juice and other all natural ingredients,' even though the two most prominent ingredients were corn syrup and sugar" and was "one of a variety of nutritious Gerber Graduates foods and juices." *Id.* The Ninth Circuit disagreed with the district court's assessment that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified." *Id.* at 939. Instead, the Ninth Circuit noted that consumers should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.*

Maisel alleges SC Johnson uses several false or misleading phrases that, taken together, cause reasonable consumers to "believe the Products only contain ingredients that come from plants and/or from plants and minerals, and that are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition." First Am. Compl. ¶ 2. There is no dispute that the products contain at least some plant and/or

16

1    mineral ingredients, and in that sense, certain aspects of the packaging could be considered

2    accurate.  "In applying the reasonable consumer standard, however, the packaging must be

3    considered in context."  *Tucker v. Post Consumer Brands, LLC*, 2020 WL 1929368, at *5 (N.D.

4    Cal. Apr. 21, 2020).  For example, in *Tucker*, plaintiffs alleged that the brand name "Honey

5    Bunches of Oats" and the images on the cereal's packaging deceptively convey that honey is a

6    primary or significant sweetener in the cereal.  *Id.*  In denying Post's motion to dismiss the claims

7    on the ground that no reasonable consumer would understand the packaging to make a

8    representation about the amount of honey in the cereal, the court considered the packaging in

9    context, including an image of a radiating sun, the words "HONEY BUNCHES OF OATS," and a

10    honey dipper dripping honey.  *Id.*  Although the package did not make any objective

11    representations about the amount of honey in the cereal, "a reasonable consumer could see the

12    prominent honey-related words and imagery and be deceived into thinking the cereal contained

13    relatively less refined sugar and more honey.  If so misled, the reasonable consumer is not

14    expected to pick up the product and examine the fine print on the ingredient list."  *Id.*

15    Here, too, the Court must consider the packaging in context.  The Ecover brand cleaning

16    products include the following label claims: "Plant-based ingredients"; "With plant-based

17    ingredients"; "Plant-based & mineral ingredients"; or "With plant-based and mineral ingredients."

18    First. Am. Compl. ¶¶ 1, 18-31.  The products also include phrases such as "Get nature on your

19    side," "Made using renewable plant-based ingredients," "Made using renewable plant-based &

20    mineral ingredients," and/or "At Ecover, we have been pioneering green science for over 30 years

21    to make effective, plant-based cleaners by planet-loving people," as well as by displaying images

22    of plants and by using green coloring.  *Id.* ¶¶ 1, 16.  The products also display images of plants,

23    including flowers and leaves, and use green coloring.  *Id.* ¶¶ 1, 18-31.  Maisel's allegations

24    regarding a reasonable consumers' understanding of these plant-based representations is consistent

25    with cases concerning similar plant-based representations.  For example, in *Przybylak*, at issue

26    were a number of cleaning and personal care products labeled and advertised as "plant-derived,"

27    "made with 'plant-derived cleaning agents' or '100% plant-derived cleaning agents,'" among

28    other representations.  2019 WL 8060076, at *1.  Plaintiffs alleged these representations were

United States District Court
Northern District of California

false and misleading because "Defendant's products are not natural or made only with plant-derived agents, and instead contain various unnatural or synthetic ingredients and cleaning agents." *Id.* Defendant, however, argued "no reasonable consumer would believe Defendant to have guaranteed its products to be 100% natural and lacking any synthetic ingredients." *Id.* at *5. In rejecting defendant's arguments, the court explained:

> Whether or not Defendant's representations actually are true or not cannot be determined on a motion to dismiss. Plaintiffs plausibly allege that Defendant falsely or misleadingly represented that its products were natural or plant-derived, that a reasonable consumer would rely on those representations in purchasing Defendant's products, and that a reasonable consumer would understand those representations to mean that the products did not contain unnatural or synthetic ingredients.

*Id.* at *6. Accordingly, the court denied defendant's motion to dismiss plaintiffs' claims under the CLRA, UCL, and FAL. *Id.*

Similarly, in *Kutza v. Williams-Sonoma, Inc.*, plaintiff asserted that 60 cleaning and personal care products labeled and marketed as "plant-based," "Active Ingredients Derived from Natural Sources," "naturally derived," and "natural," were "misleading because the products in fact contain "unnatural, synthetic, and/or chemical ingredients." 2018 WL 5886611, at *1 (N.D. Cal. Nov. 9, 2018). Defendant contended that "a reasonable consumer would understand the claim of 'natural' only applied to the *active* ingredients and/or that '*derived from* natural sources' is not the equivalent of a representation that the product only contains 'natural' ingredients, active *or* inactive." *Id.* at *4 (emphasis in original). The court disagreed, emphasizing "[defendant] asks too much . . . when it seeks a determination as a matter of law on the pleadings (even including photographs of the labels) that no reasonable consumer would be misled by the cumulative effects of the labeling and marketing alleged in the complaint." *Id.* Accordingly, the court denied defendant's motion to dismiss plaintiff's consumer protection claims. *Id.* at *5.

The same result was reached in *Shank v. Presidio Brands, Inc.*, where defendant sought "to capture a growing segment of consumers who will pay a premium for 'natural, 'naturally derived', and plant-based products'" by labeling its personal hygiene products as "naturally-derived," "naturally," "only naturally derived," and "natural." 2018 WL 510169, at *1 (N.D. Cal. Jan. 23,

2018).  However, the court noted the products also "contain numerous ingredients that are artificially-engineered through multiple synthetic processes rendering the resulting ingredients and its components unnatural and not naturally-derived." *Id.* at *2 (citation omitted).  The court agreed with plaintiff's allegation that the products' labeling and advertising was false and misleading, holding that "[t]he statement on the labels of [the] products 'could easily be interpreted by consumers as a claim that all the ingredients in the product[s] were natural,' which [plaintiff] has plausibly alleged is false." *Id.* at *9 (citing *Williams*, 552 F.3d at 939).

*Gregorio v. Clorox Co.*, 2018 WL 732673, at *1 (N.D. Cal. Feb. 6, 2018), involved a variety of cleaning products labeled "naturally derived," which plaintiffs alleged reasonable consumers understood as meaning the products "did not contain any synthetic or non-natural ingredients."  However, the products also contained "synthetic and non-natural ingredients." *Id.* In rejecting defendant's argument that the term "naturally derived" would not mislead reasonable consumers, the court held, "[i]t is not unreasonable as a matter of law to expect a product labeled 'naturally derived' to contain no synthetic ingredients . . . [a]nd "the phrase ['naturally derived'] may be tantamount to, or at least could reasonably be understood to mean 'all natural' or '100% natural.'" *Id.* at *4 (citation omitted).  Therefore, the court found plaintiff's allegations plausible under the reasonable consumer test. *Id.*

Given the weight of authority finding plausible similar plant-based representations and analogous representations, such as "naturally derived," the Court finds Maisel's allegations plausible under the reasonable consumer test. *See Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978, at *4 (N.D. Cal. Jan. 18, 2021) ("Plausibility does not mean probability, but it requires more than a sheer possibility that a defendant has acted unlawfully.") (simplified).  SC Johnson argues that "no reasonable consumer would be misled by the accurate claim that the products contain plant-based and mineral ingredients."  Mot. at 13.  However, although the products do not make any objective representations about the amount of plant-based and mineral ingredients, it is plausible that a reasonable consumer could be deceived into thinking the products only contain ingredients that come from plants and/or from plants and minerals. *Tucker*, 2020 WL 1929368, at *5 ("Although the package does not make any objective representations about the

amount of honey in the cereal, a reasonable consumer could see the prominent honey-related words and imagery and be deceived into thinking the cereal contained relatively less refined sugar and more honey."). SC Johnson also argues the products' "back labels also clearly state the Products contain water, which all consumers know is neither a plant nor a mineral." Mot. at 14. However, a reasonable consumer "is not expected to pick up the product and examine the fine print on the ingredient list." *Tucker*, 2020 WL 1929368, at *5 (citing *Williams*, 552 F. 3d at 939-40 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."). Accordingly, SC Johnson's motion to dismiss is denied on this ground.

**B.     Breach of Express Warranty**

In her fourth cause of action, Maisel alleges SC Johnson purports, through the products' labeling and advertising, to create express warranties that they only contain ingredients that come from plants and/or from plants and minerals, and that despite its claims about the nature of the products, they contain numerous ingredients that do not come from plants or minerals. First Am. Compl. ¶¶ 134-35. As a result, Maisel alleges SC Johnson breached its express warranties about the products because they do not conform to its affirmations and promises. *Id.* ¶ 135. As a direct and proximate result of SC Johnson's breach of express warranty, Maisel and members of the class were harmed in the amount of the purchase price they paid for the and "economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial." *Id.* ¶ 136.

SC Johnson argues Maisel fails to state a breach of express warranty claim for two reasons. First, it argues "plant-based ingredients," "with plant-based ingredients," "plant-based and mineral ingredients," and "with plant-based and mineral ingredients" are true statements about the products, as they contain plant-based or plant-based and mineral ingredients. Mot. at 21. It maintains Maisel got what she paid for—dishwasher tablets that contain plant-based and mineral ingredients. *Id.* Second, it argues Maisel's interpretation of the statements is unreasonable and cannot form the basis of any express warranty because the statements "do not warrant to

consumers that the Products *only* contain ingredients that (1) come from plants and/or from plants and animals; and (2) are not subject to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition." *Id.* at 21-22 (emphasis in original).

Under California law, "a plaintiff asserting a breach of warranty claim must allege facts sufficient to show that: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Mattero*, 336 F. Supp. 3d at 1115 (citing *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010)).  Statements on a product's label are part of the bargain between buyer and seller, *Weinstat*, 180 Cal. App. 4th at 1227, and create express warranties, *Mattero*, 336 F. Supp. 3d at 1115-16 (citing several cases).  Courts look to the context of the statement to determine whether an express warranty has been made, including the label.  *Id.* at 1116 (holding the "environmentally responsible" claim on defendant's dish soap and laundry detergent product labels constitutes an affirmative fact or promise that the products do not have "unnatural, harmful, and toxic chemicals"); *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *25 (N.D. Cal. Sept. 22, 2016) (finding plaintiff adequately alleged that a virgin coconut oil label, in its full context, constitutes an affirmative fact or promise).  "The determination as to whether a particular statement is an expression of opinion or an affirmation of a fact is often difficult, and frequently is dependent upon the facts and circumstances existing at the time the statement is made." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985).  As such, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Jones*, 2016 WL 5210935, at *9 (simplified).

"[C]ourts in this district regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty." *Hadley*, 273 F. Supp. 3d at 1095 (citing *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *7 (N.D. Cal. Nov. 3, 2015) (because plaintiffs satisfied the reasonable consumer standard with respect to their California consumer protection claims, the same "allegations [we]re sufficient to state a claim for breach of express warranty")); *see also Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D.

1   Cal. 2014) (denying motion to dismiss breach of express warranty claim "for the same reasons as

2   the consumer protection and misrepresentation-based claims").  Accordingly, because Maisel's

3   "allegations are sufficient to state a claim under the reasonable consumer standard, they are

4   likewise sufficient to state a claim for breach of express warranty."  *Cooper v. Curallux LLC*, 2020

5   WL 4732193, at *7 (N.D. Cal. Aug. 14, 2020).  SC Johnson's motion to dismiss Maisel's fourth

6   cause of action for breach of express warranty is therefore denied.

7   **C.      Unjust Enrichment[2]**

8          In her fifth cause of action, Maisel alleges that by purchasing the Ecover products, she and

9   members of the class conferred a benefit on SC Johnson in the form of the purchase price, SC

10  Johnson had knowledge of such benefit, and its acceptance and retention of the benefit is

11  inequitable and unjust because the benefit was obtained by its fraudulent and misleading

12  representations and omissions.  First Am. Compl. ¶¶ 140-42.  SC Johnson argues Maisel cannot

13  state a claim for unjust enrichment because she received the benefit of the bargain – a product that

14  contains plant-based and mineral ingredients.  Mot. at 22.

15         "To allege unjust enrichment as an independent cause of action, a plaintiff must show that

16  the defendant received and unjustly retained a benefit at the plaintiff's expense."  *ESG Capital*

17  *Partners*, 828 F.3d at 1038.  Restitution is not ordinarily available to a plaintiff unless "'the

18  benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is

19  enrichment, it is not unjust.'"  *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Assn.*, 205 Cal. App. 3d

20  1415, 1422 (Cal. Ct. App. 1988) (quoting 1 Witkin, Summary of Cal. Law (9th ed. 1987)

21  Contracts, § 97, p. 126.)).

22         As Maisel's unjust enrichment claim is based on the same alleged misrepresentations about

23  SC Johnson's products as her other claims, the Court finds they are sufficient to state a claim for

24  unjust enrichment.  *See Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *13

25  _____

26  [2] The Ninth Circuit has explained that "[w]hile California case law appears unsettled on the
    availability of such a cause of action, this Circuit has construed the common law to allow an
27  unjust enrichment cause of action through quasi-contract.  We therefore allow the cause of action,
    as we believe it states a claim for relief as an independent cause of action or as a quasi-contract
28  claim for restitution."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)
    (citations omitted); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

United States District Court
Northern District of California

22

1   (N.D. Cal. Mar. 16, 2020) (denying motion to dismiss unjust enrichment claim where plaintiffs

2   sufficiently pled fraud and breach of warranty claims); *Snarr*, 2019 WL 7050149, at *7-8 (denying

3   motion to dismiss unjust enrichment claim because plaintiffs' allegations sufficiently state a claim

4   under the fraudulent prong of the UCL); *Przybylak*, 2019 WL 8060076, at *9 (denying motion to

5   dismiss unjust enrichment claim where plaintiffs alleged they conferred benefits on defendant by

6   purchasing its products, and that defendant was unjustly enriched due to their reliance on its

7   misrepresentations); *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *7-8 (C.D. Cal.

8   Oct. 20, 2016) ("Because . . . Plaintiff plausibly alleges that a consumer could have been enticed to

9   purchase Defendant's product based on the allegedly misleading label, . . . Plaintiff states a quasi-

10   contract claim.").  Accordingly, SC Johnson's motion to dismiss Maisel's fifth cause of action is

11   denied.

12   **D.   Whether Plaintiff's UCL, FAL, CLRA and Unjust Enrichment Claims Fail Because**
13   **She Does Not Allege She Lacks an Adequate Remedy At Law**

14   SC Johnson argues Maisel's UCL, FAL, and unjust enrichment claims must be dismissed

15   in their entirety because they provide exclusively equitable relief, not damages, and Maisel does

16   not and cannot establish she lacks an adequate remedy at law.  Mot. at 22-23.  However, the Court

17   follows other courts in this district that find no bar to the pursuit of alternative remedies at the

18   pleadings stage.  *See, e.g., Arora v. GNC Holdings, Inc.*, 2019 WL 6050750, at *13 (N.D. Cal.

19   Nov. 15, 2019); *Madani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 3753433, at *9 (N.D. Cal.

20   Aug. 8, 2019); *Luong v. Subaru of America, Inc.*, 2018 WL 2047646, at * 7 (N.D. Cal. May 2,

21   2018); *Aberin v. Am. Honda Motor Co., Inc.*, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018);

22   *Adkins v. Comcast Corp.*, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017).  The Court therefore

23   denies the motion to dismiss on this ground.

24   ## VI.   PERSONAL JURISDICTION

25   Finally, SC Johnson argues the Court would lack personal jurisdiction over the non-

26   California class members Maisel purports to represent.  Mot. at 24-26.  The Court need not reach

27   this argument, however, because it has pendent jurisdiction over Maisel's class claims.

28   The Ninth Circuit adopted the pendent jurisdiction doctrine for the purposes of "judicial

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

economy, avoidance of piecemeal litigation, and overall convenience of the parties . . . ." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). "When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Id.* The Court has discretion to exercise "pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* at 1180.

Here, the Court finds Maisel's claims arise out of the same nucleus of operative facts as the putative out-of-state class members because they involve the same products and the same alleged misrepresentations; the only difference between the claims is where the products were purchased. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 860-63 (N.D. Cal. 2018), *order clarified*, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) (exercising pendent jurisdiction over non-resident plaintiffs' claims where they "overlap[ped] substantially with the claims . . . already before this Court, arising out of the same nucleus of operative facts," and doing so would "impose only a de minimis burden on [defendant]"); *Allen v. ConAgra Foods, Inc.*, 2018 WL 6460451, at *8 (N.D. Cal. Dec. 10, 2018) (exercising pendent jurisdiction over claims by nonresident named plaintiffs in a putative nationwide food-labeling class action). Further, "[d]oing so will serve the interests of 'judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties' by preventing the need for multiple such actions in other states and potentially subjecting [SC Johnson] to inconsistent obligations." *Allen*, 2018 WL 6460451, at *8 (citing *Action Embroidery*, 368 F.3d at 1181). SC Johnson "is already before this court to defend against [Maisel's] claims, and the additional burden is de minimis." *Id.* (finding pendent jurisdiction appropriate because the California plaintiff, not the nonresident plaintiffs, brought the defendant to court in California).

Accordingly, the Court exercises its discretion to assert pendent jurisdiction over SC Johnson as to the non-California class members' claims.

24

## VII.   CONCLUSION

For the reasons stated above, the Court **DENIES** SC Johnson's motion to dismiss.  The Court shall conduct a case management conference on June 3, 2021 at 10:00 a.m. by Zoom video conference.  The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/.  This conference shall be attended by lead trial counsel.  Parties who are not represented by counsel must appear personally.

By May 27, 2021, the parties shall file a joint case management statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders.  The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.  If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: May 5, 2021

THOMAS S. HIXSON
United States Magistrate Judge