**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN: 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Tel: (415) 730-0387
Fax: (650) 618-0478

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>S.C. JOHNSON & SON, INC., a Wisconsin Corporation,<br><br>Defendant. | Case No.  3:21-cv-00413-TSH<br>Case Filed: 1/15/2021<br>FAC Filed: 3/24/2021<br><br>*Assigned to United States Magistrate Judge Thomas S. Hixson for all purposes*<br><br>**PLAINTIFF ELIZABETH MAISEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION; APPOINTMENT OF CLASS REPRESENTATIVE; AND APPOINTMENT OF CLASS COUNSEL**<br><br><u>**Hearing Information:**</u><br>Date: May 19, 2022<br>Time: 10:00 a.m.<br>Courtroom: G-15th Floor<br>Courthouse: San Francisco Courthouse<br>Video Conf.:<br><u>https://www.cand.uscourts.gov/judges/hixson-thomas-s-tsh/</u> |

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.    INTRODUCTION ........................................................................................................... 1

II.   RELEVANT FACTS AND PROCEDURAL HISTORY ...................................................... 1

      A.    The Uniform Product Labels .................................................................................. 2

      B.    Defendant Knows that Consumers Desire Plant-Based & Mineral Products ............. 3

      C.    The Products' False and Misleading Plant-Based & Mineral Representations .......... 6

      D.    The Proposed Classes ........................................................................................... 8

III.  LEGAL STANDARD FOR CLASS CERTIFICATION ..................................................... 8

IV.   PLAINTIFF SATISFIES ALL REQUIREMENTS UNDER RULE 23 ................................. 9

      A.    The Class Is Adequately Defined ........................................................................... 9

      B.    The Rule 23(a) Criteria Are Satisfied ................................................................... 10

            1.    Numerosity .................................................................................................. 10

            2.    Commonality ................................................................................................ 11

            3.    Typicality .................................................................................................... 16

            4.    Adequate Representation .............................................................................. 18

      C.    Plaintiff Satisfies the Requirements of Rule 23(b)(2) ............................................ 19

            1.    Plaintiff Has Article III Standing. ................................................................. 19

            2.    Plaintiff and the Class Complain of Standardized Uniform Conduct Applicable to
                  the Entire Class. ........................................................................................... 21

            3.    Plaintiff Seeks Injunctive Relief that Would Benefit Each Class Member ......... 22

      D.    Rule 23(G) is Satisfied ........................................................................................ 23

V.    CONCLUSION ............................................................................................................. 23

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1

2

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page No.**

*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015) ........................................................................... 8

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)....................................... 8, 10

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)....................................... 8, 15

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ............................................................................. 16

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ................................................................. *passim*

*Bank of St. Helena v. Lilienthal-Brayton Co.*,
   89 Cal.App 258 (1928) ..................................................................................... 15

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ............................................................................. 19

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................ 9

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ....................................................................... 17

*Cruz v. PacifiCare Health Sys., Inc.*,
   30 Cal.4th 303 (2003) ....................................................................................... 22

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................... 19, 20, 21

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ....................................................................... 22

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................ 14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)............................................. 8

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................. 18

*Forcellati v. Hyland's, Inc.*,
   No. CV 12-1983-GHK (MRWx),
   2014 WL 1410264, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ................. 9, 10, 14

*General Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147, 102 S. Ct. 2364, 1982 L. Ed. 2d 740 (1982)...................................... 16

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

*Gormly v. Dickinson*,
  178 Cal.App.2d 92 (1960) ................................................................................ 15

*Guido v. L'Oreal, USA, Inc.*,
  284 F.R.D. 468 (C.D. Cal. 2012) ...................................................................... 13

*Guido v. L'Oreal, USA, Inc.*,
  Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx),
  2012 WL 2458118, 2012 U.S. Dist. LEXIS 89376 (C.D. Cal. June 25, 2012) .............. 13

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) ....................................... 8

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ......................................................... 13, 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................... 11, 16, 18

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ........................................................................ 8, 10

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D.Cal. 2011) ..................................................................... 18

*Hartless v. Clorox Co.*,
  473 Fed. Appx. 716 (9th Cir. 2012) ............................................................... 18

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 17cv2335-GPC(MDD),
  2018 WL 6300479, 2018 U.S. Dist. LEXIS 202679 (S.D. Cal. Nov. 29, 2018) ............. 8

*Hunter v. McKenzie*,
  197 Cal. 176 (1925) ..................................................................................... 15

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ................................................................... 16

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................................ 9, 14

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*,
  268 F.R.D. 652 (S.D. Cal. 2010) .................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................ 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ................................................................... 10

*In re Tobacco II Cases*,
  46 Cal.4th 298 (2009) .................................................................................. 15

*In re Vioxx Class Cases*,
  180 Cal.App.4th 116 (2009) .......................................................................... 15

*Johns v. Bayer Corp.*,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - MEMORANDUM OF POINTS & AUTHORITIES

280 F.R.D. 551 (S.D. Cal. 2012) .......................................................................... 17

*Jordan v. Los Angeles County*,
669 F.2d 1311 (9th Cir. 1982) ............................................................................ 11

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) ......................................................................................... 16

*Keegan v. American Honda Motor Co., Inc.*,
284 F.R.D. 504 (C.D. Cal. 2012) ........................................................................ 11

*Lewis v. Robinson Ford Sales, Inc.*,
156 Cal.App.4th 359 (2007) ............................................................................... 15

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ................................................................. 10, 17

*Maisel v. S.C. Johnson & Son, Inc.*,
No. 21-CV-00413-TSH,
2021 WL 1788397, 2021 U.S. Dist. KEXIS 86203 (N.D. Cal. May 5, 2021) .......... 20

*Martin v. Monsanto Co.*,
No. ED CV 16-2168-JFW (SPx),
2017 WL 1115167, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017)......... 17

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
97 Cal.App.4th 1282 (2002) ............................................................................... 14

*Mathewson v. Naylor*,
18 Cal.App.3d 741 (1937) .................................................................................. 15

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ............................................................................. 19

*Mier v. CVS Pharmacy*,
No. SA CV 20-1979-DOC-(ADSx),
2021 WL 3468951, 2021 U.S. Dist. LEXIS 150423 (C.D. Cal. Apr. 29, 2021) ........ 22

*Mier v. CVS Pharmacy*,
No. SA CV 20-01979-DOC-(ADS),
2021 WL 3468953, 2021 U.S. Dist. LEXIS 150424 (C.D. Cal. June 11, 2021) ........ 22

*Mueller v. Puritan's Pride, Inc.*,
No. 3:16-cv-06717-JD,
2021 WL 5494254, 2021 U.S. Dist. LEXIS 226103 (N.D. Cal. Nov. 23, 2021) ....... 21

*Mullins v. Premier Nutrition Corp.*,
No. 13-cv-1271-RS,
2016 WL 1535057, 2016 U.S. Dist. LEXIS 51140 (N.D. Cal. Apr. 15, 2016).......... 15

*Negrete v. Allianz Life Ins. Co. of North America*,
238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................ 16

*Occidental Land, Inc. v. Superior Court*,
18 Cal.3d 355 (1976) .......................................................................................... 15

*Pettit v. Procter & Gamble Co.*,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - MEMORANDUM OF POINTS & AUTHORITIES

No. 15-cv-02150-RS,
  2017 WL 3310692, 2017 U.S. Dist. LEXIS 122668 (N.D. Cal. Aug. 3, 2017) .......................... 14

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) ................................................................................ 16

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ................................................................................ 16

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .............................................................................. 14

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .............................................................................. 21

*Roper v. Consurve, Inc.*,
  578 F.2d 1106 (5th Cir. 1978) .............................................................................. 18

*Simpson v. Fireman's Fund Ins. Co.*,
  231 F.R.D. 391 (N.D. Cal. 2005) .......................................................................... 17

*Smith v. Keurig Green Mountain, Inc.*,
  No. 18-cv-06690-HSG,
  2020 WL 5630051, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sept. 21, 2020) ..................... 22

*Snarr v. Cento Fine Foods Inc.*,
  No. 19-cv-02627-HSG,
  2019 WL 7050149, 2019 U.S. Dist. LEXIS 220063 (N.D. Cal. Dec. 23, 2019) ...................... 21

*Thomas v. Hawkins*,
  96 Cal.App.3d 377 (1950) ................................................................................... 15

*Tran v. Sioux Honey Ass'n, Coop.*,
  No. 8:17-cv-00110-JLS-SS,
  2020 WL 905571, 2020 U.S. Dist. LEXIS 31421 (C.D. Cal. Feb. 24, 2020) ......................... 13

*Testone v. Barlean's Organic Oils, LLC*,
  No. 19-CV-169 JLS (BGS),
  2021 WL 4438391, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021) ...................... 11

*Vasquez v. Superior Court*,
  4 Cal.3d 800 (1971) .......................................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. Ed 374 (2011) ........................................ 9, 11, 16, 22

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) .......................................................................... 11, 21

*Wolph v. Acer America Corp.*,
  272 F.R.D. 477 (N.D. Cal. 2011) ............................................................................ 9

*Zakaria v. Gerber Products Co.*,
  No. LA CV15-00200 JAK (Ex),
  2016 WL 6662723, 2016 U.S. Dist. LEXIS 184861 (C.D. Cal. Mar. 23, 2016) ...................... 14

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**Federal Statutes**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§17200, *et seq.* .................................................. 1, 12

Cal. Bus. & Prof. Code §§17500, *et seq.* .................................................. 1, 12

Cal. Civ. Code §§1750, *et seq.* ................................................................... 1, 12

**Secondary Sources**

12 Williston, Contracts (3d ed. 1970) ....................................................... 15

Rubenstein, Newberg on Class Actions § 3.05 (5th ed. 2011) ..................... 10

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Elizabeth Maisel ("**Plaintiff**") moves to certify this false advertising case as a Fed. R. Civ. P. 23(b)(2) class action on behalf of all consumers who purchased Defendant S.C. Johnson & Son, Inc.'s ("**Defendant**" and/or "**SCJ**") ecover-brand cleaning products that contain the Plant-Based & Mineral Representations (the "**Products**"). Defendant misleadingly labels its Products with the following prominent misrepresentations: "Plant-based ingredients," "With plant-based ingredients," and/or "With plant-based and mineral ingredients" (collectively, "**Plant-Based & Mineral Representations**"). However, Defendant knows—*and admits*—each of the Products contain synthetic, non-plant-based and non-mineral ingredients, rendering the labels false and misleading. Defendant likewise knows—*and admits*—that the Plant-Based & Mineral Representations are material to reasonable consumers in deciding whether to buy the Products. It has been Defendant's entire marketing and brand strategy to convince consumers that the Products are not only "natural," but good for the environment and safe for their families. The challenged representations are part and parcel to that strategy. Because Defendant treated all Class Members alike, an injunction and corresponding declaratory relief to stop the continued false and deceptive labeling of the Products are necessary to protect the Class from further harm. Accordingly, Plaintiff respectfully requests that the Court grant certification, appoint her as a representative for the Class, and appoint her counsel as counsel for the Class.[1]

### II.   RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff filed her original Class Action Complaint on January 15, 2021 (ECF 1), and filed the operative First Amended Complaint ("**FAC**") on March 24, 2021 (ECF 16), to assert five causes of action for: (1) violation of California's Unfair Competition Law, codified at Business and Professions Code sections 17200, *et seq.* ("**UCL**"); (2) violation of California's False Advertising Law, codified at Business and Professions Code sections 17500, *et seq.* ("**FAL**"); (3) violation of California's Consumers Legal Remedies Act, codified at Civil Code sections 1750, *et seq.* ("**CLRA**"); (4) Breach of Warranty; and (5) Unjust Enrichment.

---

[1] The proposed Class is defined below. *See*, *infra*, § II, D.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## A.   <u>The Uniform Product Labels</u>

Defendant uniformly labeled its ecover-brand cleaning Products[2] with the false and misleading Plant-Based & Mineral Representations.[3] Not only do the labels contain statements and imagery expounding this purported product-feature, but Defendant used highly contrasting colors and deliberately allocated a large portion of the Products' labeling to grab the customers' attention and to impress upon them that the Products do not contain synthetic ingredients.  Defendant did this to achieve as much market share as possible in the billion-dollar natural-products industry.

As relevant here, Defendant reinforces the Plant-Based & Mineral Representations on each Product's front label with statements and images that emphasize the Products' purportedly "natural" attributes. For example, the Products' front labels display images of plants, including flowers and leaves, and use bold and eye-catching colors that starkly contrast with the background. In addition, immediately underneath the trademarked ecover logo, appears the trademarked phrase "***Get nature on your side***" in large green font. **Ex. A** [Labels] (emphasis added); **Ex. D** [Cert. Reg. Trademark—ecover]; **Ex. E** [Cert. Reg. Trademark—Get Nature]. Moreover, above the "e" and "c" in the brand logo appears an image of a flower. **Ex. A** [Labels]. Each Product also displays an image of a leaf above the Plant-Based & Mineral Representations, with a dotted line connecting the representation and leaf. *Id*. These images and statements span the top one-fourth to one-third of the front labels'

---

[2] The "**Products**" at issue are e-cover™ brand: (1) All Purpose Cleaner; (2) Cream Scrub; (3) Delicate Wash; (4) Dishwasher Powder; (5) Dishwasher Tablets; (6) Dishwasher Tablets Zero; (7) Fabric Softener (Morning Fresh); (8) Fabric Softener (Sunny Day); (9) Floor Soap; (10) Laundry Detergent (Alpine Mint); (11) Laundry Detergent (Lavender Field); (12) Rinse Aid; (13) Stain Remover; and (14) Toilet Cleaner.

[3] *See* **Ex. A** [Labels], at Ex. A(1) All Purpose, A(3) Delicate Wash, A(9) Floor Soap, A(12) Rinse Aid, A(14) Toilet Cleaner ("***Plant-based ingredients***") (emphasis added); *id*. at Ex. A(10) Laundry Detergent—Alpine Mint, A(11) Laundry Detergent—Lavender Field ("***With plant-based ingredients***") (emphasis added); *id*. at Ex. A(2) Cream Scrub, A(4) Dishwasher Powder, A(5) Dishwasher Tablet, A(6) Dishwasher Tablet-Zero, A(7) Fabric Softener—Morning Fresh, A(8) Fabric Softener—Sunny Day, A(13) Stain Remover ("***With plant-based & mineral ingredients***") (emphasis added); **Ex. C** [SCJ Resp. ROG], ROG 1 (identifying labels used on pleaded Products throughout Class Period); **Ex. B** [SCJ Resp. Doc. Req.], RFP 18 (same); *see also* SCJ's Req. Judicial Notice, ECF 20, at Ex. A-E (seeking judicial notice of Fabric Softener—Morning Fresh, Fabric Softener—Sunny Day, Stain Remover, Toilet Cleaner, and Laundry Detergent—Lavender Field, identical in all pertinent respects to Exhibit A(7), A(8), A(13), A(14), and A(11)); SCJ's Answer to FAC, ECF 30, ¶¶ 18-31 (admitting FAC, containing labels identical to Exhibit A, were used on the Products); *id*. ¶¶ 1, 16 (admitting Plant-Based & Mineral Representations appeared on the Products labels); Order on MTD, ECF 29, § III. (granting SCJ's request for judicial notice of said labels under Fed. R. Evid. 201(b)).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

primary display panels. *Id.*

The Products' back labels likewise reinforce the Plant-Based & Mineral Representations to assure consumers that they are made only from plant or mineral ingredients. **Ex. A** [Labels]. Approximately half of each back label is dedicated to brand identity, a statement emphasizing that natural or plant-based ingredients are beneficial to the environment, and a recitation of the prominent front labeling claims. *Id.* [Labels]. At the top, there appears the same trademarked flower. *Id.* [Labels]. Immediately underneath, Defendant extolls its alleged environmentally friendly natural products, stating: "***At Ecover we have been pioneering green science for over 30 [or 35] years to make effective[,] plant-based cleaners by plant-loving people.***"[4] Immediately under Defendant's mission statement, Defendant repeats the same Plant-Based & Mineral Representation, with the same vivid colors and imagery. *See*, *e.g.*, *id.* at Ex. A(5) [Dishwasher Tablets] ("Made using renewable plant-based & mineral ingredients."). The only other information provided on the back labels comprises directions for use, ingredients described in largely hyper-technical chemical names, health and safety warnings, a bar code, and identification of the manufacturer. *Id.* [Labels].

## B. Defendant Knows that Consumers Desire Plant-Based & Mineral Products

Defendant dedicates more than half of the Products' front and back labels to convey a singular, critical message to consumers: ecover cleaning products are made only from natural, plant and/or mineral ingredients, which are safe, earth-friendly, and good for the environment. **Ex. A** [Labels]. Defendant's websites for ecover cleaning products as well as its general website expressly recognize that consumers desire these types of cleaning products. For example, immediately prior to the initiation of this litigation, Defendant maintained a robust ecover website under the domain name

---

[4] *See*, *e.g.*, *id.* [Labels] at Ex. A(1) [All Purpose, SCJ 17 (2015)], Ex. A(3) [Delicate Wash, SCJ 19 (2015)], Ex. A(4) [Dishwasher Powder, SCJ 21 (2021)], Ex. A(5) [Dishwasher Tablets, SCJ 26 (2020), SCJ 24 (2021)]; Ex. A(6) [Dishwasher Tablets—Zero, SCJ 23 (2020), SCJ 25 (2020)], Ex. A(7) [Fabric Softener—Morning Fresh, SCJ 28 (2016), SCJ 29 (2020)], Ex. A(8) [Fabric Softener—Sunny Day, SCJ 30 (2015)], Ex. A(9) [Floor Soap, SCJ 34 (2014)], Ex. A(11) [Laundry Detergent—Lavender Field, SCJ 36 (2020), SCJ 39 (2020)], Ex. A(14) [Toilet Cleaner, SCJ 42 (2016), SCJ 43 (2020)] (emphasis added); *see also id.* at Ex. A(2) [Cream Scrub, SCJ 18 (2014)], Ex. A(12) [Rinse Aid, SCJ 37 (2014)] (omits "by plant-loving people"); *accord* Ex. A(12) [Rinse Aid, SCJ 38 (2019)] (modified to ". . . to make effective products with biodegradable plant-based ingredients."); *see also* Ex. A(10) [Laundry Detergent—Alpine Mint, SCJ 35 (2014)] ( modified to ". . . ***to make effective, plant-based cleaners that are good for the planet and the people on it. Now the trees might hug you back***." (emphasis added)).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

"www.us.ecover.com." Although Defendant has stripped it down since the filing of this action, the archived webpages reveal and corroborate Defendant's marketing and brand strategy.

As recently as January 2021, Defendant's ecover website heavily, if not entirely, focused on the natural plant and mineral ingredients in its cleaning product line as eco-friendly. Its homepage contained the prominent headline: "A CLEANER CLEAN, INSPIRED BY THE WORLD'S GREATEST SCIENTIST, NATURE." **Ex. M** [Ecover Archived Website] at p. 1 [Homepage]. The subheadings that follow buttress Defendant's ecover brand strategy, including prominent statements like: "IT'S TIME TO GET NATURE ON YOUR SIDE," and "SCIENCE INSPIRED BY NATURE." *Id.* Additionally, the Science Inspired by Nature webpage evidences Defendant's recognition that consumers care, not just about the source of ingredients, but how companies subject raw, natural, plant and mineral materials to substantial chemical processing that fundamentally changes its character, eliminating their environmental benefits. *Id.* at pp. 3 [Inspired Nature Webpage]. Similarly, Defendant's mission statement furthers its marketing campaign to greenwash products as "natural," containing only plant-based and mineral ingredients, because consumers want safe and environmentally friendly products: "Our goal is to create powerful cleaning products that won't harm the planet or the people in it." *Id.* at pp. 5 [Our Mission Webpage]. Defendant emphasizes: "We are protectors of the planet and scientists with a conscience . . . We know nature provides us with plenty of powerful ingredients [a]nd toxins never make anything better." (*id.* at p. 5 [Our Mission—Beliefs]); "So we look to bees for inspiration and plants for innovation [a]nd create our fragrances with butterflies in mind . . . ." (*id.* at p. 7 [Our Mission—Inspiration]); and "We consider cleaning our chance to make the world a better place [a]nd believe green should be a natural way of life . . . ." (*id.* at p. 9 [Our Mission—Purpose]).

The thrust of Defendant's marketing strategy also falls directly in line with its corporate marketing strategy exemplified on its current website under the "www.scjohnson.com" domain name. Defendant posts a substantial amount of content regarding environmentalism and importance of transparency to consumers, including a few noteworthy examples. *Id.* Defendant touts the company's core values over the course of multiple generations, including the past half-century in a document known as "This We Believe" that serves as a guide or set of principles for the company

to follow. **Ex. N** [SCJ Website] at pp. 1-8. In it, Defendant stresses its responsibility to consumers, committing itself to providing "useful products" by "[m]onitoring closely the changing wants of consumers and users," "[d]eveloping new products . . . that are recognized by consumers and users as being significantly superior overall to major competition," and, in particular, "[d]evelop[ing] and market[ing] products that are environmentally sound and do not endanger the health and safety of consumers and users." *Id.* at pp. 2-3.

Consistent with its mission statement, Defendant discusses the importance of transparency to consumers and their families regarding the ingredients in Defendant's cleaning products: "Most people agree companies should tell the truth when asked about their products. . . . ***We understand you want to feel good about the things you use around the people and pets you love***." **Ex. N** [SCJ Website] at p. 9 [Global Transparency] (emphasis added). Indeed, Defendant posts a video interviewing various representative consumers in 2018, regarding the importance of knowing what ingredients are in their products before deciding to use them. *Id.*; **Ex. O** [Consumer Interview Video]. Defendant admits the importance of honest ingredient disclosures: "***SC Johnson considers it important to disclose ingredients***. . . . so [consumers] can make choices that are best for them and their families" **Ex. N** [SCJ Website] at p. 11 [Industry Transparency].

Indeed, Defendant admits that consumers want natural products because they believe they are safer, healthier, and more environmentally friendly than synthetic products, the core tenants which Defendant admits drive consumers to buy household cleaning products: "***you'd be surprised how often we hear from people saying they want household products that are 'chemical-free'.***" **Ex. N** [SCJ Website].at pp. 15 [Negative Perceptions Synthetic Chemicals] (emphasis added). Defendant further states: "***Many people assume that natural chemicals are better than synthetic chemicals***. And, ***unfortunately, claiming 'natural' as a product benefit has become a bit of a marketing trend***." *Id.* (emphasis added). Defendant's Chairman and Chief Executive Officer explains:

> You know I often wonder, what do you look at when you're buying the products you use in your home. A lot of companies claim that their products are natural. . . . As a father and a scientist, I want to know that the ingredients that go into our products are safe for my family and safe for yours. . . . . That's why we at SC Johnson go beyond industry standards and continuously look at every ingredient we use . . . .

**Ex. P** [Fisk Video]; **Ex. N** [SCJ Website].at pp. 15 [Negative Perceptions Synthetic Chemicals].

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Yet, Defendant's words ring hollow and merely exemplify the significant "greenwashing" problem plaguing consumer products. It is for these very reasons that the United States Federal Trade Commission ("**FTC**") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[5] Relevant here, the FTC states: "Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"plant-based,"** in the context of their advertisements.[6] The FTC recognized the importance of eco-friendly marketing claims to consumers and how companies mislead consumers into buying their products by "greenwashing" them with false or misleading promises. *Id*.

**C.   The Products' False and Misleading Plant-Based & Mineral Representations**

Contrary to the express representations on the Products' front panel, the Products contain numerous ingredients that **do not come from plants or minerals whatsoever**. *See* FAC, ECF 16, ¶¶ 2, 3, 14. In fact, Defendant *admits* that over sixty-three (63) ingredients in the Products are entirely "synthetic." Bruce Decl. ¶ 2, i; **Ex. I** [Summary Formulations and Admitted Synthetics]; **Ex. F** [Archived Online Ingredient Disclosures]; **Ex. G** [Archived Online Ingredient Glossary]; **Ex. H** [Formulation SCJ 3-16].[7] In fact, each and every Product contains one or more ingredients that

---

[5] *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (accessed 12/19/2021).
[6] *Id.* at p. 246 (emphasis added).
[7] Specifically, Defendant admitted on its official ecover website the following ingredients contained in the Products, in varying combinations, are entirely "synthetic": (1) 2,6-dimethyl-7-octen-2-ol; and (2) 2-phenytelhaneol; (3) ACTICIDE MBS; (4) alpha-hexylcinnamaldehyde; (5) alphaterpineal acetate; (6) benzisothiazolinone; (7) benzylisothiazolinone; (8) benzyl acetate; (9) benzyl alcohol; (10) benzyl benzoate; (11) beta-caryophyllene; (12) betapinene; (13) camphene; (14) citral; (15) citronellal; (16) citronellol; (17) dihydromyrcenol; (18) disubstituted alaninamide; (19) ethoxylated propxylated C12-C14 alcohol; (20) eucatyptol; (21) eugenol; (22) farnesol; (23) fragrance; (24) gammaterpinene; (25) genapol 26 EP 710***; (26) genapol LA 060*; (27) geraniol; (28) glyoxal; (29) green gardenia 5 T12017042; (30) hexyl salicylate; (31) isoeugenol; (32) isopropanol; (32) isopropyl alcohol; (34) lavandin extract; (35) limonene; (36) linalool; (37) methylchloroisothiazolinone; (38) methylisothiazolinone; (39) myrcene; (40) nopyl acetate; (41) orange extract; (42) oxacyclohexadecen-2-one; (43) perfume jasmine & apple blossom 4T11006660; (44) perfume lemonndarine BN EAG14940/00; (45) perfume natural carrera SC136205; (46) pine extract; (47) pinene; (48) polyethylene glycol; (49) polyoxyethylene trimethyldecyl alcohol; (50) preservative MIT/BIT; (51) preservative phenoxyethanol; (52) propylene glycol; (53) rosemary extract; (54) sodium diglycolate; (55) sodium formate; (56) sodium glycolate; (57) TAED; (58) terpineol; (59) tetrasodium edta; (60) tricyclodecenyl propionate; (61) undecane-4-olide; (62) verdyl acetate; (63) x perfume flordalia SL 137886(!). *See* **Ex. I** [Summary Spreadsheet] (green highlights). At some point during the pendency of this litigation, Defendant removed these admissions from its website. *Compare* www.us.ecover.com (accessed 12/19/2021)

Defendant admits are synthetic. **Ex. I** [Summary].

In addition, the Products contain numerous ingredients that have been subjected to chemical modification or processing, which materially altered the ingredients' original plant-based or mineral composition. *See* FAC, ECF 16, ¶¶ 3, 33-47. Put differently, to create certain ingredients used in the Products, mineral or plant-sourced ingredients, like coconut or palm oil, are used. But these ingredients are then subjected to substantial chemical modification and/or processing such that the resulting ingredient used in the finished Products is an entirely new, synthetically created ingredient—one that is vastly and fundamentally different than the original plant-sourced ingredient. *Id.*[8]

Accordingly, the Plant-Based & Mineral Representations are false, misleading, and deceptive, and therefore unlawful. Defendant knew or should have known that the Representations are false. Further, the Plant-Based & Mineral Representations are material to reasonable consumers. Market research demonstrates that, in recent years, consumers have come to value natural products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, and reducing human impact on the environment. FAC, ECF 16, ¶ 11; *see also* **Ex. M-P** [Def.'s Websites & Videos]. It is for these reasons that Plaintiff seeks certification of this action as a class to succeed in its primary litigation objective to stop the ongoing consumer deception.

_____

*with* **Ex. F** [Archived Ingredient Disclosures] *and* **Ex. G** [Archived Ingredient Glossary]. To be sure, Defendant had Plaintiff's demand to preserve evidence and notice of this lawsuit before destroying this evidence, or at least the public's access to it. Compl., ECF 1; FAC, ECF 16, at Ex. 1 [Demand Letter] at pp. 9-11; *id.* at ¶ 127; SCJ Ans. FAC, ECF 30, ¶ 127.

[8] The following ingredients in the Products are subject to substantial chemical modification or processing: (1) amylase; (2) caprylyl/capryl glucoside; (3) caprylyl/decyl glucoside; (4) carboxymethylinulim; (5) citric acid; (6) citric acid solution; (7) coco-glucoside; (8) C 12-16 pareth-7; (9) decyl glucoside; (10) decyl/myristyl glucoside; (11) fatty alcohol alkoxylate; (12) fragrance; (13) glycerin; (14) lactic acid; (15) lauryl ethoxylate; (16) lauryl glucoside; (17) lauryl/myristyl glucoside; (18) linalool; (19) lipase; (20) oleic acid; (21) p-anisic acid; (22) potassium cocoate; (23) potassium oleate; (24) protease; (25) sodium citrate; (26) sodium gluconate; (27) sodium laureth sulfate; (28) sodium lauryl sulfate; (29) sodium polyaspartate; (30) sodium polyitaconate; (31) sophorolipids; (32) subtilisin; and (33) xanthan gum. *See* FAC, ECF 16, ¶¶ 33-47. Class-wide merits-evidence, either from Defendant or through subpoenas to Defendant's suppliers, regarding the processing of sourced ingredients will further demonstrate additional synthetic ingredients that reasonable consumers would not expect to find in the Products based on the Plant-Based & Mineral Representations and Defendant's entire brand and marketing strategy. Indeed, Defendant lauds its commitment to the vigorous analysis of each and every ingredient incorporated into its products by experts in the industry. **Ex. N** [SCJ Website] at p. 13 [Industry Transparency].

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

### D. The Proposed Classes

Plaintiff moves to certify the following Class as follows:

> **National Class**. All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and

> **California Class.** All residents of California who, within four years prior to the filing of the Complaint, purchased the Products, for personal and household use and not for resale ("California Subclass").

*See* FAC, ECF 16, ¶ 55.

## III.   LEGAL STANDARD FOR CLASS CERTIFICATION

The Court's decision to grant class certification lies within its sound discretion. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "In determining the propriety of a class action the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citations omitted). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465-466 (2013); *see also Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) ("We conclude that the district court erred in denying class certification because it evaluated the merits rather than focusing on whether the questions presented—meritorious or not—were common to the class."); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-GPC(MDD), 2018 WL 6300479, at *10 (S.D. Cal. Nov. 29, 2018) ("merit questions are not appropriate at the class certification stage.") (citing *Amgen Inc.*, 568 U.S. at 459.

Consumer protection claims are ideal for class certification and any doubt as to the propriety of certification should be resolved in favor of certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). The class action mechanism allows consumers who "individually would be without effective strength to bring their opponents into court at all" to pursue their claims. *Amchem Prods., Inc*, 521 U.S. at 617.

To obtain certification, a plaintiff must satisfy the four threshold requirements of Rule 23(a). Specifically, the plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-346 (2011). Additionally, the plaintiff must also satisfy one of the conditions of Rule 23(b). *See* Fed. R. Civ. P. 23. As relevant here, Rule 23(b)(2) authorizes class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## IV.  **PLAINTIFF SATISFIES ALL REQUIREMENTS UNDER RULE 23**

### A.  **The Class Is Adequately Defined**

There is no express ascertainability requirement under Ninth Circuit law. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124, n.4 (9th Cir. 2017). Nevertheless, a class must be adequately defined. *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ("The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.") (citation omitted). A class is adequately defined where objective criteria can be applied to determine eligibility as a class member. *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014). Here, the Class is well-defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and
>
> All residents of California who, within four years prior to the filing of the Complaint, purchased the Products ("California Subclass").

FAC, ECF 16, ¶ 117.

The class is objectively and sufficiently definite. It "identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern

that the class includes individuals who were not exposed to the misrepresentation." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013); *Forcellati*, 2014 WL 1410264, at *5 ("Here, Plaintiffs have precisely defined their class based on an objective criterion: purchase of Defendants' children's cold or flu products within a prescribed time frame. This is enough to satisfy Rule 23(a)'s implied ascertainability requirement.").

Furthermore, "[t]here is no requirement that 'the identity of the class members . . . be known at the time of certification.'" *Astiana*, 291 F.R.D. at 500 (citations omitted). "As long as the class definition is sufficiently definite to identify putative class members, '[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification.'" *Id.*; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010) ("The fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable."); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed."); *Forcellati*, 2014 WL 1410264, at *5 (finding purchase records or identification of class members by the defendant to be unnecessary for certification because "facilitating small claims is '[t]he policy at the very core of the class action mechanism'") (citing *Amchem Prods., Inc.*, 521 U.S. at 617).

### B. The Rule 23(a) Criteria Are Satisfied

#### 1. *Numerosity*

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913-914. "Impracticability does not mean impossibility," but rather asks the court to assess the difficulty or inconvenience of joining all members of the class. *Harris*, 329 F.2d at 913-914 (citation omitted). While there is no set numerical cutoff to determine whether a class is numerous, courts have consistently held that joinder is impracticable where the class is composed of more than 40 persons. *See* William Rubenstein, et al.,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

*Newberg on Class Actions*, §3.05 (5th ed. 2011); *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (noting that "[a]s a general rule . . . classes of 40 or more are numerous enough."). Here, numerosity is satisfied because there were at least hundreds of thousands (if not millions) of purchasers of the Products during the class period. Defendant estimates that gross sales for the Products, from January 15, 2017 to October 2021, exceed millions of units. **Ex. J** [Sales Data]; **Ex. 2** [SCJ Resp RFP] at No. 50; **Ex. 3** [SCJ Resp ROG] at No. 3. Thus, the Class is sufficiently numerous.

### 2.    *Commonality*

The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998). Rule 23 (a)(2) requires the existence of "questions of law or fact common to the class," and is construed liberally and permissively. Rule 23(a)(2); *Jordan v. Los Angeles County*, 669 F.2d 1311, 1320 (9th Cir. 1982). The class's "claims must depend upon a common contention . . . [and] . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. As the Ninth Circuit noted: "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc.*, 564 U.S. at 338. "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Furthermore, "variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Astiana*, 291 F.R.D. at 502 (citation omitted). In fact, "it is an error of law for a court to inquire into the motives of each individual class member at the class certification stage." *Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS),

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021).

Importantly, "[i]n misbranding or false advertising cases, courts routinely find that commonality has been satisfied." *Hilsley*, 2018 WL 6300479, at *4 (citing cases). Plaintiff sets forth numerous common questions in her FAC, including:

(1)     Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code Section 1750, *et seq.*;

(2)     Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code Section 1750, *et seq.*;

(3)     Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code Section 1750, *et seq.*;

(4)     Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code Section 1750, *et seq.*;

(5)     Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

(6)     Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

(7)     Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

(8)     Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

(9)     Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

(10)    Whether Defendant's conduct constitutes breach of express warranty;

(11)    Whether Plaintiff and the Class are entitled to injunctive relief;

(12)    Whether Defendant was unjustly enriched by its unlawful conduct.

*See* FAC, ECF 16, ¶ 59.

These questions satisfy commonality. To be sure, an answer to these questions—for example, whether Defendant's Plant-Based & Mineral Representations are false, misleading, or deceptive— will resolve "in one stroke" an issue that is central to the validity of each Class Member's claim. An affirmative answer to this question will demonstrate that the Products were falsely and unlawfully labeled under California's consumer protection laws. Likewise, an affirmative answer to the seventh, eighth, and ninth questions—which focuses on Defendant's conduct and whether its

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

labeling of the Products was unfair, unlawful or deceptive under the unfair competition law—will conclusively demonstrate liability. Similarly, an affirmative answer to the tenth and twelfth questions will establish Defendant's liability for breach of warranty and unjust enrichment. Indeed, an affirmative answer to the core questions of materiality, falsity, and class-wide exposure to the Plant-Based & Mineral Representations can not only be demonstrated by class-wide, common proof, but it will establish each element, of each cause action, to hold Defendant liable and issue the requested injunctive and declaratory relief in this action. To be sure, "a common core of salient facts" exists because all Class Members purchased the same Products, boldly displaying the same Plant-Based & Mineral Representations on their exterior labels and packaging, which Defendant's formulations and admissions demonstrate are false and misleading, which market research and Defendant's admissions demonstrate reasonable consumers find material in deciding to buy the Products, and from which courts presume the Class's reliance to their detriment.

Notably, the common questions will be resolved by application of the same facts because Plaintiff and Class Members all purchased Products bearing the same misrepresentations. *Astiana*, 291 F.R.D. at 501 ("Here, Plaintiffs have identified several legal and factual issues common to the putative class's claims, including whether the use of the term 'Nothing Artificial' to advertise food products that contain the allegedly synthetic ingredients violates the UCL, FAL, CLRA, or Defendant's own warranties. By definition, all class members were exposed to such representations and purchased Kashi products, creating a 'common core of salient facts.'"); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (finding commonality where all class members were exposed to the challenged labeling); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-cv-00110-JLS-SS, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020) ("By definition, all class members were exposed to such representations and purchased [Sioux] products, creating a 'common core of salient facts . . . 'variation among class members in their motivation for purchasing the product [and] the factual circumstances behind their purchase ... does not defeat the relatively 'minimal' showing required to establish commonality.'") (citations omitted); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012), on reconsideration, Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2012 WL 2458118 (C.D. Cal. June 25, 2012) ("Because [the product] was packaged and sold

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

uniformly across the nation, resolution of these questions will resolve 'in one stroke' issues that are 'central to the validity' of each class member's claims. . . . Defendants' argument that commonality is not satisfied because class members may have purchased [the product] for a variety of reasons is unpersuasive." (citation omitted)); *Testone*, 2021 WL 4438391, at *8 ("Plaintiffs assert that there are common questions here, such as what the at-issue label statements would mean to a reasonable consumer and whether they would be deceptive to a reasonable consumer. In prior mislabeling cases such as this, courts have found the commonality requirement satisfied 'because [the litigation] raises the common question of whether the packaging would mislead a reasonable consumer.'") (citations omitted).

Further, "courts have repeatedly recognized that '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'" *Hadley*, 324 F. Supp. at 1099 (citing *Zakaria v. Gerber*, No. LA CV15-00200 JAK (Ex), 2016 WL 6662723, at *8 (N.D. Cal. Mar. 23, 2016) (finding certification appropriate even where the defendant asserted certain class members would not have seen the challenged statement); *Ehret v. Uber Techs., Inc*., 148 F.Supp.3d 884, 895 (N.D. Cal. 2015) ("On the other hand, in numerous cases involving claims of false-advertising, class-wide exposure has been inferred because the alleged misrepresentation is on the packaging of the item being sold.").

Materiality, class-wide exposure, and conduct consistent with reliance (i.e., the purchase) present class-wide proof of reliance in this case. Courts generally consider claims under UCL, FAL, and CLRA together. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982-983 (C.D. Cal. 2015) (citing *Forcellati*, 2014 WL 1410264, at *9). "Each statute allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *Id.* at 983 (citations omitted); *Massachusetts Mutual Life Ins. Co. v. Sup. Ct.*, 97 Cal.App.4th 1282, 1288 (2002) ("California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury"). The standard "does not require that class members have a uniform understanding of the meaning of" the challenged representation. *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150-RS, 2017 WL 3310692, *3 (N.D. Cal. Aug. 3, 2017); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) ("'[c]ausation,

1    on a classwide basis, may be established by materiality. If the trial court finds the material

2    misrepresentation have been made to the entire class, an inference of reliance arises as to the class.'")

3    (quoting *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009)). "As a general rule, materiality

4    may be established by common proof '[b]ecause materiality is judged according to an objective

5    standard,' and so '[t]he alleged misrepresentations and omissions, whether material or immaterial,

6    would be so equally for all [consumers] composing the class.'" *Mullins v. Premier Nutrition Corp.*,

7    No. 13-cv-1271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (quoting *Amgen Inc.*, 568 U.S.

8    at 459-460). While a plaintiff asserting a claim under the CLRA must demonstrate individualized

9    reliance (*see* Maisel Decl. ¶ 5), courts do not require the same individualized showing for each member

10   of the class. *Lewis v. Robinson Ford Sales, Inc.*, 156 Cal.App.4th 359, 368 (2007); *In re Tobacco II*

11   *Cases*, 46 Cal.4th 298, 326 (2009) ("[A] presumption, or at least an inference, of reliance arises

12   wherever there is a showing that a misrepresentation was material" only to named plaintiffs, and

13   not to all class members. Thus, only a named plaintiff is required to show that "the defendant's

14   misrepresentation is an 'immediate cause' of the plaintiff's conduct.").

15       In a class action, an inference of justifiable reliance arises as to the entire class if they were

16   exposed to material misrepresentations and acted consistent with one who relied on those

17   representations. *See Vasquez v. Superior Court*, 4 Cal.3d 800, 814 (1971) ("The fact of reliance upon

18   alleged false representations may be inferred from the circumstances attending the transaction which

19   oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted

20   the party defrauded to enter into the contract than his direct testimony to the same effect") (quoting

21   *Hunter v. McKenzie*, 197 Cal.176, 185 (1925)) (citing *Gormly v. Dickinson*, 178 Cal.App.2d 92, 105

22   (1960); *Thomas v. Hawkins*, 96 Cal.App.2d 377, 380 (1950)); *Mathewson v. Naylor*, 18 Cal.App.2d

23   741, 744 (1937); *Bank of St. Helena v. Lilenthal-Brayton Co.*, 89 Cal.App.258, 262 (1928); 12 *Williston*

24   *on Contracts* 480 (3d ed. 1970)); *Occidental Land, Inc. v. Superior Court*, 18 Cal.3d 355, 363 (1976)

25   (an inference of reliance arises if material misrepresentations were "made to persons whose acts

26   thereafter were consistent with reliance upon the representation."); *In re Nat'l Western Life Ins.*

27   *Deferred Annuities Litig.*, 268 F.R.D. 652, 663-666 (S.D. Cal. 2010) (certifying nationwide class under

28   a fraud-based theory, finding inference of causation or reliance based on uniform material

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

misrepresentations: "[c]onsumers are nearly certain to rely on prominent (and prominently marketed) features of a product which they purchase," despite varying individualized circumstances that may have contributed to each class member's decision to purchase the products, reasoning "reliance can be shown where it provides the 'common sense' or 'logical explanation' for the behavior of plaintiffs and the members of the class.") (quoting *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 491-492 (C.D. Cal. 2006); citing *Poulos v. Ceasars World, Inc.*, 379 F.3d 654, 667-668 (9th Cir. 2004)); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 349 (N.D. Cal. 2018) ("[w]here plaintiffs are 'deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (quoting *Kwikset Corp. v. Superior* Court, 51 Cal. 4th 310, 329 (2011).

### 3.     *Typicality*

The requirements of typicality and commonality are considered together because they "tend to merge" and "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. v. Falcon*, 457 U.S. 147, 157, n.13 (1982).

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). "[T]he claims of the class representatives [are] typical of those of the class, and [typicality is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds (citation omitted). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive' with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020, overruled on other grounds by *Wal-Mart Stores, Inc.*, 564 U.S. at 338. Typicality is established where the class was injured through an alleged common practice. *Id*. The plaintiff need only show that the defendant made a misrepresentation or engaged in an unfair practice that was typical across

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

the class, and that the plaintiff and class members were injured. *Astiana*, 291 F.R.D. at 502. ("Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. 'In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff'").

Typicality, like commonality, is satisfied because Plaintiff and Class Members all purchased Products bearing the same material and deceptive Plant-Based & Mineral Representations. *See* **Ex. A** [Labels]. Indeed, Plaintiff has submitted an affidavit confirming that she not only bought one of the Products, but she did so because she read and relied on the Plant-Based & Mineral Representation contained on the front label, believing that the Product only contained natural ingredients. Maisel Decl. ¶ 5. The representation was important to her in deciding to buy the Product. *Id.* Had she known the truth, she would not have purchased the Product. *Id.* No more is required. *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Plaintiffs and class members thus were all exposed to the same alleged misrepresentations on the packages and advertisements. The Court therefore finds that Plaintiffs have satisfied both the typicality and adequacy requirements."); *Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167, at *4 (C.D. Cal. Mar. 24, 2017). "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff." *Astiana*, 291 F.R.D. at 502 (citing *Simpson v. Fireman's Fund Ins. Co*., 231 F.R.D. 391, 396 (N.D. Cal. 2005)); *Lilly*, 308 F.R.D. at 240 ("Plaintiffs . . . clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (finding typicality based on the purchase of a misrepresented product and that "a plaintiffs' individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test."); *Hilsley*, 2018 WL 6300479, at *6 ("Here, Plaintiff has demonstrated that her claims are typical as the Complaint alleges that she and all class members purchased the Products, were deceived by the false and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

deceptive labeling and lost money as a result. All class members were exposed to the same omission and affirmative misrepresentation on the labels of the Products. Therefore, the Court concludes that Plaintiff has established that her claims and injuries are typical of the claims and injuries of the class." (citations omitted)). Accordingly, typicality is satisfied.

### 4.    Adequate Representation

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has articulated two criteria for determining legal adequacy: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In answering the second question of adequacy, "[t]he relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation. *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir. 1978) (alteration in *Resnick*). Both of these criteria favor certification in this case.

First, Plaintiff's "interests in proving [Defendants'] alleged misrepresentation[s] align with those of other class members." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Each potential class member has the same issue: an allegedly false representation on CATBC packaging and damages in the form of the purchase price or consequent property damage."); *Astiana*, 291 F.R.D. at 503 ("Plaintiff Larsen and the class were exposed to the same alleged misrepresentation on Kashi product labels, and she testified that she would have either paid less or purchased other products had she not been deceived. Plaintiff Larsen's interests are therefore coextensive with the proposed class."). Here, Plaintiff's interests clearly align with the Class. She bought the Product in reliance on the Plant-Based & Mineral Representation to her detriment. Maisel Decl. ¶ 5. Further, she has no discernable interest in conflict with the Class's interest in honest and transparent labels on the Products. *Id.*

Second, Plaintiff and her counsel have advocated vigorously on behalf of the Class and will continue to do so. Plaintiff has stepped forward to challenge Defendant's conduct and has

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

participated in this litigation. She has expended considerable time supervising this litigation and participating in its investigation, exposed herself to the risks of litigation, and done so without any guarantee of compensation. Maisel Decl. ¶ 3-4. In addition, Plaintiff has retained counsel that are experienced in prosecuting consumer class actions, including class actions based on mislabeled products. The resumes of Plaintiff's counsel set forth a representative sampling of appointments and complex prosecutions over the combined course of more than a quarter century. **Ex. K** [Clarkson Resume]; **Ex. L** [Moon Resume]. They have vigorously protected the interests of the Class, and litigated this action efficiently and effectively, prevailing on an omnibus motion to dismiss the operative complaint. *See*, *e.g.*, Order Deny MTD, ECF 29. They have also efficiently and effectively gathered the class-wide proof necessary to certify this action as a class through discovery, analysis of substantial and highly technical documents, and a robust investigation and review of Defendant's historic and current websites, as demonstrated above.

### C.   <u>Plaintiff Satisfies the Requirements of Rule 23(b)(2)</u>

Under Rule 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff easily meets this standard.

#### 1.   *Plaintiff Has Article III Standing.*

"[S]tanding requires that (1) the plaintiff suffered an injury in fact. . .  (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Under the Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir. 2018) and its progeny, Plaintiff has standing to seek injunctive relief.

In *Davidson*, the Ninth Circuit provided two non-exclusive examples of how a previously deceived plaintiff could establish standing to seek injunctive relief in a false advertising case.

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future

harm. *Summers* [*v. Earth Island Inst.*], 555 U.S. [488, 493 (2009)]. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. *See, e.g.*, *Ries*, 287 F.R.D. at 533; *Lilly* . . . , 2015 WL 1248027, at *4 . . . ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer ... won't know whether it makes sense to spend her money on the product."). In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *See, e.g.*, *L'Oreal*, 991 F.Supp.2d at 194-95.

*Id.* at 969-70.[9]

This case mirrors *Davidson*. Here, Plaintiff stated:

I continue to see many of the ecover brand cleaning products, including the [Dishwasher Tablets], available for purchase with the same or nearly identical Plant-Based & Mineral Representations. I want to, again, purchase ecover brand cleaning products with those representations on the front of the labels, including the [Dishwasher Tablets], even though I have to come to believe that, back in 2020, when I bought the Product, it was falsely and misleadingly labeled as being made "[w]ith plant-based and mineral ingredients." I do not know whether Defendant changed the formulation or its manufacturing processes. Nor do I know all of the ingredients in the ecover brand cleaning products, including the [Dishwasher Tablets]. Similarly, I do not know whether all of the products' ingredients come from plants, minerals, or were substantially processed. Unfortunately, I cannot rely on the truth of the Plant-Based & Mineral Representations. That is because I am not sophisticated in the chemistry, manufacturing, and formulation of cleaning products, and I do not know the meaning or the import of all of the ingredients listed on any back-label disclosures. However, if I could rely upon the truthfulness of those representations, I would continue to buy ecover brand cleaning products, including the [Dishwasher Tablets], that contain the Plant-Based & Mineral Representations on their labels.

Maisel Decl. ¶ 6. Under *Davidson*, no more is required to confer Article III standing for injunctive relief. *See* 889 F.3d at 969-70; *see also* Order Deny MTD, ECF 29 § IV. ("Maisel further alleges she 'continues to see the Products available for purchase and desires to purchase them again if the Plant-Based Representations were in fact true,' but she 'is, and continues to be, unable to rely on

---

[9] *See also Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *6 (N.D. Cal. May 5, 2021) (Hixson, J.) ("In the Ninth Circuit, 'a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.' *Id.* at 969 (quoting *Summers* . . . , 555 U.S. [at] 493 . . . ). This harm may be demonstrated in two ways: (1) 'the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to,' or (2) 'the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.' *Id.* at 969-70.").

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

the truth of the Products' Plant-Based Representations.' *Id.* ¶ 8. These allegations closely mirror the *Davidson* plaintiff's."); *Snarr v. Cento Fine Foods Inc.*, No. 19-cv-02627-HSG, 2019 WL 7050149, at *6 (N.D. Cal. Dec. 23, 2019) ("Plaintiffs additionally allege that 'if [he or she] could rely upon the truthfulness of Defendant's labeling, [he or she] would continue to purchase the Products in the future.' The Court finds that these allegations meet the requirements of *Davidson*. Plaintiffs establish threat of future harm by alleging that they would purchase the Products in the future only if they could rely on Defendant's labeling, whether the 'Certified' mark was substantiated as D.O.P. certification or if it was removed. This sufficiently alleges the first example of future harm noted in *Davidson*—Plaintiffs will not purchase the Products until they can rely on the Products' representations.") (citations omitted).

### 2. Plaintiff and the Class Complain of Standardized Uniform Conduct Applicable to the Entire Class.

For a Rule 23(b)(2) class to be certified, it is sufficient if class members complain of a practice that is generally applicable to the class as a whole. *See* Fed. R. Civ. Proc. 23(b)(2) (certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."); *see also Walters*, 145 F.3d at 1047; Charles Alan Wright, et al., Fed. Prac. & Proc. § 1775 (3d ed. 2011) ("All the Class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."); *Mueller v. Puritan's Pride, Inc.*, No. 3:16-cv-06717-JD, 2021 WL 5494254, at *8 (N.D. Cal. Nov. 23, 2021) ("For Rule 23(b)(2), the Court is not required 'to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them.' *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). 'It is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole.' *Id.* (quoting *Walters*, 145 F.3d at 1047) (internal quotations omitted)."). As discussed herein, Plaintiff and Class members complain of standard and uniform practices in the form of

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1   unfair, unlawful, and deceptive conduct by Defendant that is generally applicable to the Class as a

2   whole.

3         **3.    *Plaintiff Seeks Injunctive Relief that Would Benefit Each Class Member.***

4         "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide

5   relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 341; *accord Cruz v.*

6   *PacifiCare Health Systems, Inc.*, 30 Cal.4th 303, 315-16 (2003) (statutory remedies available for a

7   violation of the CLRA, UCL, and FAL include public injunctive relief whose primary purpose and

8   effect is prohibiting unlawful acts that threaten future injury to the general public.); *Delarosa v.*

9   *Boiron, Inc.*, 275 F.R.D. 582, 591-92 (C.D. Cal. 2011).

10        Plaintiff seeks injunctive relief prohibiting Defendant from continuing to engage in

11  deceptive, misleading, unlawful, unfair practices, by removing the Plant-Based & Mineral

12  Representations from the Products. Such equitable relief will benefit every class member by

13  preventing future consumer deception. *See Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-1979-

14  DOC-(ADSx), 2021 WL 3468951, at *7 (C.D. Cal. Apr. 29, 2021), *reconsideration denied*, No. SA

15  CV 20-01979-DOC-(ADS), 2021 WL 3468953 (C.D. Cal. June 11, 2021) ("Here, the injunctive

16  relief that Plaintiff seeks requires Defendants to remove misleading statements from its Product.

17  This case exemplifies the kind of action that may be appropriate for certification under Rule

18  23(b)(2), 'at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are

19  unlawful, and (2) injunctive relief prohibiting defendants from continuing them.' *Ries* . . . , 287

20  F.R.D. [at] 541 . . . (citations omitted). Those requests can be satisfied with "indivisible" equitable

21  relief that benefits all class members at once, as the Rule suggests. *Id.*"); *Smith v. Keurig Green*

22  *Mountain, Inc.*, No. 18-cv-06690-HSG, 2020 WL 5630051, at *11 (N.D. Cal. Sept. 21, 2020)

23  ("Plaintiff alleges that the Products are not recyclable in a substantial majority of communities in

24  which they are sold such that Keurig's representation is misleading. The proposed injunctive relief—

25  an order to enjoin Keurig from advertising their products as recyclable—may be granted and provide

26  relief for all proposed class members. Plaintiff thus satisfies the requirements of Rule 23(b)(2).").

27  Accordingly, injunctive relief is necessary to prevent future harm to consumers who purchase the

28  Products and to prevent Defendant from selling its deceptively packaged Products with impunity.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

### D.   Rule 23(G) is Satisfied

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). In evaluating the adequacy of counsel, the Court examines the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to represent the class[.]" *Id*.

Plaintiff's counsel have and will continue to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Plaintiff's counsel has performed substantial work to date litigating Plaintiff's claims against Defendant. Bruce Decl. ¶ 3-4. Plaintiff's counsel has invested hundreds of hours prosecuting claims on behalf of Plaintiff and the Class, including defeating Defendant's motion to dismiss the FAC. Order Denying MTD, ECF 29. Moreover, Plaintiff's counsel possess extensive experience in prosecuting complex class actions, including in consumer false advertising actions such as this case. *See* **Ex. K** [Clarkson Resume]; **Ex. L** [Moon Resume]. As evidenced by the fact that counsel has already devoted substantial time and effort to the prosecution of this proceeding, there can be no doubt that Plaintiff's counsel will continue to devote the resources necessary to representing the Class following appointment as Class Counsel. As such Plaintiff requests that the Court appoint Clarkson Law Firm, P.C. and Moon Law APC as class counsel.

## V.   CONCLUSION

Based on the forgoing, Plaintiff respectfully requests that the Court grant her Motion for Class Certification, appoint her as the representative of the Classes pursuant to Fed. R. Civ. P. 23(a) and 23(b), and appoint her counsel as counsel for the Classes pursuant to Rule 23(g).

Date: December 20, 2021                    **CLARKSON LAW FIRM, P.C.**

By: */s/Katherine A. Bruce*
        Ryan J. Clarkson, Esq.
        Shireen M. Clarkson, Esq.
        Katherine A. Bruce, Esq.
        Kelsey J. Elling, Esq.

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**MOON LAW, APC**


By: _/s/ Kevin O. Moon_____
         Christopher D. Moon, Esq.
         Kevin O. Moon, Esq.

*Attorneys for Plaintiff Elizabeth Maisel*