**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN: 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Tel: (415) 730-0387
Fax: (650) 618-0478

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>S.C. JOHNSON & SON, INC., a Wisconsin Corporation,<br><br>Defendant. | Case No.  3:21-cv-00413-TSH<br>Case Filed: 1/15/2021<br>FAC Filed: 3/24/2021<br><br>*Assigned to United States Magistrate Judge Thomas S. Hixson for all purposes*<br><br>**PLAINTIFF ELIZABETH MAISEL'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; APPOINTMENT OF CLASS REPRESENTATIVE; AND APPOINTMENT OF CLASS COUNSEL**<br><br>**Hearing Information:**<br>Date: May 19, 2022<br>Time: 10:00 a.m.<br>Courtroom: G-15th Floor<br>Courthouse: San Francisco Courthouse<br>Video Conf.:<br>https://www.cand.uscourts.gov/judges/hixson-thomas-s-tsh/ |

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFF MEETS THE REQUIREMENTS OF RULE 23(A).......................... 1

     A.      Plaintiff Has Satisfied the Commonality Requirement................................. 1

          1.      Evidence of Deception and Materiality Is Not Required at the Class-Certification Stage ...................................................................... 1

          2.      Defendant Misleadingly Describes Its Survey's Results ................. 3

          3.      Defendant's Survey Demonstrates Materiality and Deception...................... 4

          4.      Defendant's Admitted Marketing Strategy and the FTC's Green Guides Further Demonstrate Materiality, Supporting the Presumption of Consumer Reliance and Causation.................................................................... 5

          5.      Defendant Entirely Misconstrues Ms. Maisel's Testimony to Argue the Challenged Representations Have "No Fixed Meaning"................................ 6

     B.      Plaintiff Has Satisfied the Typicality Requirement ..................................... 7

     C.      Plaintiff and Plaintiff's Counsel Demonstrated Adequacy ......................... 9

     D.      Plaintiff Established Numerosity ............................................................... 10

III.    PLAINTIFF MEETS THE REQUIREMENTS OF RULE 23(B)(2) .................. 10

     A.      Plaintiff Has Standing for Injunctive Relief .............................................. 10

     B.      The Discontinuance of *Some* Products—Even if True—Does Not Eliminate Plaintiff's Standing as to the Remaining Products .................................. 14

IV.     CONCLUSION.................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page No.**

3

*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ................................................................. 2, 5

4

5

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
    568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) ................................. 2

6

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-CV-01196-HSG,
    2018 WL 4181896, 2018 U.S. Dist. LEXIS 4181896 (N.D. Cal. Aug. 31, 2018) ..... 9

7

8

*Bradach v. Pharmavite LLC*,
    No. CV 14-3218-GHK (AGRx),
    2016 WL 7647661, 2016 U.S. Dist. LEXIS 7647661 (C.D. Cal. Jul. 6, 2016) ......... 1

9

10

*Bradach v. Pharmavite, LLC*,
    735 F. App'x 251 (9th Cir. 2018) ........................................................... 2, 5

11

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-cv-01027-BLF,
    2018 WL 4952519, 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sep. 25, 2018) ..... 2, 5

12

13

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
    249 F.R.D. 334 (N.D. Cal. 2008) ............................................................ 10

14

15

*Chavez v. Blue Sky Nat. Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) .............................................................. 9

16

*Clay v. CytoSport Inc.*,
    No. 3:15-cv-001650-L-AGS,
    2018 WL 4283032, 2018 U.S. Dist. LEXIS 153124 (S.D. Cal. Sep. 7, 2018) ........ 15

17

18

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal.App.4th 663 (2006) ................................................................... 2

19

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ................................................................. 13

20

21

*Dunn v. Costco Wholesale Corp.*,
    No. CV 21-1751-JFW(AGRX),
    2021 WL 4205620, 2021 U.S. Dist. LEXIS 4205620 (C.D. Cal. Jul. 30, 2021) ........ 5

22

23

*DZ Reserve v. Meta Platforms, Inc.*,
    No. 3:18-cv-04978-JD,
    2022 WL 912890, 2022 U.S. Dist. LEXIS 57112 (N.D. Cal. Mar. 29, 2022) ........... 2

24

25

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) ........................................................... 4, 5

26

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................ 14

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................ 2, 10, 14

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................. 4

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*,
   422 F. Supp. 3d 194 (D.D.C. 2019) ................................................................... 2

*Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.*,
   19 F.3d 125 (3d Cir. 1994) ................................................................................. 4

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................... 10

*Kumar v. Salov North America Corp.*,
   No. 14-CV-2411-YGR,
   2016 WL 3844334, 2016 U.S. Dist. LEXIS 92374 (N.D. Cal. Jul. 15, 2016) ............................ 5

*Lambert v. Nutraceutical Corp.*,
   No. CV 13-05942-AB (EX),
   2020 WL 12012559, 2020 U.S. Dist. LEXIS 6391 (C.D. Cal. Jan. 8, 2020) ............................ 2

*Lanovaz v. Twinings North America, Inc.*,
   726 F. App'x (9th Cir. 2018) ............................................................................. 13

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ...................................................................... 12

*Major v. Ocean Spray Cranberries, Inc.*,
   No. 5:12-CV-03067 EJD,
   2013 WL 2558125, 2013 U.S. Dist. LEXIS 81394 (N.D. Cal. Jun. 10, 2013) ............................ 7

*Martin v. Monsanto Co.*,
   No. ED CV16-2168-JFW (SPx),
   2017 WL 1115167, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017) ......................... 5

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ........................................................................... 12

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 1

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ............................................................................. 14

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) ............................................................... 2

*Oshana v. Coca–Cola Co.*,
   No. 04 C 3596,
   2005 WL 1661999, 2005 U.S. Dist. LEXIS 14184 (N.D. Ill. Jul. 13, 2005) ............................ 4

*Procter & Gamble Co. v. Ultreo, Inc.*,
   574 F. Supp. 2d 339 (S.D.N.Y. 2008) ................................................................ 4

*Reitman v. Champion Petfoods USA, Inc.*,
  No. CV 18-1736-DOC (JRPx),
  2019 WL 7169792, 2019 U.S. Dist. LEXIS 221941 (C.D. Cal. Oct. 30, 2019)........................ 10

*Snarr v. Cento Fine Foods Inc.*,
  No. 19-cv-02627-HSG,
  2019 WL 7050149, 2019 U.S. Dist. LEXIS 220063 (N.D. Cal. Dec. 23, 2019)....................... 13

*Testone v. Barlean's Organic Oils, LLC*,
  No. 19-CV-169 JLS (BGS),
  2021 WL 4438391, 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sep. 28, 2021)................. 2, 4, 9

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ...................................................................................... 14

*Vizcarra v. Unilever United States, Inc.*,
  339 F.R.D. 530 (N.D. Cal. 2021)................................................................................. 5, 6

*Wiener v. Dannon Co, Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ................................................................................. 7, 9


**Federal Statutes**

Fed. R. Civ. P. 23 ....................................................................................................... 1, 9


**State Statutes**

California Unfair Competition Law ("UCL"),
  Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................................................... 2

California False Advertising Law ("FAL"),
  Cal. Bus. & Prof. Code § 17500 ...................................................................................... 2

California Consumers Legal Remedies Act ("CLRA"),
  Cal. Civ. Code §§ 1750, *et seq.*...................................................................................... 2

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

PLAINTIFF'S REPLY ISO MOTION FOR CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

## I.      INTRODUCTION

Astoundingly, Defendant submitted a consumer survey that actually **supports** Ms. Maisel's motion for class certification by providing powerful evidence that the challenged "Plant-Based & Mineral Representations" are both material and deceptive. This common evidence and the common evidence provided by Ms. Maisel—though not required at the class certification stage—demonstrate this case should be certified. Unfortunately, in arguing against certification, Defendant shamefully and repeatedly misleads this Court concerning the results of Defendant's own consumer survey and Ms. Maisel's deposition testimony. When both are properly construed, however, it is clear Ms. Maisel has satisfied Rule 23's requirements and therefore the Court should grant class certification.[1]

## II.      PLAINTIFF MEETS THE REQUIREMENTS OF RULE 23(A)

### A.      Plaintiff Has Satisfied the Commonality Requirement

Defendant contends commonality has not been established based on Defendant's misplaced belief that there exists insufficient "evidence" of deception and materiality. However, as explained below, the Ninth Circuit does not require such evidence *at the class certification stage*.[2] Nevertheless, even if Ms. Maisel were required to provide evidence of deception and materiality at this stage—which she is not—more than sufficient evidence has been presented.

#### 1.      Evidence of Deception and Materiality Is Not Required at the Class-Certification Stage

In *Bradach v. Pharmavite LLC*, 2016 WL 7647661 (C.D. Cal. Jul. 6, 2016), a product mislabeling case, the district court refused to certify a class because the plaintiff had "offered no evidence that consumers uniformly interpret the statement ['Helps Maintain a Healthy Heart'] in a particular manner" and therefore plaintiff "failed to show that this interpretation question would be

---

[1] At this stage, Ms. Maisel seeks to certify a California-only class and forgoes certification of the Nationwide Class, thereby mooting Defendant's argument under Rule 23(b)(2) and its related choice-of-law argument under *Mazza v. Am. Honda Motor Co*, 666 F.3d 581 (9th Cir. 2012), regarding some variance in different states' breach of warranty and unjust enrichment laws (Opp., ECF 46, at 7-9 and 24-25).

[2] Also, rather than addressing the twelve different common questions Ms. Maisel identified, each one of which is sufficient to demonstrate commonality (FAC ¶ 59; Mot., ECF 39-1, at 12), Defendant manufactured its own "crucial questions" to dispute. Opp., ECF 46, at 10. As Defendant has not contested the common questions Ms. Maisel identified, the Court should find she has satisfied commonality.

Case No. 3:21-cv-00413-TSH                    1

common to the class."[3] For this reason, the district court determined "an individualized inquiry into each consumer's interpretation of 'Helps Maintain a Healthy Heart' would be required[.]" *Id.* at 5. The Ninth Circuit promptly reversed the district court's denial of class certification. *See Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254 (9th Cir. 2018). With regard to the district court's uniform-interpretation finding, the Ninth Circuit held that "the district court's conclusion that it would need to inquire into the motives of each individual class member was premised on an error of law" because "the standard in actions under both the CLRA and UCL is" an objective standard that focuses on "whether 'members of the public are likely to be deceived,'" and therefore "class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Id.* at 254; *see also Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (rejecting an evidentiary requirement and "conclud[ing] that the district court erred in denying class certification because it evaluated the merits rather than focusing on whether the questions presented—meritorious or not—were common to the class."); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (proof of materiality is not required at the class-certification stage). Just as in *Bradach*, *Alcantar*, and *Amgen*, the Court should reject Defendant's invitation to impose an evidentiary requirement reserved for the later stages of litigation.[4]

---

[3] *Id.* at 6. (further finding, "with no evidence that consumers in the class interpret 'Helps Maintain a Healthy Heart' in a uniform way, the question of *what* interpretation consumers find material will vary from consumer to consumer.").

[4] *See also Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *14 (S.D. Cal. Sep. 28, 2021) (rejecting defendant's argument that "Plaintiffs must put forth evidence of materiality and likelihood of deception for the Court to certify the Classes" in a product mislabeling case and finding "more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage."); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) ("California courts have explicitly reject[ed] [the] view that a plaintiff must produce extrinsic evidence such as expert testimony or consumer surveys in order to prevail on a claim that the public is likely to be misled by a representation under the FAL, CLRA, or UCL.") (quotations omitted); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 890 (N.D. Cal. 2016) (same); *Lambert v. Nutraceutical Corp.*, 2020 WL 12012559, at *9 (C.D. Cal. Jan. 8, 2020) (same, but nevertheless finding defendant's own survey results support a showing of materiality); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (finding "materiality evidence" not required at the class-certification stage and "[b]ecause materiality is an objective question based on the reasonable consumer, it is common to the class and 'ideal for certification.'") (citations and quotations omitted); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 681-682 (2006) ("[W]e reject defendants' view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.") (citations and quotations omitted); *DZ Reserve v. Meta Platforms, Inc.*, 2022 WL 912890, at *6 (N.D. Cal. Mar. 29, 2022); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 251 (D.D.C. 2019) ("[In light of the objective standard for materiality under California law, extrinsic evidence of materiality is not required.").

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

Yet even if Ms. Maisel were required to provide evidence of deception and materiality at this stage of the proceedings, more than sufficient evidence has been presented. Indeed, by submitting a consumer survey in support of its opposition, Defendant has necessarily conceded that common questions are susceptible to common proof. *See* ECF 46-4; ECF 46-5. As an initial matter, however, Ms. Maisel must address Defendant's shockingly misleading portrayal of its survey's results.

## 2.    Defendant Misleadingly Describes Its Survey's Results

In conducting her survey, Defendant's expert showed survey respondents images of the Ecover Dishwasher Tablets, which were prominently labeled "**With plant-based & mineral ingredients**." ECF 46-4 at 15; ECF 46-5 at pp. 28, 53. In other words, the product labeling shown to every survey respondent very clearly informed the respondent that the product contained **both** plant-based **and** mineral ingredients. After being shown the "with plant-based & mineral ingredients" label, respondents were asked "[w]hich of the following, if any, represents your understanding [of] this product" and provided a number of listed interpretations, which included "Product contains *only* plant-based ingredients" and "Product contains *only* mineral-based ingredients." ECF 46-4; ECF 46-5, at p. 33 (emphasis added). Clearly, no respondent should have selected either of these attributes because the product label expressly told him or her the product contains **both** plant-based **and** mineral ingredients.[5]

Nevertheless, 15.2% of respondents inexplicably selected "Product contains only plant-based ingredients." ECF 46-4, at ¶ 46. And 8% of respondents selected "Product contains only plant-based ingredients" and also indicated these ingredients were not "processed" or "synthesized." *Id.*[6] Of course, these statistics are plainly irrelevant because no respondent should understand the product label "With plant-based *& mineral ingredients*" to mean the product contains *only* "plant-based ingredients." Yet, astoundingly, throughout its opposition, Defendant repeatedly—and

---

[5] However, Respondents were **not** given the option to select "**Product contains only plant-based and mineral ingredients**," or some substantially similar option. *But see, e.g.*, Ex. Q [Maisel Depo.] at 107:21-23, 108:7-14, 127:22-128:24 ("It's deceptive when [an Ecover brand household product's label] says *plant and mineral based* and then it's not.") (emphasis added); *accord* FAC, ECF 16, ¶¶ 1-2, 8; Ex. T at ROG 6; Maisel Decl., ECF 40, ¶ 5.

[6] Defendant makes similarly deceptive arguments for the statement "mineral-based ingredients." Opp., ECF 46, at § IV.B.1. Even more misleading is the fact that the statement "mineral-based ingredients" does not appear on the Products' labels, which state, in part, "mineral ingredients." *See, e.g.*, Ex. A, ECF 40-4, at p. 8 (SCJ 18), p. 21 (SCJ 21), p. 28-29 (SCJ 26, 24), p. 31-32 (SCJ 23, 25), p. 28 (SCJ 28), pp. 44-45 (SCJ 30, 32), p. 40 (SCJ 40).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

misleadingly—attempts to convince this Court that these statistics demonstrate consumers do not interpret the Product labels consistent with Ms. Maisel's and her asserted reasonable consumers' understanding and therefore there is no deception.[7] But Defendant elides the fact that the "plant-based ingredients" statement used in the survey was actually "with plant-based & mineral ingredients," and thus **no** consumer should believe the "with plant-based **& mineral ingredients**" statement means a product contains **only** plant-based ingredients. These statistics are evidence of nothing and Defendant's repeated attempts to deceive the Court are shameful.[8]

### 3.    Defendant's Survey Demonstrates Materiality and Deception

When Defendant's survey is properly construed, it is clear the "with plant-based & mineral ingredients" representation **is material** to consumers:

- According to Defendant's survey, nearly one third of survey respondents—32.7%—indicated that plant-based ingredients are important when considering whether to purchase the Product. ECF 46-4 at ¶ 13.b. But this percentage is likely much higher because it includes the nearly 30% of respondents who stated they were **not** likely to purchase the product. *Id.* at ¶ 13.a. Clearly, respondents who do not wish to purchase an allegedly plant-based and mineral product would not find "plant-based ingredients" important to their purchasing decision. Had Defendant's expert excluded the nearly 30% of respondents, the percentage of respondents who found plant-based ingredients important would be significantly higher.

- Regardless, even accepting the 32.7% statistic as accurate, case law is clear that a representation is material where as few as 20-25% of consumers attach importance to it. *See, e.g., Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("[Defendant's] internal documents show that [Defendant] thought the "Made From Real Ginger" claim *was* material," citing Defendant's survey where 25% of respondents believed the product was made with real ginger.); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1019 (C.D. Cal. 2015) ("Courts, moreover, have found a representation material when significantly smaller percentages of consumers than those reflected in the surveys here viewed it in that light," citing *Oshana v. Coca–Cola Co.*, 2005 WL 1661999, *9 (N.D. Ill. Jul. 13, 2005) (24% of consumers); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 345 (S.D.N.Y. 2008) ("Cases have held that 20% constitutes a substantial percentage of consumers" who "are taking away the message that the plaintiff contends the advertising is conveying."); *Johnson & Johnson–Merck Consumer Pharms. Co. v. Rhone–Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 134, n.14 (3d Cir. 1994) (citing Lanham Act cases finding "deception rates" of 20% or more to be sufficient). Here, Defendant's survey demonstrates that 32.7% of respondents—and certainly many more— attached importance to the representation in deciding whether to purchase the Product. That evidence alone is sufficient to demonstrate materiality.

- Defendant's survey, however, provides even more evidence of materiality. Out of 24 listed "product characteristics," respondents selected "plant-based ingredients" in the top five most important characteristics affecting their decision to purchase the product. ECF 46-4 at ¶ 39; *see*

---

[7] For example, Defendant states, "When choosing from a list of options, a mere 8% of respondents believed that the "plant-based ingredients" statement was important and meant the product only contains plant-based ingredients that are not synthesized and/or processed, as Plaintiff alleges (but does not believe herself)." Opp., ECF 46, at 13; *see also, e.g., id.* at 1.

[8] *See Testone*, 2021 WL 4438391, at *14 (rejecting Defendant's argument that a consumer survey conducted by the *same expert in this case* undercuts a showing of materiality and deception).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

*also Fitzhenry-Russell*, 326 F.R.D. at 614 ("Clearly, if a quarter of Canada Dry consumers were listing the ginger claim as a top five reason why they bought the product, the claim is material.").[9] Accordingly, more than sufficient evidence exists to demonstrate materiality.[10]

- In addition, Defendant's survey provides powerful evidence that **consumers were deceived** by the representation at issue. Of those respondents who indicated plant-based ingredients would be important to their purchase decision, fewer than 5% believed the product's ingredients undergo some processing. ECF 46-4 at p. 27, Table 5. In other words, **over 95% of respondents believed the product ingredients are not processed**, which directly supports Plaintiff's theory of deception. *See*, *e.g.*, FAC, ECF 16, at ¶ 2 ("In light of the Plant-Based Representations, reasonable consumers, including Plaintiff, believe the Products only contain ingredients that come from plants and/or from plants and minerals, and that are not subjected to chemical modification or processing, which materially alters the ingredients' original plant-based or mineral composition.").[11]

### 4. Defendant's Admitted Marketing Strategy and the FTC's Green Guides Further Demonstrate Materiality, Supporting the Presumption of Consumer Reliance and Causation

In addition to Defendant's survey, Defendant's own documents and websites demonstrate that Defendant knows—and seeks to take advantage of—consumers' desire for products that are natural and contain only plant-based and mineral ingredients. *See* Mot., ECF 39-1, at 1-7 (describing this evidence in detail). Similarly, Defendant's entire marketing strategy was focused on conveying a singular, critical message to consumers: Ecover cleaning products are made only from natural, plant and/or mineral ingredients, which are safe and good for the environment. *Id.* And, the FTC's Green Guides provide further evidence of the materiality and deception of environmental marketing claims, such as "plant-based." *Id.* at 6. Yet Defendant admits the Products contain numerous "synthetic" ingredients that have nothing to do with plants and/or minerals. *See* FAC ¶¶ 34-47; Ex. I, ECF 40-8 (Synthetic Admissions Chart). Even though it is not required at this stage, this common evidence sufficiently demonstrates materiality and deception.[12]

---

[9] *See also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers."); *Martin v. Monsanto Co.*, 2017 WL 1115167, at *7 (C.D. Cal. Mar. 24, 2017) ("Specifically, [Defendant's] own documents and consumer studies demonstrate materiality.").

[10] Because Plaintiff has demonstrated materiality, reliance and causation can be inferred, and Defendant's arguments to the contrary should be rejected. *See* Mot. at 14-16 (citing cases).

[11] *See Broomfield*, 2018 WL 4952519, at *4 ("In considering a motion for class certification, the substantive allegations of the complaint are accepted as true[.]").

[12] Most of the cases Defendant cites in support of its materiality and deception argument predate the Ninth Circuit's decisions in *Bradach* and *Alcantar*. And the *Bradach* and *Alcantar* decisions were not even addressed in *Dunn v. Costco Wholesale Corp.*, 2021 WL 4205620 (C.D. Cal. July 30, 2021) or *Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530 (N.D. Cal. 2021), which Defendant cites. *Dunn* is further distinguishable because only 2% of consumers found the representation at issue important to their purchasing decision, which the court found insufficient to demonstrate materiality. 2021 WL 4205620, at *5. In addition, the only evidence of materiality and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

**5.    Defendant Entirely Misconstrues Ms. Maisel's Testimony to Argue the Challenged Representations Have "No Fixed Meaning"**

Consistent with the FAC, her sworn interrogatory response, and declaration, Ms. Maisel repeatedly testified that she and reasonable consumers were misled by the Challenged Representations to believe that the Products do not contain ***any*** ingredients that do not come from plants or minerals, or that underwent substantial processing.[13] Yet Defendant incorrectly asserts that Ms. Maisel "***does not know*** if the ['with plant-based & mineral ingredients'] representation means that the product contains only ingredients that come from plants or minerals." Opp., ECF 46, at 12. In an attempt to manufacture an inconsistency, Defendant selectively cites, and takes out of context, Ms. Maisel's testimony[14] as well as points to ambiguous responses to Defendant's counsel's inartful questions, wherein Ms. Maisel expresses uncertainty about whether the ***actual contents*** of a Product she never purchased—as opposed to the contents ***as represented***—only include plant-based ingredients.[15] The Court should reject Defendant's effort to invent a contradiction where none exists.

---

deception in *Vizcarra* was a survey the court found to be fatally defective. 339 F.R.D. at 549-550. Here, however, Defendant's own survey as well as Defendant's documents and websites sufficiently demonstrate materiality and deception.

[13] Ex. Q [Maisel Depo.] at 51:24-53:3 (asking for Ms. Maisel's interpretation of "with plant-based and mineral ingredients" and responding: "That it's plant and mineral-based."); *id.* at 89:13-19, 95:15-23; *id.* at 107:21-23, 108:7-14, 127:22-128:24 ("***It's deceptive when [an Ecover brand household product's label] says plant and mineral based and then it's not.***") (emphasis added); *see also id.* at 16:4-17:2; 57:11-20; *accord* FAC, ECF 16, ¶¶ 1-2, 8; Ex. T at ROG 6; Maisel Decl., ECF 40, ¶ 5.

[14] Defendant's counsel initially asked Ms. Maisel how she interprets the "with plant-based ingredients" on the unpurchased Lavender Field Laundry Detergent, and she explained "[t]hat it's plant-based ingredients"—i.e., that it ***is*** comprised of plant-based ingredients. *Id.* at 69:20-22, 70:14-22, 72:3-24; *see also id.* 16:11-17:2 (contrary to Defendant's claims, Ms. Maisel elaborated on the meaning of "plant-based ingredients" as ingredients that are not "synthetic" or "overly processed," such that "anything that was a plant is no longer a plant"—not that "plant-based ingredients" means "some" "synthetic" or "overly processed" ingredients).

[15] Indeed, when Defendant's counsel asked Ms. Maisel whether the "plant-based ingredient" label would "mean that [the unpurchased Lavender Field Detergent] only has plant-based ingredients or that it contains some plant-based ingredients," Ms. Maisel reiterated that she does not personally know whether the Lavender Field Laundry Detergent is actually comprised of all or some plant-based ingredients. *See id.* at 72:24-74:10 (noting some ambivalence because counsel "segued into the question partially" and reiterating that ***"[w]hat [she] think[s] would be misleading is if [the label] is plant-based and [the product] is in fact not"***); *see also id.* at 19:5-25; 129:22-25 (Ms. Maisel reiterating she is neither a scientist, nor chemist); Maisel Decl., ECF 40, ¶ 5 (explaining understanding of the purchased Dishwasher Tablets' "with plant-based and mineral ingredients" label).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

### B.    Plaintiff Has Satisfied the Typicality Requirement

Defendant's arguments that Ms. Maisel is "atypical" of the putative class can be easily dispatched. *See* Opp., ECF 46, at 17-18. First, Defendant erroneously contends that Ms. Maisel cannot establish typicality because she is subject to a "unique defense" (i.e., lack of standing). However, as discussed in Section III.A., *infra*, that is wrong. Second, Defendant incorrectly relies on *Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125 (N.D. Cal. June 10, 2013) and *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009) to argue that Ms. Maisel is atypical because "the evidence needed to prove Plaintiff's claims as to the product she purchased will not be probative of the claims of the absent class members." Opp., ECF 46, at 18:23-34. As set forth below, this argument is entirely without merit.

In *Wiener*, the plaintiff sought to certify a class of consumers who purchased several yogurt product lines. 255 F.R.D. at 663. The plaintiff only purchased one of the yogurt products. *Id*. The various product lines were notably dissimilar and, unlike the Products here, the *Wiener* products: (1) were separately branded, (2) featured different types of probiotic bacteria, (3) targeted consumers with different health issues, (4) advertised different health benefits that were allegedly substantiated with different studies, and (5) were separately advertised and marketed. *Id* at 666-667. Based on these significant differences, the *Wiener* court found a lack of typicality because there would be a "substantial divergence in the evidence" required to prove the claims with regard to [the various yogurt products]." *Id*. at 666.[16]

The instant case is vastly different. Indeed, this Court has already determined that there is a common "link" between the Products. In its Order denying Defendant's motion to dismiss, the Court found that "the unpurchased Ecover products are **substantially similar** to the [purchased] Ecover product." ECF 29 at 9:21-22 (emphasis added).[17] Nothing in Defendant's opposition refutes the

---

[16]  *Major* similarly involved product lines with disparate representations—unlike the labels challenged here—and therefore the *Major* court found the plaintiff "fail[ed] to link any of those products to any alleged misbranding issue" related to her purchase. 2013 WL 2558125, at *4. Consequently, in determining that the plaintiff failed to meet the typicality requirement, the court noted that "the content that purportedly gives rise to Plaintiff's claims is unique to the specific and particular product she purchased **and has no applicability to other products within the same line**." *Id*. (emphasis added).

[17]  Such similarities include the fact that the Products: (1) are all cleaning products sold under the Ecover brand name; (2) contain a Plant-Based & Mineral Representation on their labeling and packaging; (3) use similar nature-themed imagery, coloring and additional representations such as "get nature on your side"; (4) mislead in the same way (i.e., cause reasonable consumers to believe

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

material facts upon which this Court relied in so finding. Therefore, the substantial similarities between the purchased and unpurchased products here unquestionably demonstrate that "the content that purportedly gives rise to Plaintiff's claims" is **not** "unique to the specific and particular product she purchased."

In addition, common evidence can be used to prove both Ms. Maisel's claims and the claims of the putative class. Even Defendant's own evidence makes that abundantly clear. As discussed in Section II.A.3., *supra*, Defendant submitted survey evidence from its expert that was "designed to evaluate whether statements that Plaintiff has alleged are misleading ('plant-based ingredients,' 'with plant-based ingredients,' and 'with plant-based & mineral ingredients') are material and would have an impact on consumers' purchasing decisions." ECF 46-4, p. 5, ¶ 9. Importantly, Defendant's expert "selected the Dishwasher Tablets as an example of an Ecover product to test, in part, because this was the product Plaintiff purchased. Further, the other at-issue statements ("plant-based ingredients" and "with plant-based ingredients") are subsumed in the "with plant-based & mineral ingredients" statement tested on the Dishwasher Tablets. **As a result, the results of my survey reasonably apply to all of the at-issue statements**." *Id*. at p. 6, ¶ 12 (emphasis added). Therefore, no "substantial divergence in the evidence" is required to prove the claims with regard to the various Products at issue as, here, Defendant and its own expert agree that consumer survey evidence can be used to establish the claims of the entire class.

Further, Defendant's own admissions constitute common evidence probative of the entire class's claims, which uniformly involve Products represented as only containing ingredients that come from plants or from plants and minerals. For example, Defendant admits that each of the Products contain synthetic, non-plant-based and non-mineral ingredients. *See* Opp., ECF 46, at 3:12-13 (noting the percentage of plant-based ingredients, *excluding* water); *see also* Bruce Decl., 39-2, at ¶ 2.i.; Ex. I, ECF 40-8 (Defendant admits that over 63 ingredients in the Products are synthetic).[18] Therefore, based on this common evidence, it is undisputed that both the purchased

the Products do not contain non-natural ingredients); and (5) contain ingredients that do not comport with this understanding. *Id*. at pp. 8-9.

[18] Defendant once again attempts to mislead this Court by proffering Exhibit 2 (ECF 46-2, at pp. 64-66) as a summation of all ingredients in the Products. However, it omits several ingredients, including the admittedly synthetic ingredients Ms. Maisel identified from Defendant's formulation spreadsheets and online ingredient disclosures. *See* Ex W (noting up to 13 omitted ingredients, per

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

and unpurchased products do not contain only plant-based or plant-based and mineral ingredients. Accordingly, Defendant's argument that the evidence needed to prove Ms. Maisel's claims is somehow "unique" to Ms. Maisel is not only without merit, but it is also completely belied by Defendant's own admissions and evidence.[19]

## C.   Plaintiff and Plaintiff's Counsel Demonstrated Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "In making this determination, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Testone*, 2021 WL 4438391, at *10 (citations and quotations omitted).  Here, Defendant does not actually address these two questions, nor meaningfully refute Ms. Maisel's arguments that the adequacy requirement has been satisfied. *See* ECF 39-1 at 18-19.  Rather, Defendant invents its own adequacy questions, which Defendant attempts to answer by—once again—misconstruing Ms. Maisel's deposition testimony and ignoring her declaration.[20]  When this

_____

Product, and several ingredients, not previously disclosed in Defendant's discovery responses or documents); Bruce Supp. Decl. ¶¶ 4, 6; Ex. R at RFP 1-2; Ex. S at ROG 5-6; Ex. H, ECF 40-6 [Def. Prod. Formulations]. This Court should disregard Defendant's Exhibit 2 as inaccurate and incomplete and should not condone such discovery abuses.

[19] For these reasons, this case is much more analogous to *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) and *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) where the plaintiffs satisfied the typicality requirement despite their inclusion of products they did not actually purchase. For example in *Ang*, the court observed that under the permissive standards of Rule 23(a)(3), the "claims need only be 'reasonably co-extensive with those of absent class members,' rather than 'substantially identical.'" 2018 WL 4181896 at *9 (finding typicality satisfied because **the plaintiffs "are alleging the same injury based on their purchase of similar products.**") (emphasis added); *see also Chavez*, 268 F.R.D. at 378 (finding typicality established through "reasonably coextensive" class claims and distinguishing *Wiener* because the *Chavez* products "bore substantially the same misrepresentation.").

[20] Specifically, Defendant's adequacy arguments are merely repackaged standing arguments it made in sections IV.A.1.a. of its opposition (ECF 46), which Ms. Maisel addresses (and incorporates by reference) below. *See, infra,* § III.A. Further, Defendant's disparate arguments about Ms. Maisel's purported lack of involvement and oversight, and counsel's "coaching," are contradicted by a fair and complete reading of Ms. Maisel's testimony. *See, e.g.,* Ex. Q at 83:23, 88:10-14, 89:19-23, 103:14-20; 108:7-110:5 (reviewing and approving filing of complaint, first amended complaint, declaration, and motion for class certification, and sitting for a deposition); 115:6-15 (spending 8-10 hours, not including the deposition, in connection with this case); 94:1-6, 105:9-14, 107:13-18 (understanding case narrowed to injunctive relief); 75:19-76:2, 76:12-15, 77:6-12, 78:9-15; 87:25-88:8; 128:18-24 (understanding of class, role to achieve class-wide relief, without expectation of payment in return, but expressing confusion concerning questions about "supervising" attorneys); 35:14-19, 75:10-14 (denying discussions with counsel about testimony before counsel's objection and instruction); *see also* Ex. T [Pltf. ROG Resp.]. In addition, that Ms. Maisel has participated in another class action actually supports her adequacy as a class representative. *See Testone*, 2021 WL

_____

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

evidence is properly construed, however, it is clear Ms. Maisel is credible and has been meaningfully involved in the litigation.[21]

### D. Plaintiff Established Numerosity

Despite Ms. Maisel providing Product unit and dollar sales in the ***millions*** during the class period (Ex. J., ECF 40-9), Defendant implausibly argues that Ms. Maisel still "has not shown that her purported class is larger than a class of one" (Opp., ECF 46, at 23). Tellingly, Defendant failed to introduce any evidence to the contrary. That is because Defendant knows full well that the California Class is sufficiently numerous. Indeed, California comprises nearly 12% of the United States population. Ex. X [U.S. Census] at p. 1; *see also* RJN. Therefore, it is reasonable to infer that at least 12% of product sales during the class period occurred in California. Accordingly, with total unit sales exceeding several million, the California Class is likely composed of hundreds of thousands of members, if not more. Numerosity is satisfied.[22]

## III. PLAINTIFF MEETS THE REQUIREMENTS OF RULE 23(B)(2)

### A. Plaintiff Has Standing for Injunctive Relief

Ms. Maisel only has a high school degree and is a working mother who runs a daycare for children. Ex. Q [Maisel Depo] at 147:6-7, 147:25-152:8, 153:12-16. To be clear, Ms. Maisel is not an attorney. For these reasons, and like in nearly every civil litigation, Ms. Maisel's counsel assisted her in drafting her declaration to support class certification. However, on this basis alone, Defendant vociferously argues Ms. Maisel's declaration is a "sham." Opp., ECF 46, at 5. Yet, in Ms. Maisel's deposition, she testified that she was interviewed on three to five or more occasions (Ex. Q at 118:11-19), understood her declaration (*id.* at 110:3-5), verified its statements are true and correct

---

4438391, at *11 ("[R]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions.") (citations and quotations omitted).

[21] *See Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case. It is not necessary that a representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim." (citations and quotations omitted); *Hadley,* 324 F. Supp. 3d at 1119.

[22] *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. 2020) (finding evidence of unit and dollar sales sufficient to demonstrate numerosity); *Hadley*, 324 F. Supp. 3d at 1093; *Reitman v. Champion Petfoods USA, Inc.*, 2019 WL 7169792, at *4-5 (C.D. Cal. Oct. 30, 2019) (finding numerosity satisfied because total sales were in the millions and, therefore, "common sense indicates numerosity is met").

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

1   (*id.* at 109:25-110:2), and signed her declaration under penalty of perjury on December 20, 2021

2   (*id.* at 108:21-23).[23]   Indeed, during her deposition, Ms. Maisel reaffirmed under oath the

3   declaration's contents are true (Ex. Q at 108:24-109:12) and confirmed that "there's nothing that

4   [she] would change" (*id.* 110:17-24). That Ms. Maisel's counsel assisted her in drafting the

5   declaration does not somehow render its contents untrue.

6          Unfortunately, Defendant blatantly—and repeatedly—mischaracterizes Ms. Maisel's

7   testimony concerning her declaration. For example, Defendant misleadingly quotes certain words

8   or partial sentences from the deposition transcript, including "guesstimating," "speculating," and

9   "do[esn't] know exactly," to claim that "[o]n, the critical issue of standing, Plaintiff's deposition

10  testimony contradicts and undermines her sham declaration." Opp., ECF 46, at 5. However, a

11  complete reading of this testimony reveals it has nothing to do with whether Ms. Maisel overpaid

12  for, or wants to repurchase, products if they were truthfully represented, as Defendant falsely claims:

13  • First, Ms. Maisel used the phrase "guesstimating" *after* confirming under oath that she provided
14    an "estimate" of "approximately eight to ten hours" for the amount of time she spent prosecuting
      this action "[b]ased on the communications [she] had and - -" then she was cut off. Ex. Q at
15    115:6-16. When asked whether she looked at records to estimate time, Ms. Maisel said that it was
      "just guesstimating" to acknowledge that her estimate was not based on written time records. *Id.*
16    at 115:17-21.

17  • When asked to clarify what she meant by maintaining "regular contact" with her attorneys, Ms.
      Maisel explained it means "[w]henever I needed to contact them or they needed to connect with
18    me." *Id.* at 116:24-117:6. When asked, *again*, Ms. Maisel explained that, at times, "it could be
      every other month[;] I mean I don't know exactly," and acknowledged that is a "guesstimat[e]"
19    and that she "do[es]n't have specific dates to show [counsel]." *Id.* 117:7-15, 118:2-10.

20  • When asked about searching for documents, and Ms. Maisel began to say she would be
      "speculating without - -," her counsel reminded her not to speculate. *Id.* at 119:1-7. She agreed
21    and explained that she looked for proof of purchase in receipts and bank or credit card statements
      but found none. *Id.* at 119:7-23; 141:3-18 (later explaining she is "not in the habit of keeping
22    receipts, unfortunately"). To the extent that Defendant questions whether Ms. Maisel "provided"
      any documents to her attorneys, Defendant disregards the first and sixth exhibits to the
23    deposition—the signed retainer agreement and declaration, both of which Ms. Maisel provided
      to her attorneys. *Id.* at 5:12-13, 23-25; *see also* Ex. T [Pltf. ROG Resp.].

24         Defendant also deliberately ignores the numerous occasions where Ms. Maisel explained how

25  the deceptive labels caused her economic loss and, instead, misconstrues Ms. Maisel's testimony to

26  argue that she denied suffering any "harm" in this case. Opp., ECF 46, at 5. For example: Ms. Maisel

27  testified that Defendant's labeling was deceptive (Ex. Q at 15:17-18, 16:4-10; 128:1-129:3), and,

28

[23] Defendant notes that the declaration was filed late (Opp., ECF 46, at 5, n.7), but neither objects,
nor moves to strike it on this basis, and utterly fails to identify any sort of prejudice that it suffered
as a result of the oversight.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

when asked if she "think[s] [she] overpaid for the dishwasher tablets," she explained: "Given that I thought I was purchasing something that was, you know, natural ingredients, which is generally higher-priced, nonsynthetic [sic], potentially, yeah" (*id.* at 100:13-19; *id.* at 100:20-25 (noting she is not a market or pricing expert); *see also* Maisel Decl., ECF 43, at ¶ 5 ("I would not have bought the Product if I had known that it contained ingredients that do not come from plants or minerals, or that the ingredients' original plant or mineral composition were significantly altered through substantial processing or chemical modification.")). Ms. Maisel's testimony and declaration prove a concrete and definite economic injury sufficient to confer standing. *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (finding standing when the plaintiff overpaid or would not have made the purchase).

That Ms. Maisel did not believe she suffered "harm" by the Dishwasher Tablets stems from this term's dual meanings. When asked vaguely whether she believes she was "harmed" by the Ecover Dishwasher Tablets, Ms. Maisel responded "Not to my knowledge." *Id.* at 66:2-67:14. Even though Ms. Maisel's counsel objected that the question was overbroad, vague, ambiguous, and called for expert opinion, Defendant's counsel elected not to clarify whether Ms. Maisel understood "harm" to mean bodily injury or some other type of harm, such as being deceived into paying money for "higher-priced" plant and mineral dishwasher tablets that actually contained synthetic ingredients. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) (rejecting the defendant's argument that plaintiff lacks standing when the plaintiff testified (over objection) that she did not think she suffered harm from purchasing or consuming the products because a "layperson understanding of the word 'harm' has no effect on her legal claim").

Defendant similarly misconstrues Ms. Maisel's testimony to claim she did not suffer an "actual and imminent" threat of future harm as a result of Defendant's deceptive Plant-Based & Mineral Representation. Specifically, Defendant argues that, because Ms. Maisel testified that she would "potentially" buy the product if it no longer had the label, her desire to purchase the product is not sufficiently definite. Opp., ECF 46, at 5-6. However, once again, Defendant omits important testimony. In the same line of questioning, Ms. Maisel was asked: "You don't know if you would buy them again if they didn't say 'with plant-based and mineral ingredients'?" Ex. Q at 126:6-8. In response, Ms. Maisel emphatically stated: "Again, it seems to me, as a layperson and a consumer

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

1   of a particular type of product that I was looking for, I just want - - yeah, if it's - - if it's truthful,

2   you know, and it's something I can trust and rely on, then, yeah." *Id.* at 126:6-19; *see also id.* at

3   63:14-17 (Q: "Would you buy the dishwasher tablets again?" A: "If they were properly representing

4   the ingredients.").[24]

5          Nor does Ms. Maisel's use of the word "potentially" contradict her declaration, in which she

6   states that she "want[s] to, again, purchase ecover brand cleaning products with [the Plant-Based &

7   Mineral Representations] on the front of the labels, including the [dishwasher tablets] . . . . [But,

8   she] do[es] not know whether Defendant changed the formulation or its manufacturing processes. .

9   . . However, if [she] could rely upon the truthfulness of those representations, [she] would continue

10  to buy [them] . . ." Maisel Decl. ¶ 6 (further explaining that she does not have an understanding of

11  the ingredients or any expertise in cleaning products, which means that she cannot decipher the

12  accuracy of those representations on her own). Accordingly, she "cannot rely on the truth" of the

13  representations. *Id.* These averments are more than sufficient to demonstrate an "actual and

14  imminent" threat of future harm.[25] Further, contrary to Defendant's claim, *Lanovaz v. Twinings N.*

15  *Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) does not warrant a different conclusion. Unlike

16  Ms. Maisel, plaintiff Lanovaz actually testified that "she would ***not*** purchase" the products again,

17  even if the offending labels were removed. *Id.* (emphasis added). As such, an interrogatory response

18

19  ────────────────────────

[24] *See also id.* at 68:6-69:2 ("The goal would be to have transparency in labeling. And as a consumer, having it . . . not be [a] . . . false representation on the label . . . . I mean, to be transparent about what it is . . . . If it says plant-based, to be plant-based. . . . I'm a consumer wanting to be able to rely on what I'm reading on the label to be true."); *id.* at 75:19-76:2 ("My role in this case is to try to get the defendant to . . . accurately label their products so that it's not feeling like a . . . farce when you go and read something that says it's plant-based and isn't."); *id.* at 86:13-18, 87:5-6, 87:20-88:8 ("the defendant's labeling is deceptive and it's like false representation on the labeling. And that would be the goal is to have them be more transparent."); *id.* at 97:20-98:4 ("So again, I'm not a marketing expert or labeling expert, so ***I'm just a consumer that wants to believe what I'm reading on a package - - on a label . . . . A believable, truthful label that I could rely on as being truthful.***") (emphasis added); *id.* at 107:15-18 ("what does seem feasible is the defendant having, as a consumer, their labeling be clear and transparent and of true representation of the product."); 128:18-129:3.

[25] *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (the ongoing inability to rely on the labels despite a desire to buy the products establishes Article III standing for injunctive relief); *see also* Ord. Deny MTD, ECF 29, at § IV; *Snarr v. Cento Fine Foods Inc.*, 2019 WL 7050149, at *6 (N.D. Cal. Dec. 23, 2019) ("Plaintiffs establish threat of future harm by alleging that they would purchase the Products in the future only if they could rely on Defendant's labeling, whether the 'Certified' mark was substantiated as D.O.P. certification [*i.e., the labeling claim was true*] ***or*** if it was removed. This sufficiently alleges the first example of future harm noted in *Davidson*—Plaintiffs will not purchase the Products until they can rely on the Products' representations.") (citations omitted; emphasis added).

that she would "consider buying" them in the future did not cure the plainly contradictory testimony. *Id.* Here, however, Ms. Maisel both testified and declared under oath that she would buy the Dishwasher Tablets if they were truthfully labeled.[26]

## B. The Discontinuance of *Some* Products—Even if True—Does Not Eliminate Plaintiff's Standing as to the Remaining Products

Defendant's purported discontinuance of some Products, or purported removal of the Plant-Based & Mineral Representations, does not vitiate Ms. Maisel's standing to enjoin Defendant's consumer fraud with respect to the misleading Products it continues to sell.[27] Moreover, Ms. Maisel refutes Defendant's claim that it discontinued the sale of the Ecover All Purpose Cleaner and Delicate Wash Products (Opp., ECF 46, at 6-7), as those products remain available for purchase in the State of California. *See* Treister Decl. at ¶¶ 2-3 (confirming purchase, *in California on April 15, 2022*, of the All-Purpose and Delicate Wash products containing a "WITH PLANT-BASED BIODEGRADEABLE INGREDIENTS" label, which contains non-plant-based ingredients); Ex. U [Web Pages & Photos Purch. Prods.].[28] Lastly, Defendant's claim that it removed the misleading

---

[26] Defendant further misrepresents Ms. Maisel's testimony, arguing that she does not intend to buy Ecover products because she did not know what plant-based products she currently uses, despite testifying at length to her desire for natural and eco-friendly household consumer products. *Compare* Opp., ECF 46, at 5, n.6 *with* Ex. Q at 60:14-21, 63:22-64:3, 65:19-66:1 (identifying "biodegradable" dish soap and "earth-friendly" personal care products, and stating: "I use a lot of vinegar and water, meaning I don't buy a lot of chemicals."). Indeed, Defendant claims Ms. Maisel "'believes she uses bleach . . . to clean her toilet bowl," when she actually testified, in response to a question about what she uses to clean her toilets: "That's my son's job. . . . Bleach? I don't know." *Compare* Opp., ECF 46, at 5, n.6 *with* Ex. Q at 64:4-8. Similarly, Defendant suggests that, because Ms. Maisel has used dish soap "at this juncture" to wash dishes in the sink, she will never use her dishwasher again. *Compare* Opp., ECF 46, at 6. But Ms. Maisel never testified that she would never use her dishwasher again, and Defendant could have, but did not, ask her directly *See generally* Ex. Q; *id.* at 60:5-61:12.

[27] *See, e.g.*, *Goldemberg v. Johnson & Johnson Consumer Co., Inc.*, 317 F.R.D. 374, 390 (S.D.N.Y. 2016) (certifying action with respect to products labels containing the challenged representation and excluding from the class those products that underwent a label change that deleted that representation); *Hadley*, 324 F.Supp.3d at 1097 (certifying the class, although the defendant simultaneously sold products with and without the challenged representation during the class period, because the class may be properly defined "to include only those individuals who purchased versions of the products that included the challenged statements on the packaging"); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) ("If necessary . . . the district may construe the class definition more narrowly, or otherwise conform its interpretation of the class definition with the prevailing theory of liability); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("In circumstances . . . involving minor overbreadth problems that do not call into question the validity of the class as a whole, the better course is not to deny class certification entirely but to amend the class definition as needed to correct for the overbreadth.").

[28] The All Purpose Cleaner's back label identifies several non-plant-based ingredients, including anionic surfactants, citral, citric acid, lactic acid, limonene, linalool, non-ionic surfactants,

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265

1  "With plant-based and mineral ingredients" label from the Ecover Morning Fresh and Sunny Day

2  Fabric Softeners is disingenuous. *See* Opp. ECF 46, at 6-7. Defendant admits that it modified this

3  label to state, "With plant-based softeners" (*see* Arrelano Decl., ECF 46-3, at ¶ 5 and Ex. A), which

4  is substantially similar to the previous labels and the "With plant-based and mineral ingredients"

5  label on the Ecover Dishwasher Tablets that Ms. Maisel purchased. Indeed, "Plant-based softeners"

6  continues to mislead consumers into believing that these products contain only ingredients that come

7  from plants and did not undergo substantial processing, consistent with Ms. Maisel's theory of this

8  case. *See Clay v. CytoSport Inc.*, 2018 WL 4283032, *11 (S.D. Cal. Sep. 7, 2018) (holding "the

9  removal of 'Lean Lipids' from some of the labels has no effect on class certification," because other

10  allegedly misleading references to "lean" remained on the modified label, including "new leaner

11  formula," "lean protein," and "lean muscle protein supplement"); Ord. Deny MTD, ECF 29, at 8-9

12  (finding "With plant-based and mineral ingredients" substantially similar to "With plant-based

13  ingredients").

14  **IV.   CONCLUSION**

15      Accordingly, Plaintiff respectfully requests that the Court certify this action as a class action.

16  Date: April 19, 2022                    **CLARKSON LAW FIRM, P.C.**

17                                          By: */s/Katherine A. Bruce*
18                                              Ryan J. Clarkson, Esq.
                                                Shireen M. Clarkson, Esq.
19                                              Katherine A. Bruce, Esq.
                                                Kelsey J. Elling, Esq.
20

21                                          **MOON LAW, APC**

22                                          By: */s/ Kevin O. Moon*
                                                Christopher D. Moon, Esq.
23                                              Kevin O. Moon, Esq.

24  phenoxyethanol, sodium chloride, sodium citrate, and tetrasodium glutamate diacetate. *See* FAC ¶
   34; Ex. I [Synthetic Admissions], ECF 40-8, at p. 1. Similarly, the Delicate Wash back label
25  identifies several non-plant-based ingredients, including alcohol, anionic surfactants, citral, citric
   acid, limonene, non-ionic surfactants, sodium chloride, and sodium citrate. *See* FAC ¶ 36; Ex. I,
26  ECF 40-8, at p. 3. To the extent that Defendant disputes the substantial similarity of the formulas
   and labeling claims or the reliability of this evidence, that is only the result of Defendant's failure
27  to disclose the modified formulations and labels in discovery. *See* Bruce Supp. Decl. ¶¶ 3-6; Ex. S
   at ROG 1, 5-6, 10; Ex. R at RFP 1-2, 18; Ex. H, ECF 40-6, at SCJ 6, 8 (all of Defendant's produced
28  formulations for All Purpose and Delicate Wash); Ex. A, ECF 40-4, at pp. 2-6, 12-16 (all of
   Defendant's produced labels for All Purpose and Delicate Wash). Defendant should not be
   permitted to flout its discovery obligations with respect to such core, critical class discovery, to
   undermine class certification.

*Attorneys for Plaintiff Elizabeth Maisel*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway, Malibu, CA 90265